IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| WSOU INVESTMENTS, LLC D/B/A BRAZOS LICENSING AND DEVELOPMENT,<br><br>   Plaintiff,<br><br>v.<br><br>CISCO SYSTEMS, INC.,<br><br>   Defendant. | CIVIL ACTION NO. 6:21-CV-00128-ADA<br><br><br>JURY TRIAL DEMANDED |

**WSOU (BRAZOS'S) SUR-REPLY CLAIM CONSTRUCTION BRIEF**

# TABLE OF CONTENTS

I.   INTRODUCTION ..................................................................................................................1

II.  ARGUMENT ........................................................................................................................1

     A.   U.S Patent No. 7,443,859................................................................................................1

          1.   "APN (Access Point Name) field" / "APN field".......................................1

          2.   "explicitly indicates requesting either a private network address
               or a public network address"........................................................................2

          3.   "a private network address" ........................................................................3

     B.   U.S Patent No. 8,191,106................................................................................................4

          1.   "inter-technology change-off monitoring entity (ICME)" /
               "ICME"..........................................................................................................4

          2.   "converged network" ...................................................................................5

     C.   U.S Patent No. 8,989,216................................................................................................7

          1.   "context" .......................................................................................................7

          2.   "said specific context" / "said context" .......................................................8

          3.   "said command or AVP is defined by a second default
               definition" ...................................................................................................11

     D.   U.S Patent No. 9,357,014..............................................................................................13

          1.   "connected services layer"........................................................................13

          2.   "service name of the connected services layer".......................................15

III. CONCLUSION...................................................................................................................15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*02 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., Ltd.*,
    521 F.3d 1351 (Fed. Cir. 2008)..................................................................................................7

*Allergan, Inc. v. Apotex Inc.*,
    754 F.3d 952 (Fed. Cir. 2014)....................................................................................................8

*Bushnell Hawthorne, LLC v. Cisco Sys., Inc.*,
    813 F. App'x 522 (Fed. Cir. 2020) ....................................................................................10, 11

*Fintiv, Inc. v. Apple Inc.*,
    No. 18-CV-00372, Dkt. 86, 6 (W.D. Tex. Nov. 27, 2019) .........................................13, 14, 15

*Grp. One, Ltd. v. Hallmark Cards, Inc.*,
    407 F.3d 1297 (Fed. Cir. 2005)................................................................................................12

*IDB Ventures, LLC v. Charlotte Russe Holdings, Inc.*,
    2018 WL 5629620 (E.D. Tex. Oct. 31, 2018) ..........................................................................6

*Intellicall, Inc. v. Phonometrics*,
    952 F.2d 1384 (Fed. Cir. 1992)..................................................................................................8

*Mantech Envtl. Corp. v. Hudson Envtl. Servs., Inc.*,
    152 F.3d 1368 (Fed. Cir. 1998)..................................................................................................8

*Paltalk Holdings, Inc. v. Microsoft Corp.*,
    2008 WL 4830571 (E.D. Tex. July 29, 2008) ..........................................................................5

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) (en banc)......................................................................3, 6, 14

*SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys.*,
    242 F.3d 1337 (Fed. Cir. 2001)..................................................................................................4

*Sinorgchem Co., Shandong v. Int'l Trade Comm'n*,
    511 F.3d 1132 (Fed. Cir. 2007)..................................................................................................6

*Trilogy Software, Inc. v. Selectica, Inc.*,
    405 F. Supp. 2d 731 (E.D. Tex. 2005)......................................................................................8

**I.      INTRODUCTION**

Cisco's reply brief engages in a naked attempt to avoid infringement through misdirection. Cisco's proposed constructions are untethered from the claim language and intrinsic record. In other instances, Cisco improperly imports wholesale limitations from the specification into the claims. Cisco also improperly tells the Court there is no dispute on issues which Brazos plainly contests. For the reasons explained in Brazos's response brief and below, the Court should adopt Brazos's constructions and reject those offered by Cisco.

**II.     ARGUMENT**

    **A.     U.S Patent No. 7,443,859**

        *1.     "APN (Access Point Name) field" / "APN field"*

Cisco both mischaracterizes and fails to refute Brazos's arguments on this term. Cisco contends that Brazos "does not dispute that the APN field refers to the well-known field that was specifically defined with that name." Cisco Reply at 1 (citing Brazos Resp. at 3).[1] Cisco is wrong. Brazos absolutely disputes Cisco's proposition. Indeed, Brazos offered in its response brief numerous examples of intrinsic and extrinsic evidence—including Cisco's own publications—that demonstrate "APN field" is not limited to one type of field. *See* Brazos Resp. at 3-4; *see also, e.g.*, '859 Patent, 4:14-17 & 4:19-22 (describing "an APN field that contains information relating to a request for one of a private network address and a public address"); *id.* at 7:7-15 (describing the APN Field as "an extensible field"); Exs. 5-6 to Brazos's Resp. (describing other contents of APN fields, including "APN Restriction values").[2]

---

[1] All citations to "Cisco Br." refer to Cisco's Opening Claim Construction Brief, filed at Docket 36. All citations to "Brazos Resp." refer to Brazos's Responsive Opening Claim Construction Brief, filed at Docket 39. And all citations to "Cisco Reply" refer to Cisco's Reply Claim Construction Brief, filed at Docket 40.

[2] Cisco also argues that WSOU's response misstates Cisco's position as requiring that the APN field contain "only the name of the access point." Cisco Reply at 2. While Cisco may have since changed its position, it

1

Cisco does not address any of the evidence offered by Brazos on reply. Cisco does not because Cisco cannot. Nor does Cisco cite any intrinsic or extrinsic evidence of its own to support its construction – which stands completely untethered from the patent and reality. With no point to make, Cisco resorts to a series of irrelevant and largely inaccurate allegations regarding Brazos's infringement contentions—an issue entirely separate from claim construction. That is telling. The Court should reject Cisco's proposed construction—which would improperly read additional words and limitations into the claims—and instead construe "APN (Access Point Name) field" and "APN field" to have their plain and ordinary meaning.

### 2. *"explicitly indicates requesting either a private network address or a public network address"*

Cisco originally argued that its proposed 28-word construction for "explicitly indicates" came from one embodiment in the patent. *See* Cisco Br. at 6-7 (citing '859 Patent, 7:11-15). Realizing its error, Cisco attempts to move the goal posts arguing its construction actually comes from the following language in claim 1: "contain[s] information that explicitly indicates requesting either a private network address or a public network address to be assigned to the mobile station." Cisco Reply at 3 (citing '859 Patent, cl. 1). That language still does not save—let alone remotely resemble—Cisco's proposed construction.

Cisco's attempts to shoehorn additional limitations into an "explicit indication" remain unsupported. For example, Cisco argues that "[f]or a request in the APN field to be explicit, it is irrefutably true that there must be a bit or bits that explicitly make the request." Cisco Reply at 3. But Cisco has not been able to identify a single piece of intrinsic or extrinsic evidence to support that purportedly irrefutable claim. Although Cisco cites a 3GPP standard that mentions bits, that

---

stated at the parties' meet and confer that the basis for its proposed construction was to "clarify" that this term was limited to the access point name.

standard does not suggest that any explicit indication of a network address *must* be made of a particular bit or bits. *See id.* (citing Ex. 3).

Contrary to Cisco's assertion, the burden is not on Brazos to explain why Cisco's construction is wrong. The burden is on Cisco to prove its construction is reasonable in light of the claim language and specification. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1316 (Fed. Cir. 2005) (en banc) ("The construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction."). Cisco has still failed to do so. And Brazos has shown instead why the construction lacks support. Accordingly, the Court should adopt the term's plain and ordinary meaning, which, contrary to Cisco's assertion, requires no construction.

### 3.     *"a private network address"*

Cisco fails to meaningfully address Brazos's citations to the intrinsic record or the ample extrinsic evidence demonstrating that "private network address" is a term of art. The Court should reject Cisco's attempts to import inapplicable language from the background section of the patent into this well-understood term.

Cisco fails to dispute the specification's description of "private network address," or RFC 2663, which is expressly cited by the patent and likewise describes the term. *See* '859 Patent, 1:10-24 (describing "private addresses" as "network addresses in which the IP address falls within [certain ranges]"); *id.* at 2 (citing RFC 2663); Brazos Ex. 8 [RFC 2663] at 5 ("A private network is an address realm independent of external network addresses."). Nor does Cisco acknowledge that this description and cited reference are wholly consistent with the ample extrinsic evidence on the term "private network address." *See* Brazos Resp. at 7 (summarizing and citing extrinsic evidence). Indeed, Cisco did not address any of this evidence. *See* Cisco Reply at 4-6.

3

Instead, Cisco continues to paddle against the current, relying on one sentence from the background of the patent that states, "[P]rivate addresses that are assigned by an administrative entity within an administrative domain . . . must not be visible outside the administrative domain." '859 Patent, 1:27-29. Again, nothing in the cited sentence purports to limit "the present invention" or the term "private network address" as used in the claim language. And Cisco still does not even attempt to explain how its proposed limitation is consistent with the claim language.

The Court should reject Cisco's continued efforts to improperly limit the term based on inapposite language from the background of the patent and adopt the term's plain and ordinary meaning, as understood by the specification, references cited in the patent, and extrinsic evidence.

### B.     U.S Patent No. 8,191,106

#### 1.     *"inter-technology change-off monitoring entity (ICME)" / "ICME"*

Cisco's reply provides no support for Cisco's *additions* to the claim. In fact, Cisco admits that its additional language—"being used to access the converged network"—is something it only believes the ICME must do. Cisco Reply at 7. As Brazos noted previously, this is plainly improper. In fact, it is a "cardinal sin" of patent law. *SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys.*, 242 F.3d 1337, 1340 (Fed. Cir. 2001) (describing reading a limitation from the specification into the claims as "one of the cardinal sins of patent law"). If the patentee had intended that the ICME "must" be "used to access the converged network," the claims would say so. But they do not.

Rather than provide an explanation as to why a limitation should be imported into claim 1, Cisco's reply baldly asserts that "every shred of intrinsic evidence" rebuts Brazos's construction but then cites *only* to claim 1 of the patent and without explanation. Despite Cisco's blustering, Brazos's position remains consistent with the patent. Cisco has provided no evidence as to why a jury reading the term, in light of the patent specifications, claims, and file history, would not

understand the term's plain and ordinary meaning.

Brazos's proposed alternative construction ensures that the appropriate breadth is afforded to the patent's disclosure of "access types." Cisco may, for example, argue that WLAN (802.11 networking) and wired Ethernet (802.3 networking) comprise *different* types of technology which are for network access—despite clear language in the patent providing these to be distinct technologies (i.e., "access types"). *See* '106 Patent, 7:3–5 ("Such access technologies include, for example, UTRAN, WLAN, WiMax, DSL, Ethernet, 1x-EV-DO, and CDMA2000.").

Further, if the Court finds that the term requires construction, Brazos's proposed alternative construction avoids self-referential language, thus providing a clear understanding for the jury. *See Paltalk Holdings, Inc. v. Microsoft Corp.*, 2008 WL 4830571, at *19 (E.D. Tex. July 29, 2008) (defining a term for the "clarity and convenience of the jury"). Cisco's proposal, by contrast, amounts to nothing more than re-definition of a term to include additional (and unsupported) limitations.

### 2. "converged network"

Cisco's reply asserts that the patent "unambiguously states what it means by a 'converged network'" and that the patent's meaning should control. This is wrong. Cisco premises its argument entirely on language in the *background* section of the specification. And, as Cisco glosses over, the relevant passage only describes what future networks *may* support. *See* '106 Patent, 3:13–21 (describing "ideally" how security and other functions may work in future networks). Further, Cisco may not simultaneously assert that this term needs construction and was not known to POSITAs when Figure 2a of the patent discloses that prior art systems included a converged network. *See* '106 Patent, Fig. 2a (at element **100**).

Cisco's arguments also fail to establish that the patentee intended to act as his own

5

lexicographer and to clearly define the term "converged network." The term is not set off by quotation marks, and the defining signal "is" does not preface the term anywhere in the patent. *See Sinorgchem Co., Shandong v. Int'l Trade Comm'n*, 511 F.3d 1132, 1136 (Fed. Cir. 2007) (describing indicators that a patentee intended to act as his own lexicographer). If such a clear definition was elucidated by the patent, Cisco would have simply proposed that language. But the fact remains Cisco's definition ***does not appear*** verbatim anywhere in the patent, and Cisco's proposal introduces confusion where none exists.

Cisco also complains of the "relevant time frame" of *some* of Brazos's extrinsic evidence—wholly ignoring others—without identifying the dates such a time frame would include or the legal precedent on which Cisco purportedly relies. Either way, Cisco misses the mark again. *See, e.g., Phillips*, 415 F.3d at 1319 (noting courts may admit and use extrinsic evidence at their discretion); *IDB Ventures, LLC v. Charlotte Russe Holdings, Inc.*, 2018 WL 5629620, at *3 (E.D. Tex. Oct. 31, 2018) (holding "[a]bsent some indication that the meaning of a particular term to persons of skill in the art changed between the date of the patent application and the publication date," a "roughly contemporaneous" source "may be relied on as extrinsic evidence").

While the '106 patent never expressly defines what a converged network is, the patent describes what the converged network may support, how it may be used, and its advantages. *See* '106 Patent, 3:13–18 ("A fixed/mobile converged network which provides support for multimodal device mobility ideally would provide for end user access to the network using any access technology of the multimodal device"); *see, e.g., id*. at 2:30–49; 3:1–6; 7:19–28; Fig. 2a. As noted *supra*, the '106 patent also discloses that converged networks were part of the prior art. Thus, viewed on its own or in combination with the extrinsic evidence identified by Brazos in its reply brief, the term "converged network" can be plainly understood by a factfinder.

### C. U.S Patent No. 8,989,216

#### 1. "context"

Cisco agrees with Brazos's interpretation of the plain and ordinary meaning of "context" – i.e., "the situation in which a default definition or standard does not apply" or "the situation within which something exists or happens, and that can help explain it." Cisco Reply at 8-9. Brazos thus asks the Court to adopt this plain and ordinary meaning of the term "context."

As Brazos explained (and Cisco has not refuted), the claim language and patent specification make clear that "context" refers to the situation in which the default does not apply. The patent teaches that when a "first default definition" or "second default definition" does not govern, a "first context" or "second context" does. *See* Ex. 3 to Brazos Resp. (hereafter "'216 Patent"), cls. 1 and 4. And the specification is replete with examples that further support this construction. *See*, *e.g.*, Brazos Resp. at 14 (citing '216 Patent, 3:23-25; 3:15-18; 3:42-45).

Cisco's attempts to support its own construction of "context" still fall short. Cisco first argues that the "grammatical issues" in its definition "do not bar the Court's adoption if the definition otherwise makes sense." Cisco Reply at 9. Nonsense. The point of claim construction is to elucidate—not obfuscate—a term's meaning. *See 02 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., Ltd.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008) (explaining that "[c]laim construction is a matter of resolution of disputed meanings and technical scope, to clarify and when necessary to explain what the patentee covered by the claims"). Cisco's proposed construction—a "specific condition to be met"—neither clarifies nor explains the term "context." It merely imposes a limitation unsupported by the claim language or specification.

Cisco next contends that "[t]here is no need for a claim to have an explicit definition or disclaimer in the specification." Cisco Reply at 9. Again, Cisco is wrong. It is well settled that

7

while a "patentee is free to be his own lexicographer, . . . any special definition given to a word ***must be clearly set forth in the specification***." *Trilogy Software, Inc. v. Selectica, Inc.*, 405 F. Supp. 2d 731, 734 (E.D. Tex. 2005) (emphasis added) (citing *Intellicall, Inc. v. Phonometrics,* 952 F.2d 1384, 1388 (Fed. Cir. 1992)). Here, the patent specification does not explicitly define "context." It simply describes one role a context performs—not what a context *is*. *See* '216 Patent, 3:11-14 ("A context *identifies* a specific condition to be met for the corresponding context-specific definition to apply.").

Cisco's reliance on *Allergan, Inc. v. Apotex Inc.* is misplaced. 754 F.3d 952, 958 (Fed. Cir. 2014). There, the parties "agreed that the specification provide[d] an express definition for the term" – they merely disputed the definition's meaning. *Id.* at 957. The court thus looked to the patent specification to shed light on that definition. *Id.* at 957-58. Here, by contrast, the patentee did not act as lexicographer when describing one role a context performs and certainly did not provide "an express definition for [that] term."

Brazos thus asks the Court to adopt the term's plain and ordinary meaning, as informed by the claim language. *See Mantech Envtl. Corp. v. Hudson Envtl. Servs., Inc.,* 152 F.3d 1368, 1373 (Fed. Cir. 1998) ("Under proper claim construction methodology, we look first to the language of the claims" and give terms their ordinary meaning.). Nothing in the intrinsic record indicates that the patentee intended to describe the term "context" by anything more.

### 2. *"said specific context" / "said context"*

Brazos and Cisco seemingly agree that "said specific context" and "said context" can refer to the "first context" or "second context." *See* Cisco Reply at 10; Brazos Resp. at 16. The dispute is whether that renders the terms indefinite. The answer is no.

A POSITA would ascertain with reasonable certainty whether "said specific context" in

8

claims 2 and 5 and "said context" in claims 7 and 9 refer to "first context" or "second context" when read in light of the '216 Patent's claim language and prosecution history. Again, claims 1 and 4 teach:

1. A tangible non-transitory storage device readable by a machine, embodying a Diameter protocol command dictionary comprising:

    *a first definition for a Diameter protocol command,* wherein said Diameter protocol command is defined by a first default definition unless a first context applies in which case said command is defined by a context specific definition, and the Diameter protocol command dictionary supports multiple versions of a standard,

    *a second definition for a Diameter protocol attribute value pair (AVP)*, wherein said Diameter protocol or AVP is defined by a second default definition unless a second context applies in which case said AVP is defined by a second context-specific definition, wherein said Diameter protocol command dictionary interoperates with a Diameter protocol stack to perform functions for processing Diameter messages.

4. A network node comprising a Diameter protocol command dictionary comprising:

    *a first definition for a Diameter protocol command*, wherein said Diameter protocol command is defined by a first default definition unless a first context applies in which case said command is defined by a context-specific definition, and the Diameter protocol command dictionary supports multiple versions of a standard,

    *a second definition for a Diameter protocol attribute value pair (AVP)*, wherein said command or AVP is defined by a second default definition unless a second context applies in which case said AVP is defined by a second context-specific definition, wherein said Diameter protocol command dictionary interoperates with a Diameter protocol stack to perform functions for processing Diameter messages.

In both claims, the "first context" corresponds to the Diameter protocol command and the "second context" corresponds to the Diameter protocol attribute value pair (AVP). Accordingly, when reviewing claims 2 and 7 (which refer to the storage device in claim 1) and claims 5 and 9 (which refer to the network node in claim 4), a POSITA would understand whether the "said

specific context" or "said context" referred to the first or second context based on whether the context concerns a Diameter protocol command (first) or attribute value pair (AVP) (second).

Further, Cisco assumes that the limitations in claims 2, 5, 7, and 9 cannot or do not apply equally to both the first context and second context. But Cisco provides ***no basis for that assumption***. *See* Cisco Reply at 11 (stating, in conclusory fashion, "it cannot be both"). Claims 2 and 5 teach that the "said specific context" comprises "a specific version of a 3rd Generation Partnership Project (3GPP) Standard." And claims 7 and 9 teach that "said context" can be "a major release or minor release of said 3GPP standard." This is not an either-or situation.

Again, the prosecution history supports this reading. The third amendment to the claim language separated the discussion of the "Diameter protocol command" and "Diameter protocol attribute value pair (AVP)," thereby replacing the "specific context" in claims 1 and 4 with the terms "first context" and "second context." *See* Brazos Resp. at 19-20 (citing Brazos Ex. 19 at WSOU-CISCO-001644-1645). That amendment did not change the fact that claims 2, 5, 7, and 9 still referred to the non-default context of claims 1 and 4. Indeed, by replacing "specific context" with both "first context" (as to Diameter protocol command) and "second context" (as to Diameter protocol attribute value pair (AVP)), the patentees made clear that "said specific context" and "said context" still referred to both the "first context" and "second context" that applied in the absence of a default definition.

Cisco's four-paragraph response on this term wholly fails to discuss, let alone dispute, this reading of the prosecution history. *See* Cisco Reply at 10-11. Instead, it focuses on one case that Brazos already distinguished—*Bushnell Hawthorne*. Again, that case is inapposite.

In *Bushnell Hawthorne*, the issue was whether a POSITA could distinguish between "three separate classes of IP addresses," which was exacerbated by "the singular/plural mismatch"

between the disputed terms and their potential antecedents. *Bushnell Hawthorne, LLC v. Cisco Sys., Inc.*, 813 F. App'x 522, 526 (Fed. Cir. 2020). Because each antecedent was "presumed to have a separate meaning and, therefore, presumed to refer to different classes of IP addresses," the court concluded a POSITA could not match the disputed term ("said different IP address") with the proper antecedent (of which there were three varieties). *Id*. ***That is not the case here***. Claims 2 and 7 expressly refer back to claim 1; claims 5 and 9 expressly refer back to claim 4. The "first context" and "second context" of claims 1 and 4 are not "different classes" with "separate meanings" – they are the same "specific context" that applies in the absence of a default definition.

In sum, the Court should reject Cisco's indefiniteness arguments. A POSITA would ascertain with reasonable certainty, when reading the patent in light of the specification and file history, whether "said context" or "said specific context" refer to "first context" (in the case of a Diameter protocol command) or "second context" (in the case of an attribute value pair (AVP)).

### 3. *"said command or AVP is defined by a second default definition"*

Cisco constructs strawmen then sets them ablaze to distract from Brazos's plain (and unrefuted) reading of claim 4. A POSITA would have no difficulty discerning that the term "said command or AVP is defined by a second default definition" expressly refers to the noun that immediately precedes it: "Diameter protocol attribute value pair (AVP)." And, if necessary, this term is ripe for correction because Brazos's proposed correction is not subject to reasonable debate and is supported by the patent's prosecution history.

Cisco sets up a strawman. It argues Brazos cannot show that in each instance when a term follows a comma and the word "wherein," that the term refers to the immediately preceding noun. Cisco Reply at 11-12 ("Patent claims routinely refer back to elements recited earlier in the claim."). Brazos never made that assertion. Brazos simply stated that when the at-issue term is read in the

context of claim 4, a POSITA would understand that the term refers to the immediately preceding noun – "a Diameter protocol attribute value pair (AVP)." *See* Brazos Resp. at 22-23.

Cisco's argument that this plain reading is contradicted by other language in claim 4 is unpersuasive. *See* Cisco Reply at 12. Cisco points to language from a separate clause (indicated in green) of claim 4, namely—

> . . . a second definition for a ***Diameter protocol attribute value pair (AVP), wherein said command or AVP*** is defined by a second default definition unless a second context applies in which case said AVP is defined by *a second context-specific definition, wherein said Diameter protocol command dictionary* interoperates with a Diameter protocol stack to perform functions for processing Diameter messages.

'216 Patent, cl. 4 (emphases added). That clause has no bearing on the disputed term. The fact that "said Diameter protocol command dictionary" does not refer to "a second context-specific definition" says nothing of whether "said command or AVP" refers to the immediately preceding "Diameter protocol attribute value pair (AVP)." Indeed, unlike the language Cisco cites, the at-issue term specifically uses the term in the preceding noun—AVP. In short, Cisco has not pointed to any evidence—intrinsic or extrinsic—that meaningfully disputes Brazos's reading of claim 4.

Cisco next argues that the disputed term is not subject to correction because "the error is not clear on the face of the patent and is only obvious from the prosecution history." *See* Cisco Br. at 12 (citing *Grp. One, Ltd. v. Hallmark Cards, Inc.*, 407 F.3d 1297, 1302-03 (Fed. Cir. 2005)).

*First*, that assertion is wholly at odds with Cisco's briefing, which primarily purports to explain why the language "said command or AVP" *was* clearly erroneous. *See* Cisco Br. at 21 (characterizing the claim language as "internally irreconcilable" and stating there is "simply no way to make sense of the disputed language"); *id*. at 22 (stating the language "*as written* is unclear" (emphasis in original)).

***Second***, the error is clear from the face of the patent. As noted above, the structure and organization of the claim make evident that "said command or AVP" refers to the immediately preceding noun – not the "Diameter protocol command" referenced earlier in claim 4. This reading of the claim language also is supported by the patent specification, which explains:

> Other embodiments of the invention provide a network node comprising a Diameter protocol command dictionary comprising: a definition for a Diameter protocol command *or* attribute value pair (AVP) wherein the command *or* AVP is defined by a default definition unless a specific context applies in which case the command *or* AVP is defined by a context-specific definition.

'216 Patent, 1:66-2:5 (emphases added). In other words, the definitions for the Diameter protocol command and the attribute value pair (AVP) are separate. That is why claim 4 is subdivided into two parts. It does not make sense that the term "said command or AVP" in the second part of claim 4 would refer back to the "Diameter protocol command" of the first part.

In sum, a POSITA would be able to determine the scope of claim 4 with reasonable certainty based on the claim language and prosecution history. Even if the "said command" language is deemed a drafting error, the Court should correct "said command or AVP" to simply "said Diameter protocol AVP."

### D.  U.S Patent No. 9,357,014

#### 1. *"connected services layer"*

The '014 patent adequately informs a POSITA as to the plain and ordinary meaning of this term. Indeed, the parties' proposed constructions underscore this, as the proposals are closely aligned. Nonetheless, Cisco asserts not only that this term is not readily understood ***but also*** that it is coined. Both arguments are incorrect.

***First***, Cisco attempts to rely on *Fintiv*—despite Cisco rejecting this approach *infra*, with regards to "service name of . . ."—to establish that coined terms apply only when components have

13

well-recognized meanings. *Fintiv, Inc. v. Apple Inc.*, No. 18-CV-00372, Dkt. 86, 6 (W.D. Tex. Nov. 27, 2019). But Cisco's analysis ends there, and Cisco fails to explain how the individual component words do not inform a POSITA as to what a "connected services layer" is. Indeed, a POSITA would understand the components of the term to be a layer, relevant to computer networking, applicable to services in connection with one another. Cisco then complains that Brazos is "jump[ing] directly to the specification," but Cisco should be well-aware of the importance of looking to the specification when making determinations as to a term for construction. *Phillips*, 415 F.3d at 1312 ("The role of the specification in claim construction has been an issue in patent law decisions in this country for nearly two centuries.").

***Second***, Cisco attempts to bury its head in the sand regarding the actual contents of the patent. Cisco complains that Brazos has not provided a clear enough guide to the embodiments Cisco seeks to exclude. While Brazos doubts that Cisco is unaware of such embodiments, they are easy enough to locate.[3]

Cisco argues that because the patent is directed to computer networking, there "must be [a connection] between two endpoints." Cisco Reply at 14. But the '014 patent, as noted above, never discloses an embodiment limited to "two endpoints"—the phrase does not even appear in the patent. Nor does the patent stand for Cisco's proposition that the connected services layer must "support" the connection between two endpoints. If the patentee intended that the connected services layer was required to establish ***and support*** a connection between endpoints, the specification would reflect that. *See* '014 Patent, 5:65-67 ("The CSL [(connected services layer)]

---

[3] *See* '014 Patent, 2:13–14 ("FIG.7 depicts an exemplary method for establishment and use of a service connection between endpoints."); 5:30–32 ("The establishment and use of service connections is depicted and described in additional detail below with respect to FIGS. 3-7."); 5:57–59 ("FIG. 3 depicts an exemplary message flow for establishment of a service connection between endpoints within the context of FIG.1."); 5:65–67; 6:9-19; 7:35-38 *et passim*.

210, of CSS 115 at endpoint 110 *initiates a request for establishment of a service connection* with the CSL 210 of CSS 115 at endpoint 110.") (emphasis added). Thus, what Cisco attempts to portray as an "omission" by Brazos is nothing more than an attempt by Cisco to insert *new* language into the '014 patent. Finally, Cisco misunderstands the technology at-issue as, in computer networking, connections may be established between multiple endpoints.[4]

### 2. *"service name of the connected services layer"*

Cisco demands that Brazos pick a side on Cisco's proposed construction. This is nonsensical. Brazos's position is clear, and Cisco is owed no answer as to *Cisco's* proposed construction, which seeks to narrow one of the asserted claims. Cisco, beyond labeling Brazos's multitude of evidence as "inapposite to the actual dispute," fails to address any of the patents or standards cited by Brazos, which provided that the term was a well-known term of art not requiring construction. And, despite relying on *Fintiv* with regards to the term "connected services layer" and arguing as to the components of that term, Cisco now abandons that position and wholly disregards the component "service name" here. Cisco's logic as to the "actual dispute" is thus deeply flawed—if there were no dispute regarding the interpretation of "service name" as it appears in the term, Cisco, who proposed the *full term at-issue*, would not have included it in its exchanged terms for construction. Instead, Cisco hopes to distract from its inability to distinguish the evidence provided by Brazos and create a *new* dispute that suits its purposes. Cisco's veiled gambit should be rejected, and the Court should decline to construe this term.

## III. CONCLUSION

For the foregoing reasons, the Court should adopt Brazos's proposed constructions.

---

[4] *See*, *e.g.*, *Multicast*, WIKIPEDIA, available at https://en.wikipedia.org/wiki/Multicast (including citations to 2005–13 publications regarding multicasting).

15

Dated: November 29, 2021　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　SUSMAN GODFREY L.L.P.

By: */s/ Kalpana Srinivasan*
　　Max L. Tribble, Jr.
　　Texas Bar No. 2021395
　　Shawn Blackburn *(pro hac vice)*
　　Texas Bar No. 24089989
　　Bryce T. Barcelo *(pro hac vice)*
　　Texas Bar No. 24092081
　　1000 Louisiana Street, Suite 5100
　　Houston, Texas 77002-5096
　　Telephone: (713) 651-9366
　　Fax: (713) 654-6666
　　mtribble@susmangodfrey.com
　　sblackburn@susmangodfrey.com
　　bbarcelo@susmangodfrey.com

　　Kalpana Srinivasan *(pro hac vice)*
　　California Bar No. 237460
　　1900 Avenue of the Stars, 14th Floor
　　Los Angeles, California 90067-6029
　　Telephone: (310) 789-3100
　　Fax: (310) 789-3150
　　ksrinivasan@susmangodfrey.com

　　Danielle M. Nicholson *(pro hac vice)*
　　Washington Bar No. 57873
　　1201 Third Avenue, Suite 3800
　　Seattle, WA 98101
　　Tel: (206) 516-3880
　　dnicholson@susmangodfrey.com

　　**COUNSEL FOR PLAINTIFF WSOU INVESTMENTS, LLC D/B/A BRAZOS LICENSING AND DEVELOPMENT**

**CERTIFICATE OF SERVICE**

      The undersigned certifies that on November 29, 2021, a true and correct copy of the above and foregoing instrument was e-filed with the Court and e-served upon all counsel of record using the Court's Electronic Filing Service Provider in accordance with Rule 21(a)(1) of the Texas Rules of Civil Procedure and by electronic mail as indicated below.

| | |
|---|---|
| Brian Rosenthal<br>Katherine Dominguez<br>Allen Kathir<br>brosenthal@gibsondunn.com<br>kdominguez@gibsondunn.com<br>akathir@gibsondunn.com<br>GIBSON, DUNN & CRUTCHER LLP<br>200 Park Avenue<br>New York, NY 10166 | Ryan Iwahashi<br>riwahashi@gibsondunn.com<br>GIBSON, DUNN & CRUTCHER LLP<br>1881 Page Mill Road<br>Palo Alto, CA 94304 |
| Michael E. Jones<br>mikejones@potterminton.com<br>POTTER MINTON<br>110 North College, Suite 500<br>Tyler, TX 75702 | Kenneth G. Parker<br>kparker@gibsondunn.com<br>GIBSON, DUNN AND CRUTCHER LLP<br>3161 Michelson Drive<br>Irvine, CA 92612 |

                                                    /s/  *Kalpana Srinivasan*
                                                  Kalpana Srinivasan
                                                  Counsel for Plaintiff