IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| WSOU INVESTMENTS, LLC D/B/A BRAZOS LICENSING AND DEVELOPMENT,<br><br>            Plaintiff,<br>v.<br><br>CISCO SYSTEMS, INC.,<br><br>            Defendant. | CIVIL ACTION NO. 6:21-CV-00128-ADA<br><br><br>JURY TRIAL DEMANDED |

### PLAINTIFF BRAZOS'S MOTION TO COMPEL PRODUCTION OF SOURCE CODE FROM DEFENDANT CISCO

Plaintiff WSOU Investments, LCC d/b/a Brazos Licensing & Development ("Brazos") filed this action on February 5, 2021, asserting that various software platforms of Defendant Cisco Systems, Inc. ("Cisco") infringe four Brazos patents.[1] Despite Cisco's obligation to produce by August 2021 "technical documents, including software" sufficient to show the operation of the accused Cisco products, it failed to do so. And when Brazos propounded discovery requests for source code, Cisco again refused. Source code is plainly relevant and necessary to show the operation of the accused Cisco products—all of which are software implemented in computer hardware. Brazos respectfully asks the Court to grant its motion to compel and order Cisco to produce source code for the accused Cisco products.

---

[1] The four patents-in-suit are U.S. Patent Nos. 8,989,216 ("'216 Patent"), 7,443,859 ("'859 Patent"), 8,191,106 ("'106 Patent"), and 9,357,014 ("'014 Patent") (collectively, "Asserted Patents"). Brazos initially asserted a fifth patent—U.S. Patent No. 8,665,733—which the parties have since dismissed. *See* Dkt. No. 32.

1

I. **BACKGROUND**

Brazos's asserted patents read on certain Cisco software platforms, including Cisco's Mobile Multimedia Gateway Platform, Ultra Cloud Core, SP Wi-Fi, and 5G Packet Core Solutions. The accused functionalities include, for example, command dictionaries that apply across different versions of networking protocols ('216 Patent); software that connects user equipment to the Internet and to IP-based applications ('859 Patent); and software that enables network access security policy management and other network and authentication functions ('106 and '014 Patents).

The operative Scheduling Order and Order Governing Proceedings ("OGP") required Cisco to produce by August 18, 2021, "technical documents, including software where applicable, sufficient to show the operation of the accused product(s)." *See* Dkt. 41 at 2; *see* OGP 3.5.1 (Nov. 17, 2021). On August 18, 2021, Cisco produced over 9,000 documents but no software or source code. Most of those documents—nearly 8,000—are publicly available on www.cisco.com. *See* Declaration of Danielle Nicholson ("Nicholson Decl.") ¶ 3. Indeed, thousands are HTMLs. *See id.* To date, Cisco has not supplemented its technical production relating to the Cisco accused products. *See id.* ¶¶ 4, 7.

On October 7, 2021, Brazos contacted Cisco regarding its failure to produce source code and asked Cisco to confirm it would do so by October 15, 2021. *See id.* ¶ 5. When Cisco declined, Brazos requested a meet and confer. *See id.* The parties met and conferred in early November 2021 and raised the issue with the Court's clerk via email on November 16, 2021. *See id.* ¶¶ 5-6. The Court granted Brazos leave to file a motion to compel and requested that it address *Drone Tech. Inc. v. Parrot S.A.*, 838 F.3d 1298 (Fed. Cir. 2016) in doing so. *See id.*

In the interim, Brazos served discovery requests on Cisco, seeking—among other things—technical documentation and source code for the accused Cisco products. *See* Nicholson Decl. ¶ 7; Ex. A, Request No. 1 ("For each Relevant Product, documents and information sufficient to show in detail the operation of the Accused Functionality, including, but not limited to source code (with comments) . . . ."). In response, Cisco again refused to produce any source code. *See id*.

## II.  LEGAL STANDARD

Parties may obtain discovery regarding any non-privileged matter that is relevant to the parties' claims or defenses. Fed. R. Civ. P. 26(b)(1). "Relevancy is construed liberally so that the basic issues and facts of the case are disclosed to the fullest extent practical." *Exp. Worldwide, Ltd. v. Knight*, 241 F.R.D. 259, 262 (W.D. Tex. 2006). "Following this guidance, courts construe Rule 26 broadly and generally hold a request for discovery should be allowed unless it is clear that the information sought can have no possible bearing on the claim or defense of a party." *United Servs. Automobile Ass'n v. Mitek Sys., Inc.*, No. SA-12-CV-282-HLH, 2014 WL 12496903, at *1 (W.D. Tex. Mar. 31, 2014).

"The moving party bears the burden of showing that the materials and information sought are 'relevant to any party's claim or defense' or 'appear[ ] reasonably calculated to lead to the discovery of admissible evidence.'" *GeoTag, Inc. v. Frontier Commc'ns Corp.*, No. 2:10-CV-265-JRG, 2013 WL 12141427, at *1 (E.D. Tex. June 26, 2013) (quoting Fed. R. Civ. P. 26(b)(1)). Once the moving party shows that the requested materials are within the scope of discovery, the burden shifts to the opposing party to demonstrate the discovery is irrelevant, overbroad, or unduly burdensome. *SSL Servs., LLC v. Citrix Sys., Inc.*, No. 2-08-CV-158-TJW, 2010 WL 547478, at *2 (E.D. Tex. Feb. 10, 2010).

### III.  ARGUMENT

Brazos's motion to compel should be granted for three reasons. First, source code is fundamental to showing the operation of the accused Cisco products—all of which are software. Cisco's publicly available technical documents do not and cannot paint a complete picture of those products' operation *when implemented*. *See, e.g.*, *Edward D. Ioli Tr. v. Avigilon Corp.*, No. 2:10-CV-605-JRG, 2012 WL 5830711, *2-4 (E.D. Tex. Nov. 6, 2012). Second, Cisco's source code for the accused products—all of which are Cisco software—is plainly relevant to Brazos's infringement claims and on that basis, must be produced. *See* Fed. R. Civ. P. 26(b)(1). Third, Cisco's ongoing failure to comply with its obligation to produce source code unfairly prejudices Brazos by compressing the time Brazos has to develop and support its infringement case.

#### A.  Source Code is Necessary to Show the Operation of the Accused Cisco Products

Source code is necessary "to show the operation of the accused [Cisco] products." *See* Dkt. 41 at 2; *see also Blueport Co., LLC v U.S.*, 533 F.3d 1374, 1377 n.1 (Fed. Cir. 2008) ("Source code is the text of a software program written in a human-readable programming language."). As Brazos's expert Dr. Martin explains, source code provides information that Cisco's technical documentation does not. *See* Ex. B [Declaration of Paul D. Martin, Ph.D. ("Martin Decl.")] ¶¶ 5-9. While resources such as user guides, design documentation, and marketing documents may help understand how a product is likely to work, such materials are not always complete or accurate. *See id*. This is particularly true when, as here, the documents describe the design, implementation or structure of system subcomponents, protocol messages, or internal processes. *See id*.

By way of example, source code for the accused Cisco products would illustrate numerous functions and features relevant to the accused functionalities that are not described in Cisco's technical documentation, such as:

- the data structures that describe the configuration state, including which "context," "custom-defined dictionary," or "default dictionary" applies (as relevant to the '216 Patent);

- the configuration of diameter peer in ISG (as relevant to the '216 Patent);

- the 3GPP major and minor versions that can be used as contexts when choosing a definition (as relevant to the '216 Patent);

- the Diameter versions that can be used as contexts (as relevant to the '216 Patent);

- the standards supported by Cisco's Mobile Multimedia Gateway Platform Diameter dictionaries (as relevant to the '216 Patent);

- the contents of the various messages that are transmitted to and from the Serving General Packet Radio System (GPRS) Support Node (SGSN)—e.g., the PDP Context Request Message and Activate PDP Context Accept message (as relevant to the '859 Patent);

- the contents of the APN field (as relevant to the '859 Patent)

- the manner in which the APN value is interpreted in software and how this value is mapped to a public or private address—e.g., the APN Restriction Value on GGSN, which has values 0-4 for different types of APNs (as relevant to the '859 Patent);

- the manner in which the mapping table for GGSN maps an APN Restriction Value to an APN (as relevant to the '859 Patent);

- the process for dynamic and static addressing—e.g., allocating an address from an address pool (as relevant to the '859 Patent);

- the change off that occurs between the Cisco SP Wi-Fi Access Points and Wireless Controllers (as relevant to the '106 Patent);

- the contents of the HTTP request that is sent to the Network Functions Repository ("NRF") (as relevant to the '014 Patent).

- the manner in which different components of Cloud Core are implemented and how each Microservice communicates with one another (as relevant to the '014 Patent);

- the internal structure and level of the OSI model in which components are communicating (as relevant to the '014 Patent); and

- the manner in which mobile core integrates with the RAN, which would help identify which parts of Mobile Core are able to manage exchanges from various mobile devices (as relevant to the '014 Patent).

*See* Martin Decl. ¶¶ 8-10; *see also Dynamic Microprocessor Assocs. v. EKD Computer Sales*, 919 F. Supp. 101, 106 (E.D.N.Y. 1996) (noting that "source code is a fundamental component" in examining and evaluating "the structural parts of a computer program"); *Burnett v. Ford Motor Co.*, No. 13-CV-14207, 2015 WL 1527875, at *4 (S.D.W.Va. Apr. 3, 2015) (explaining that "source code is the foundation of" an operating system and thus is relevant to claims regarding that system's functions).

Cisco claims that the mere production of technical documents that describe the accused Cisco products is sufficient to show the operation of those products. Not so. The vast majority of Cisco's production consisted of publicly available documents to which Brazos already had access. Further, that Cisco may have produced technical documents that *describe* some feature of an accused software does not remedy its failure to produce source code that actually *shows that software's operation* for the reasons explained by Brazos's expert. *See* Martin Decl. ¶¶ 5-9; *see also Edward D. Ioli Tr.*, 2012 WL 5830711, at *2-4 (granting patentee's motion to compel accused infringer to produce source code and rejecting contention that the source code need not be produced if the accused infringer produces another document that allegedly speaks to the source code's functionality) (construing Patent Local Rule 3.4(a)).

Indeed, courts have rejected nearly identical arguments. In *Burnett v. Ford Motor Co.*, the defendant—like Cisco—contended that it was not required to produce source code for the accused operating system because the defendant had already produced "design, modification, and testing documents related to [that] system." 2015 WL 1527875, at *4. The court disagreed, explaining that source code "reflects an important step in the production" of the operating system and on that

6

basis alone, is relevant. *Id*. A plaintiff, the court reasoned, cannot be "forced to rely on [a defendant's] determination as to what is the 'most relevant' evidence in its possession." *Id*. at *5. Rather, it is entitled to review that evidence itself. *Id*. The same logic applies here.

Further, and contrary to Cisco's assertions, this case is readily distinguishable from *Drone Techs., Inc. v. Parrot S.A*, 838 F.3d 1283 (Fed. Cir. 2016). First, Brazos—unlike the plaintiff in *Drone*—has explained through the sworn declaration of its expert why source code is necessary to show the operation of the accused Cisco products and how Cisco's technical production falls short. *See* Martin Decl. ¶¶ 5-9; *cf. Drone*, 838 F.3d at 1298-99 (reasoning that the plaintiff failed to explain why defendant's document production was insufficient to show the operation of the accused products). Second, Brazos—unlike the plaintiff in *Drone*—has not made a blanket request for all source code for the accused products. *Cf. Drone*, 838 F.3d at 1298-99. Rather, Brazos has made a targeted request for source code that shows the operation of the accused products as they relate to the asserted claims of the Asserted Patents. *See* Ex. A, Request No. 1 (requesting source code for each "accused functionality").

### B. Source Code is Relevant to Brazos's Claims and its Production Would Not Be Overly Burdensome to Cisco

Cisco's source code also is plainly relevant to Brazos's claims. *See Baron Servs., Inc. v. Media Weather Innovations LLC*, 717 F.3d 907, 913, n. 9 (Fed. Cir. 2013) (explaining that source code is discoverable where it is "relevant and likely to lead to admissible evidence" under Fed. R. Civ. P. 26(b)(1)). For the reasons described by Brazos's expert, source code conveys information beyond that included in Cisco's technical documents and is necessary to provide a complete picture of the accused software's operation and functionality. *See* Martin Decl. ¶¶ 5-9. Courts routinely find source code relevant on similar facts. *See, e.g., Indacon, Inc. v. Facebook, Inc.*, No. SA-10-CA-966-OLG, 2012 WL 12538968, at *5 (W.D. Tex. Feb. 14, 2012) (ordering

production of "source code and all supporting documentation surrounding the code and its functionality" given it "is reasonably calculated to lead to the discovery of admissible evidence"); *Calendar Research LLC v. StubHub, Inc.*, No. 17-CV-4062-SVW-SSX, 2017 WL 10378338, at *10 (C.D. Cal. Nov. 14, 2017) (compelling production of source code where "[h]aving access to the source code as a whole will enable Plaintiff's expert to test [Defendant's] assertions and to identify and examine any portions that may contain evidence to support Plaintiff's claim").

Further, as noted above, Brazos's request for source code is narrow and proportional to the needs of the case. *See* Ex. A, Request No. 1; *see also MedImpact Healthcare Sys., Inc. v. IQVIA Inc.*, 2021 WL 5605209, at *3 (S.D. Cal. June 29, 2021) (finding plaintiff's request for source code was not overbroad where it was limited to products relevant to plaintiff's asserted claims). Indeed, Cisco has not even attempted to argue that producing the requested code would pose an undue burden. *See Geotag, Inc.*, 2013 WL 12141427, at *1 (granting motion to compel production of source code where defendants failed to "demonstrate that producing such information is overly broad or unduly burdensome or oppressive"); *In re Google Litig.*, No. 08-CV-03172-RMW (PSG), 2011 WL 286173, at *5 (N.D. Cal. Jan. 27, 2011) (rejecting Google's burdensomeness objection to source code related production because "Google offers no concrete, particularized evidence regarding the undue burden").

### C. Cisco's Delay Has Prejudiced—and Will Continue to Prejudice—Brazos

Cisco's delay in producing source code for the accused Cisco products is highly prejudicial to Brazos. Brazos served final infringement contentions on February 11, 2022, **without** the benefit of Cisco's source code or a complete production of relevant technical information relating to the accused Cisco products. Cisco may not continue to make unsubstantiated attacks on the merits of Brazos's infringement contentions while simultaneously withholding the very source code and

evidence necessary to support Brazos's infringement contentions and evaluate Respondents' rebuttals. *See, e.g.*, *SpeedTrack, Inc. v. Amazon.com, Inc.*, 2018 WL 3328423, *4-6 (N.D. Cal. July 6, 2018) (rejecting defendant's argument that plaintiff failed to support its infringement contentions when the defendant had refused to produce the source code necessary to evaluate the disputed functionality, reasoning that "allow[ing] [the defendant] to hide behind nonpublic source code" to support its arguments "would result in a miscarriage of justice").

## IV.  CONCLUSION

Brazos respectfully requests that the Court compel Cisco to immediately produce source code for the accused Cisco products. Source code is necessary to show the function and operation of those products and is plainly relevant to Brazos's infringement theories.

Dated: February 21, 2022

Respectfully submitted,

SUSMAN GODFREY L.L.P.

*/s/ Shawn Blackburn*
Max L. Tribble, Jr.
Bar No. 2021395
Shawn Blackburn
Bar No. 24089989 *(pro hac vice)*
Bryce Barcelo
Bar No. 24092081*(pro hac vice)*
sblackburn@susmangodfrey.com
mtribble@susmangodfrey.com
bbarcelo@susmangodfrey.com
**SUSMAN GODFREY LLP**
1000 Louisiana St, Suite 5100
Houston, TX 77002-5096
Tel: (713) 651-9366

Kalpana Srinivasan
Bar No. 237460 *(pro hac vice)*
ksrinivasan@susmangodfrey.com
**SUSMAN GODFREY LLP**

1900 Avenue of The Stars, Suite 1400
Los Angeles, CA 90067-6029
Tel: (310) 789-3100

Danielle M. Nicholson
Bar No. 325392 *(pro hac vice)*
dnicholson@susmangodfrey.com
**SUSMAN GODFREY LLP**
1201 Third Avenue, Suite 3800
Seattle, WA 98101
Tel: (206) 516-3880

Mark D. Siegmund
State Bar No. 24117055
Email:  mark@swclaw.com
**STECKLER WAYNE CHERRY & LOVE, PLLC**
8416 Old McGregor Road
Waco, Texas   76712
Telephone:  (254) 651-3690
Facsimile:   (254) 651-3689

*Counsel for WSOU Investments, LLC d/b/a Brazos Licensing and Development*

## **CERTIFICATION OF CONFERENCE**

The undersigned certifies that Brazos conferred with Cisco in good faith regarding the instant dispute. Counsel for Brazos and Cisco (including both parties' lead counsel) telephonically met and conferred regarding the basis for Brazos's motion to compel on November 5, 2021. For Brazos, Max Tribble, Shawn Blackburn, and Danielle Nicholson were present. For Cisco, Brian Rosenthal was present.

/s/ *Danielle Nicholson*
Danielle Nicholson
Counsel for Plaintiff

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on February 21, 2022, a true and correct copy of the above and foregoing instrument was e-filed with the Court and e-served upon all counsel of record using the Court's Electronic Filing Service Provider in accordance with Rule 21(a)(1) of the Texas Rules of Civil Procedure and by electronic mail as indicated below.

Brian Rosenthal
Katherine Dominguez
Allen Kathir
brosenthal@gibsondunn.com
kdominguez@gibsondunn.com
akathir@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166

Michael E. Jones
mikejones@potterminton.com
POTTER MINTON
110 North College, Suite 500
Tyler, TX 75702

Ryan Iwahashi
riwahashi@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, CA 94304

Kenneth G. Parker
kparker@gibsondunn.com
GIBSON, DUNN AND CRUTCHER LLP
3161 Michelson Drive
Irvine, CA 92612

/s/ *Mark D. Siegmund*
Mark D. Siegmund
Counsel for Plaintiff