**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | |
|---|---|
| WSOU INVESTMENTS, LLC D/B/A BRAZOS LICENSING AND DEVELOPMENT,<br><br>       Plaintiff,<br><br>v.<br><br>CISCO SYSTEMS, INC.,<br><br>       Defendant. | Case No. 6:21-CV-00128-ADA<br><br>JURY TRIAL DEMANDED<br><br>**FILED UNDER SEAL** |

**DEFENDANT CISCO SYSTEMS, INC.'S OPPOSITION TO PLAINTIFF'S MOTION**
**TO COMPEL PRODUCTION OF SOURCE CODE**

**TABLE OF CONTENTS**

Page

I.      BACKGROUND ...........................................................................................................1

II.     LEGAL STANDARD..................................................................................................3

III.    ARGUMENT ...............................................................................................................3

        A.      Source Code Cannot Remedy WSOU's Deficient Infringement Arguments ..........4

                1.      '859 Patent ......................................................................................................4

                2.      '216 Patent ......................................................................................................6

        B.      Source Code Production Is Not Proportional to the Needs of This Case.................8

        C.      WSOU Has Not Been Prejudiced...........................................................................9

IV.     CONCLUSION...........................................................................................................10

## TABLE OF AUTHORITIES

Page(s)

### CASES

*3rd Eye Surveillance, LLC v. U.S.*,
  143 Fed. Cl. 103 (Fed. Cl. 2019) ............................................................................9

*Burnett v. Ford Motor Co.*,
  2015 WL 1527875 (S.D.W. Va. Apr. 3, 2015)..........................................................9

*Cochran Consulting, Inc. v. Uwatec USA, Inc.*,
  102 F.3d 1224 (Fed. Cir. 1996)...........................................................................4, 9

*Crosby v. Louisiana Health Service and Indem. Co.*,
  647 F.3d 258 (5th Cir. 2011) ..................................................................................3

*Crossland v. Nationwide Mutual Ins. Co.*,
  2018 WL 4905353 (W.D. Tex. Oct. 9, 2018) ..........................................................3

*Drone Tech. Inc. v. Parrot S.A.*,
  838 F.3d 1283 (Fed. Cir. 2016)...................................................................2, 3, 4, 8

*Edward D. Ioli Trustee v. Avigilon Corp.*,
  2012 WL 5830711 (E.D. Tex. Nov. 16, 2012) .........................................................9

*Murphy v. Deloitte and Touche Grp. Ins. Plan*,
  619 F.3d 1151 (10th Cir. 2010) ..............................................................................3

*Omega Eng'g, Inc. v. Raytek Corp.*,
  334 F.3d 1314 (Fed. Cir. 2003)...............................................................................8

## TABLE OF ABBREVIATIONS

| Abbreviation | Meaning |
|---|---|
| '014 patent | U.S. Patent No. 9,357,014 |
| '106 patent | U.S. Patent No. 8,191,106 |
| '216 patent | U.S. Patent No. 8,989,216 |
| '859 patent | U.S. Patent No. 7,443,859 |
| 3GPP | 3rd Generation Partnership Project |
| APN | Access Point Name |
| AVP | Attribute Value Pair |
| Br. | WSOU's Motion to Compel Source Code (Dkt. 56) |
| Cisco | Defendant Cisco Systems, Inc. |
| Dkt. | Docket Number |
| GGSN | Gateway GPRS Support Node |
| GPRS | General Packet Radio Services |
| SGSN | Serving GPRS Support Node |
| WSOU | Plaintiff WSOU Investments, LLC d/b/a Brazos Licensing and Development |

After months of refusing to identify what source code WSOU actually wanted—and why the relevant features are not shown by the thousands of technical documents Cisco has already produced—WSOU finally identified for the first time in its opening brief the functionality that it alleges would be shown only in source code.  While Cisco does not agree with all of WSOU's allegations, Cisco has agreed to provide the requested source code for two of the four asserted patents.  After a meet and confer this week, the parties agree that the portion of WSOU's motion that pertains to the '106 and '014 patents is thus moot.

With respect to the remaining two patents, however, WSOU has still not shown a need for Cisco's source code.  Cisco produced thousands of technical documents over six months ago that comprehensively detail the operation of the Accused Products.  During this time period, WSOU failed to identify a single functionality that was not adequately disclosed by these documents, despite Cisco's repeated requests for this information.  Instead, WSOU incorrectly asserted that source code production is always required and blindly insisted on its production in this case without providing any further justification.  However, source code is not needed here.  The documents that Cisco already produced—upon which WSOU's infringement contentions are based—clearly demonstrate non-infringement.  There is no feature or functionality that the source code could possibly show that would salvage WSOU's infringement case.  Producing source code in such a circumstance, when the infringement contentions themselves demonstrate non-infringement, would permit an improper fishing expedition by WSOU with the only possible goal of looking for additional patents for WSOU to assert.  WSOU's motion to compel with respect to these two patents should be denied.

## I.      BACKGROUND

Pursuant to the Order Governing Proceedings, on August 18, 2021, Cisco produced "technical documents, including software where applicable, sufficient to show the operation of the

accused product." OGP 3.5.1 (Nov. 17, 2021).   This production comprised 9,806 technical documents, 1,103 of which were confidential.  The documents included user manuals, guides, and comprehensive configuration manuals detailing Cisco's software implementation. Cox Decl. ¶ 6.

On October 7, 2021, WSOU made a blanket request for Cisco's source code for the Accused Products.  Despite Cisco asking, WSOU refused to identify any alleged deficiencies or information allegedly missing from Cisco's technical production.  WSOU instead immediately demanded a meet and confer, stating WSOU would otherwise file a motion and indicate Cisco refused to meet and confer.  Ex. 1 (11/01/21 Email from S. Blackburn to R. Iwahashi).  On the meet and confer, Cisco repeated its request for WSOU to first identify any allegedly missing information from its production so Cisco could properly consider WSOU's request for source code.  WSOU again refused.  Rosenthal Decl. ¶ 2.

The parties raised the issue with the Court on November 16, 2021.  At this point, WSOU still had not identified any specific deficiencies in Cisco's technical production and did not do so in the joint email to the Court.  The Court denied WSOU's requested relief and ordered WSOU to distinguish *Drone Tech. Inc. v. Parrot S.A.* before it would order the requested discovery.  838 F.3d 1283, 1293 (Fed. Cir. 2016) (finding an abuse of discretion for a district court to compel source production "[w]ithout any explanation from [Plaintiff] as to any deficiencies in [Defendant]'s initial production"); *see* Ex. 2 (11/16/21 Email from R. Rundio to WSOU and Cisco).  WSOU did not do so.

Despite the Court's clear directive, on December 20, 2021, WSOU again made an unsubstantiated request for Cisco's source code through the written discovery requests it served.  These requests were still missing any indication that Cisco's technical production was deficient and contained no justification that source code was actually necessary to the case.

Finally, ***three months after the joint discovery email***, WSOU filed this motion to compel. In its motion, WSOU identified—for the first time—certain categories of information that were allegedly deficient in Cisco's production for which source code would allegedly clarify the operation of the Accused Products.

After receiving the motion, Cisco diligently investigated the categories of information WSOU identified in its motion, and had a meet and confer with WSOU earlier this week. Through that meet and confer, the parties were able to resolve the dispute with respect to the '106 and '014 patents, leaving only the '859 and '216 patents.

## II.    LEGAL STANDARD

"The scope of discovery is within the sound discretion of the trial judge, who may 'tailor discovery narrowly and . . . dictate the sequence of discovery.' However, the Court must limit discovery, if it determines, on motion or on its own, that 'the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive' or 'the proposed discovery is outside the scope permitted by Rule 26(b)(1).'" *Crossland v. Nationwide Mutual Ins. Co.*, 2018 WL 4905353, at *1 (W.D. Tex. Oct. 9, 2018) (internal citations omitted).

Although discovery rules should be construed broadly, "[r]ule 26(b) 'has never been a license to engage in an unwieldy, burdensome, and speculative fishing expedition.'" *Crosby v. Louisiana Health Service and Indem. Co.*, 647 F.3d 258, 264 (5th Cir. 2011) (citing *Murphy v. Deloitte and Touche Grp. Ins. Plan*, 619 F.3d 1151, 1163 (10th Cir. 2010)).

## III.    ARGUMENT

"[S]ource code is not necessary in every case." *Drone Tech.*, 838 F.3d at 1300. Indeed, the Federal Circuit has held that ordering source code is improper when Plaintiff has made no "showing that [Defendant]'s initial production did not meet the requirements" and "failed to show

its relevance or establish any need for the code as it relates to the operation of the accused products." *Id.*  Here, the same thing is true.  For the first time in this motion, WSOU identified ten "categories" of accused functionality allegedly not described in the thousands of technical documents already produced that "would illustrate numerous functions and features relevant to the accused functionalities" for the '859 and '216 patents.  Br. at 4.  This belated identification and generic statement of need does not save WSOU's motion because none of these categories can counter the futility of its infringement arguments.  In addition, the documents that were already produced adequately provide the relevant information for several of WSOU's identified categories.  Furthermore, any alleged prejudice is due to WSOU's own delay.

## A.    Source Code Cannot Remedy WSOU's Deficient Infringement Arguments

Source code production is not necessary in cases, such as this one, where the technical documents that were already produced are sufficient for the case.  *Cochran Consulting, Inc. v. Uwatec USA, Inc.*, 102 F.3d 1224, 1231 (Fed. Cir. 1996) (denying production of Read Only Memory ("ROM") code when schematics were produced).  Here, Cisco's technical documents already establish that WSOU's infringement theories cannot prevail, and no additional information could alter that conclusion.  WSOU cannot use these facially implausible allegations to obtain Cisco's highly confidential source code.

### 1.    '859 Patent

The '859 Patent relates generally to assigning public or private IP addresses in the well-known General Packet Radio Services (GPRS) cellular network.  All asserted claims of the '859 Patent require altering a well-known field—the Access Point Name (APN) field—of two known GPRS messages so that it would contain "information that explicitly indicates requesting either a private network address or a public network address to be assigned to the mobile station."

*See* '859 Patent at claim 1.  WSOU's Complaint and initial infringement contentions instead relied on a *completely different field,* called the "APN Restriction" field, which does *not* contain the name of an access point.  Compl. ¶ 29; Ex. 3 (Preliminary Infringement Contentions, Exhibit B at 2).  Thereafter, the Court construed the "APN field" as "[t]he specific field identified as 'Access Point Name' that contains at least the name of the access point."  Dkt. 50.  In doing so, the Court rejected WSOU's argument that the term was broader than that specific field in the standard.  *Id.*

Immediately after the Court's claim construction, Cisco wrote WSOU demanding—and expecting—that WSOU dismiss the '859 Patent.  Ex. 4 (Ltr. from B. Rosenthal to M. Tribble).  WSOU ignored the letter.  Instead, on February 11, WSOU served its final infringement contentions, alleging infringement based on *exactly the same theory* that was already precluded by the Court's claim construction.  WSOU brazenly continues to allege infringement based on information purportedly contained in the "APN Restriction" field, and *not* in the Access Point Name (APN) field.  Ex. 5 (Final Infringement Contentions, Exhibit B at 2).  In other words, WSOU simply ignored the Court's claim construction, blindly proceeding on the theory of infringement in defiance of the Court's order.

In the instant motion, WSOU alleges that source code is necessary to identify information regarding "the APN Restriction Value on GGSN" and "the manner in which the mapping table for GGSN maps an APN Restriction Value."  Br. at 5.  But that information is legally *irrelevant* to infringement because the Court already ordered that the claim refers to a *different* field:  the Access Point Name (APN) field that contains the name of the access point.  Dkt. 50.

Even if WSOU's infringement theory was not precluded by and in conflict with the Court's claim construction order, Cisco has already provided technical documentation that demonstrates its products' compliance with the 3GPP GPRS standard for the relevant functionalities.  *See* Cox

Decl. ¶ 12. 

The source code cannot—and will not—contradict Cisco's already-produced documents as the fields are defined by the standard and the fields must be consistent with the standard to ensure interoperability. *Id.* at ¶¶ 10–11.

Source code is also not necessary for other features WSOU identified.

Again, Cisco's source code cannot contradict the standard or its products would not be able to interoperate with other devices. There is no need for source code given the standard and Cisco's documents showing compliance with the standard.

In short, there is no question about how Cisco's products work given the reams of documentation Cisco has provided, and the purported bases WSOU relies on are not relevant to infringement. WSOU's motion as to the '859 Patent should be denied.

## 2. '216 Patent

The '216 Patent relates to a dictionary complying with the Diameter protocol. In particular, the patent describes and claims a *single* context-specific Diameter dictionary that contains multiple definitions for commands and AVPs. '216 Patent at 1:53–59. In contrast, in the prior art, each command or AVP in a Diameter dictionary had a single definition, and one would use multiple Diameter dictionaries to handle different versions of standards. *See id.* at 1:42–47.

This distinction is made unambiguously clear by the patent's prosecution history.  The applicant amended the language of claim 1 to require a *single* dictionary that supports *multiple* versions of a standard, and distinguished the prior art by noting such art disclosed using multiple dictionaries to support multiple versions:

> 1.    (Currently Amended) A tangible non-transitory storage device readable by a machine, embodying a Diameter protocol command dictionary comprising:
>
>       a definition for a Diameter protocol command or attribute value pair (AVP), wherein said Diameter protocol command or AVP is defined by a default definition unless a specific context applies in which case said command or AVP is defined by a context-specific definition, ~~wherein~~ said Diameter protocol command dictionary is formatted in an Extensible Markup Language (XML) file, and the Diameter protocol command dictionary supports multiple versions of a standard.

*See* Ex. 6 ('216 Prosecution History, 3/24/2014 Claim Amendment and Remarks) at 2.

> While McNamee uses dictionaries, McNamee requires the server to interface with multiple dictionaries for different protocols across numerous network nodes. See paragraph [0095].  ==McNamee fails to disclose a single dictionary that handles multiple== protocol versions.   Zhang and Stenfelt fail to remedy the deficiencies of McNamee.   Thus, Applicant respectfully submits that claims 1, 4, and 13 are allowable over the references of record.

*See id.* at 7.

Cisco's Diameter dictionaries are of the type explicitly distinguished by the '216 Patent. Contrary to the '216 Patent, Cisco's Diameter dictionaries have a single definition for each command and AVP, and do *not* support multiple protocol versions.  This is not in dispute; WSOU's own infringement contentions make this clear because they allege infringement based on Cisco's use of *multiple* custom Diameter dictionaries.  *See, e.g.*, Ex. 7 (Final Infringement Contentions, Ex. A at 3–4).  As demonstrated by Cisco's technical documentation, Cisco supports multiple

standard versions by using multiple dictionaries, not by using a single dictionary with multiple definitions for commands and AVPs.  Cox Decl. ¶ 21.

WSOU cannot in good faith continue to claim that Cisco's multiple dictionaries infringe the '216 Patent.  *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1324 (Fed. Cir. 2003) ("[W]here the patentee has unequivocally disavowed a certain meaning to obtain his patent, the doctrine of prosecution disclaimer attaches and narrows the ordinary meaning of the claim congruent with the scope of the surrender.").  Moreover, WSOU cannot blindly disregard Cisco's multiple dictionaries and request source code in hopes of finding that the source code contradicts the technical documents.

Critically, the information that WSOU alleges is missing from the technical production, including the configuration of diameter peer in ISG, which Diameter versions can be used as contexts, which 3GPP versions can be used as contexts, and which standards are supposed by the Mobile Multimedia Gateway Platform, is wholly irrelevant to the infringement question, namely whether there is a single dictionary that supports multiple versions of a standard.  The documents Cisco has already produced establish that no such single dictionary exists.  *See* Cox Decl. ¶  21.

### B.    Source Code Production Is Not Proportional to the Needs of This Case

Parties requesting the discovery of source code should be held to a high burden of proving its necessity because source code is "often a company's most sensitive and most valuable property."  *Drone Tech.*, 838 F.3d at 1300 n.1.  Thus, source code should be discoverable only when a party can make a good faith showing of its need, which WSOU is unable to do.

In addition, as discussed above, Cisco's initial technical production clearly demonstrates the futility of WSOU's infringement theories for the '859 and '216 patents.  Although source code production can be necessary in some cases, "[e]xamining source code is not the only means to

determining functionality, and to that end, plaintiffs should employ these other means before demanding source code." *3rd Eye Surveillance, LLC v. U.S.*, 143 Fed. Cl. 103, 111 (Fed. Cl. 2019). When these other means already clearly demonstrate non-infringement, WSOU has no good faith basis to continue asserting infringement for the '859 and '216 patents, much less burden Cisco with unnecessary discovery demands. Despite WSOU's argument to the contrary, source code is not needed to make an infringement assessment because "[i]nfringement resides not in the way the claim limitations and functions are translated into computer language, but whether these limitations and functions are performed by the [] device." *Cochran Consulting Inc.*, 102 F.3d at 1231.

WSOU's cases supporting source code production are wholly inapposite. In *Edward D. Ioli Trustee v. Avigilon Corp.*, 2012 WL 5830711 (E.D. Tex. Nov. 16, 2012), the court ordered source code production despite the fact that other documents outlined technical functionality. However, the Eastern District of Texas's patent local rules explicitly contemplate source code production. Similarly, *Burnett v. Ford Motor Co.* was a products liability case and *how* exactly the system was programmed to react to certain events was at issue. 2015 WL 1527875, at *5 (S.D.W. Va. Apr. 3, 2015). Unlike *Burnett*, in this case, the relevant consideration is whether certain functionalities are present, not the specific code structure in which they are implemented.

### C.    WSOU Has Not Been Prejudiced

WSOU has not been prejudiced at all by the lack of source code production in this case. WSOU's Infringement Contentions, and the technical document citations in those contentions, plainly demonstrate non-infringement. WSOU is choosing to ignore these documents and further burden Cisco with discovery, when in reality source code would only serve to further confirm the lack of merit of these theories.

In addition, any resulting prejudice from the delay in obtaining source code review is the consequence of WSOU's own lack of diligence.  WSOU has had access to Cisco's voluminous technical product since August.  In the six months that have passed, WSOU failed to identify a single operation that was not adequately disclosed by these documents until the filing of this motion.  This is despite Cisco's repeated requests for this information and its offer to consider a more narrowed request.  In November, several months before the due date of WSOU's Final Infringement Contentions, the Court issued a clear ruling that it would not order an unjustified production of source code and granted WSOU leave to file this motion.  However, WSOU continued to serve discovery requests for source code as if the Court's discovery ruling had never occurred.  If source code was truly necessary for WSOU to advance legitimate infringement theories, WSOU could have identified the alleged deficiencies and filed this motion well in advance of when it actually did.  Instead, it delayed this motion until the after deadline for Final Contentions and failed to give Cisco any opportunity to remedy its production.  The Court should not now permit access to Cisco's source code.

## IV.    CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court deny WSOU's motion to compel source code as to the '859 and '216 patents.

Date: March 10, 2022

Respectfully Submitted,

*  /s/Brian Rosenthal with permission, by*
*Michael E. Jones*

Michael E. Jones
SBN: 10929400
**POTTER MINTON**
110 North College, Suite 500
Tyler, TX 75702
mikejones@potterminton.com
Telephone: (903) 597-8311
Facsimile: (903) 593-0846

Brian Rosenthal
Katherine Dominguez
Allen Kathir
Admitted *pro hac vice*
brosenthal@gibsondunn.com
kdominguez@gibsondunn.com
akathir@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
200 Park Avenue
New York, NY 10166
Tel:  (212) 351-4000

Ryan Iwahashi
Admitted *pro hac vice*
riwahashi@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
1881 Page Mill Road
Palo Alto, CA 94304
Tel: (650) 849-5367

*Attorneys for Defendant Cisco Systems, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that all counsel of record who have consented to electronic service are being served with a copy of this document via electronic mail on March 10, 2022.

I also hereby certify that all counsel of record who have consented to electronic service are being served with a notice of filing of this document, under seal, pursuant to L.R. CV-5(a)(7) on March 10, 2022.

*/s/ Michael E. Jones*