**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| WSOU INVESTMENTS, LLC D/B/A BRAZOS LICENSING AND DEVELOPMENT, | Case No. 6:21-CV-00128-ADA |
| Plaintiff, | **JURY TRIAL DEMANDED** |
| v. | |
| CISCO SYSTEMS, INC., |  |
| Defendant. | |

**DEFENDANT'S OPPOSED MOTION TO DISMISS
FOR LACK OF SUBJECT MATTER JURISDICTION
UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(1)**

## TABLE OF CONTENTS

Page

I.    INTRODUCTION ........................................................................................................1

II.    FACTUAL BACKGROUND .......................................................................................3

    A.   ████████████████████████████████ ...........................3

    B.   ███████████████████████████████ .......................5

    C.   ██████████████████████████████████
       ███ ...........................................................................5

    D.   Wade Assigned the PPA—Not the Patents—to WSOU ...........................6

    E.   ████████████████████████ .............................7

    F.   WSOU Recorded the Operative Assignment Agreements with the USPTO ...........8

III.   WSOU BEARS THE BURDEN TO PROVE STANDING .............................................9

IV.   WADE NEVER ASSIGNED THE '106 PATENT TO WSOU .......................................11

    A.   ████████████████████████████ .........................11

    B.   Wade Never Assigned *Any* Patent Rights to WSOU ...............................14

    C.   Alternatively, Wade's Assignment to WSOU Is Invalid ............................16

V.    WSOU LACKS STANDING TO SUE FOR PRE-ASSIGNMENT DAMAGES
    FOR THE '014, '216, AND '859 PATENTS ................................................................18

    A.   WSOU Never Acquired the Right to Sue for Past Damages ....................18

    B.   Present Assignment Language Identifies Attachments C and E as the
       Operative Assignment of the '014, '216, and '859 Patents....................19

VI.   CONCLUSION.......................................................................................................20

## TABLE OF AUTHORITIES

Page(s)

### CASES

*Abbott Point of Care Inc. v. Epocal, Inc.*,
    666 F.3d 1299 (Fed. Cir. 2012).................................................................................9

*Abraxis Bioscience, Inc. v. Navinta LLC*,
    625 F.3d 1359 (Fed. Cir. 2010)...................................................................9, 10, 17

*Aeronautical Indus. Dist. Lodge 91 of Int'l Ass'n of Machinists & Aerospace*
    *Workers, AFL-CIO v. United Techs. Corp.*,
    230 F.3d 569 (2d Cir. 2000)......................................................................................16

*Alps S., LLC v. Ohio Willow Wood Co.*,
    787 F.3d 1379 (Fed. Cir. 2015)................................................................................10

*Arachnid, Inc. v. Merit Indus.*,
    939 F.2d 1574 (Fed. Cir. 1991)...................................................................10, 12, 19

*Barlow & Haun, Inc. v. United States*,
    805 F.3d 1049 (Fed. Cir. 2015)................................................................................11

*Bd. Of Trustees of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*,
    583 F.3d 832 (Fed. Cir. 2009), *aff'd*, 563 U.S. 776 (2011) ...............................12, 13

*Bowmer v. Bowmer*,
    50 N.Y.2d 288 (N.Y. 1980) .....................................................................................14

*Campbell v. Thomas*,
    897 N.Y.S.2d 460 (N.Y. 2010) ................................................................................18

*DDB Techs., L.L.C. v. MLB Advanced Media, L.P.*,
    517 F.3d 1284 (Fed. Cir. 2008)................................................................................12

*Enzo APA & Son, Inc. v. Geapag A.G.*,
    134 F.3d 1090 (Fed. Cir. 1998)..............................................................................2, 10

*Epistar Corp. v. Int'l Trade Comm'n*,
    566 F.3d 1321 (Fed. Cir. 2009)................................................................................15

*F.D.I.C. v. McFarland*,
    243 F.3d 876 (5th Cir. 2001) ...................................................................................15

*Faison v. Lewis*,
    25 N.Y.3d 220 (N.Y. 2015) .....................................................................................16

*Gellman v. Telular Corp.*,
2010 WL 5173213 (E.D. Tex. Dec. 14, 2010) .................................................................12, 13

*Green Tech. Lighting Corp. v. Liberty Surplus Ins. Corp.*,
No. 1:18-CV-01799 (PAC), 2020 WL 2036705 (S.D.N.Y. Apr. 28, 2020) ..........................13

*LNV Corp. v. Sorrento*,
31 N.Y.S.3d 922, 2016 N.Y. Slip Op. 50250(U), (Sup. Ct. N.Y. Feb. 29,
2016) .................................................................................................................................16

*Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*,
925 F.3d 1225 (Fed. Cir. 2019) ....................................................................................10, 11

*Minco, Inc. v. Combustion Eng'g, Inc.*,
95 F.3d 1109 (Fed. Cir. 1996) .............................................................................................19

*Moore v. Marsh*,
74 U.S. 515 (1868) ......................................................................................................10, 19

*Morrow v. Microsoft Corp.*,
499 F.3d 1332 (Fed. Cir. 2007) ............................................................................10, 11, 14

*Muzak Corp. v. Hotel Taft Corp.*,
1 N.Y.2d 42 (N.Y. 1956) ....................................................................................................14

*Nat'l Org. for Women, Inc. v. Scheidler*,
510 U.S. 249 (1994) ............................................................................................................11

*Neutron Depot, LLC v. All Web Leads, Inc.*,
No. AU-16-CA-00901-SS, 2017 WL 9538893 (W.D. Tex. Nov. 30, 2017) ..........................2

*S.O.T.A.T., Inc. v. Frank's Int'l, Inc.*,
No. CIV.A. 2:06 CV 523, 2008 WL 4093599 (E.D. Tex. Aug. 28, 2008) ............................19

*Script Sec. Sol., LLC v. Amazon.com, Inc.*,
No. 2:15-CV-1030-WCB, 2016 WL 6433776 (E.D. Tex. Oct. 31, 2016) ..............................9

*Sicom Sys., Ltd. v. Agilent Techs., Inc.*,
427 F.3d 971 (Fed. Cir. 2005) ...........................................................................................2, 9

*Speedplay, Inc. v. Bebop, Inc.*,
211 F.3d 1245 (Fed. Cir. 2000) ...........................................................................................12

*Sphere Drake Ins. Ltd. v. Clarendon Nat'l Ins. Co.*,
263 F.3d 26 (2d Cir. 2001) ..................................................................................................18

*Spota v. Jackson*,
10 N.Y.3d 46 (N.Y. 2008) ...................................................................................................18

*Uniloc 2017 LLC v. Google LLC*,
    No. 4:20-cv-05339-YGR (N.D. Cal. Dec. 22, 2020) ............................................................ 11

*Uniloc USA, Inc. v. Apple, Inc.*,
    2020 WL 7122617 (N.D. Cal. Dec. 4, 2020) ........................................................................ 11

*Wacoh Co. v. Chrysler LLC*,
    No. 08-cv-456-slc, 2009 WL 36666 (W.D. Wis. Dec. 1, 2008) ................................................ 9

*WiAV Sols. LLC v. Motorola, Inc.*,
    631 F.3d 1257 (Fed. Cir. 2010) ..................................................................................... 10, 11

## STATUTES

35 U.S.C. § 281 ........................................................................................................................ 10

## OTHER AUTHORITIES

BLACK'S LAW DICTIONARY (11th ed. 2019) ............................................................................. 16

Restatement (Second) of Contracts § 203(c) .............................................................................. 14

Restatement (Second) of Contracts § 328 (1981) ....................................................................... 15

5B WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1350 (3d ed. 2004) ......................... 9

**TABLE OF ABBREVIATIONS**

| Abbreviation | Term |
|---|---|
| '014 patent | U.S. Patent No. 9,357,014 |
| '106 patent | U.S. Patent No. 8,191,106 |
| '216 patent | U.S. Patent No. 8,989,216 |
| '859 patent | U.S. Patent No. 7,443,859 |
| Amended PPA | Amended Patent Purchase Agreement |
| Asserted Patents | '014 patent, '106 patent, '216 patent, and '859 patent, collectively |
| ██████████ | ████████████████████████████████ |
| Nokia entities | Alcatel Lucent, Nokia Solutions and Networks BV, and Nokia Oy, collectively |
| NPE | Non-practicing entity |
| PPA | ████████ Patent Purchase Agreement between the Nokia entities and Wade (Ex. A) |
| Wade | Wade and Company |
| Wade/WSOU Agreement | Assignment of Patent Purchase Agreement (Ex. C) |
| WSOU | WSOU Investments, LLC |
| USPTO | United States Patent & Trademark Office |

**TABLE OF EXHIBITS**

| Exhibit | Document |
|---------|----------|
| Ex. A | ██████████ Patent Purchase Agreement |
| Ex. B | ██████████ First Amendment to Patent Purchase Agreement |
| Ex. C | ██████████ Wade/WSOU Agreement |
| Ex. D | ████████████████████ |
| Ex. E | ██████████ Fourth Amendment to Patent Purchase Agreement |
| Ex. F | Assignment of '106 patent from inventors to Alcatel Lucent (USPTO Assignment Database Reel 019446 Frame 0995) |
| Ex. G | Assignment of '014 patent from inventors to Alcatel Lucent (USPTO Assignment Database Reel 032779 Frame 0559) |
| Ex. H | Assignment of '216 patent from inventors to Alcatel-Lucent Canada, Inc. (USPTO Assignment Database Reel 028090 Frame 0775) |
| Ex. I | Assignment from Alcatel-Lucent Canada, Inc. to Alcatel Lucent (USPTO Assignment Database Reel 030252 Frame 0251) |
| Ex. J | Assignment of '859 patent from inventor to Nokia Corporation (USPTO Assignment Database Reel 012400 Frame 0759) |
| Ex. K | Assignment from Nokia Corporation to Nokia Technologies Oy (USPTO Assignment Database Reel 035602 Frame 0257) |
| Ex. L | Assignment from Alcatel Lucent to WSOU Investments, LLC (USPTO Assignment Database Reel 052372 Frame 0675) |
| Ex. M | Assignment from Nokia Technologies Oy to WSOU Investments, LLC (USPTO Assignment Database Reel 052372 Frame 0540) |
| Ex. N | Assignment documents recorded by WSOU Investments, LLC (USPTO Assignment Database Reel 044000 Frame 0053) |
| Ex. O | USPTO Patent Assignment History of '106 patent |
| Ex. P | USPTO Patent Assignment History of '014 patent |
| Ex. Q | USPTO Patent Assignment History of '216 patent |

| Ex. R | USPTO Patent Assignment History of '859 patent |
|-------|------------------------------------------------|
| Ex. S | ████████████ Fifth Amendment to Patent Purchase Agreement |
| Ex. T | BLACK'S LAW DICTIONARY (11th ed. 2019) (defining "void") |
| Ex. U | 2020 Patent Dispute Report: Year in Review |
| Ex. V | Analytics: The Most Litigious District Court Patent Plaintiffs |
| Ex. W | FTC Study: Patent Assertion Entity Activity |
| Ex. X | License agreements between ████████████████████ |

Defendant moves under FRCP 12(b)(1) to dismiss WSOU's claims of infringement relating to the '106 patent because WSOU does not own the '106 patent and thus lacks standing to bring claims involving it.

Additionally, Defendant moves under FRCP 12(b)(1) to dismiss WSOU's claims for damages for infringement of the '014, '216, and '859 patents before ████████████ because WSOU does not have the right to sue for damages prior to this date with respect to these patents.

## I.    INTRODUCTION

WSOU lacks standing for multiple independent reasons.  By way of background, WSOU is an NPE founded by Craig Etchegoyen.  Its primary business is threatening and filing lawsuits based on patents that it purportedly acquired from Nokia and related entities.  However, WSOU never actually acquired the '106 patent.  This is not the first time Mr. Etchegoyen failed to acquire sufficient rights to patents before asserting them.  In just the last two years, Uniloc—another NPE founded by Mr. Etchegoyen—has had lawsuits against Apple and Google dismissed because it did not have exclusionary rights in the asserted patents.  WSOU has never produced any evidence substantiating its claims of standing, nor has WSOU recorded any such evidence with the USPTO.  WSOU claims to have "all rights, title, and interest in and to the [Asserted Patents], including the right to assert all causes of action arising under the [Asserted Patents] and the right to any remedies for the infringement."  Dkt. 1, ¶¶ 9, 24, 39, 74.  But WSOU is wrong for several reasons.

First, the '106 patent was never assigned to WSOU.  Alcatel Lucent, the first assignee of the '106 patent, assigned the patent to an entirely different company called Wade pursuant to a contract called the Patent Purchase Agreement ("PPA") between Wade and several Nokia entities.  The PPA was an agreement to assign, ████████████████████████████████████ ████████████████████████████████████.  Alcatel Lucent performed and extinguished that obligation a few days after the PPA was executed.  Months later, Wade assigned

its interest *in the PPA* to WSOU.  But Wade never assigned the *patents* to WSOU.  Under bedrock principles of contract law, Wade's assignment of its interest in the PPA did *not* assign the patents because the obligation to assign patents had already been executed and was completed. Accordingly, Wade retained any ownership interests it had in the '106 patent.  No interest in that patent was ever assigned to WSOU.

Second, even if there were some purported assignment to WSOU of *some* interest in the '106 patent—and there is not—WSOU still has a fatal standing problem.  ███████████ ██████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ █████████████████████████████  As a result, any purported assignment from Wade to WSOU would be void *ab initio* under the PPA.

WSOU also never obtained the right to sue for past damages relating to the '014, '216, and '859 patents.  The assignment agreements pertaining to these patents do not expressly convey the right to sue for past infringement and, therefore, WSOU cannot bring a claim for damages on these patents prior to November 26, 2019, the date of the assignment of these patents to WSOU.

Each of these defects is jurisdictional and cannot retroactively be cured because "[s]tanding must be present at the time the suit is brought."  *Sicom Sys., Ltd. v. Agilent Techs., Inc.*, 427 F.3d 971, 975–76 (Fed. Cir. 2005); *see also Enzo APA & Son, Inc. v. Geapag A.G.*, 134 F.3d 1090, 1093 (Fed. Cir. 1998) ("[N]unc pro tunc assignments are not sufficient to confer retroactive standing."); *Neutron Depot, LLC v. All Web Leads, Inc.,* No. AU-16-CA-00901-SS, 2017 WL 9538893, at *2, n.3 (W.D. Tex. Nov. 30, 2017) (rejecting argument that after suit was filed Plaintiff gained the retroactive right to sue for past infringement).  As a result, WSOU's claims of infringement as to the '106 patent must be dismissed, and WSOU's claims of infringement as to

the '014 patent, '216 patent, and '859 patent must be limited to damages beginning on November

26, 2019.

## II.    FACTUAL BACKGROUND

    A.    ████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████   ████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████████████

---

[1]  The named inventors of the '106 patent originally assigned Alcatel Lucent the "entire right, title interest, property and benefit for Canada, the United States of America and all other countries" the patent application that ultimately issued as the '106 patent on June 1 and June 4, 2007.  Ex. F (USPTO Reel 019446 Frame 0995), at 2.



*Id.* at WSOU-CISCO006495–96.  If signing the PPA itself assigned patents to Wade, then there

would be no need to ███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████.

████████████████████████████████████████

███████████████████████████████████████████████

██ ████████████████████████████████████████

**B.** ████████████████████████████████

███████████████████████████████████████████

█████████████████████████████████████████

███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████

███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████

██████████████████████████

**C.** ████████████████████████████████████
████

█████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████   Amended Schedule B1 thus became the operative assignment for

the '106 patent.  The assignment clause of Amended Schedule B1 states that the Assignor "assigns,

transfers, and conveys, unto Assignee, all of Assignor's rights, title, and interest in and to each of

the Assigned Patents." *Id.* at WSOU-CISCO007324.  It further states that the "assignment, transfer,

and conveyance to Assignee set forth above will become effective on the Assignment Date and is

made subject to certain encumbrances and retained rights for the Assigned Patents in favor of

Assignor and/or its assignees and licensees." *Id.*

The Amended PPA likewise did not amend the language ██████████████████████



### D.    Wade Assigned the PPA—Not the Patents—to WSOU

On August 21, 2017, Wade assigned its interest in the PPA (including its amendments) to

WSOU pursuant to an Assignment of Patent Purchase Agreement ("Wade/WSOU Agreement").

Ex. C at WSOU-CISCO006222.  The one-page Wade/WSOU Agreement stated WSOU "accepts

the whole of the interest of Wade and Company in ***the Patent Purchase Agreement***" in the

provision below:

NOW, THEREFORE, Wade and Company wishes to assign the whole of its interest in the Patent Purchase Agreement to WSOU Investments LLC

> Wade and Company hereby assigns to WSOU Investments LLC and WSOU Investments LLC hereby accepts the whole of the interest of Wade and Company in the Patent Purchase Agreement.

*Id.* (emphasis added). But because WSOU is an NPE, Wade's assignment of its interest in the PPA ██████████████████████████████████████████████████████

Assuming *arguendo* that Wade's assignment did not violate ██████████████, the Wade/WSOU Agreement assigned only Wade's interest (*i.e.*, ongoing and future obligations) in the **PPA itself** to WSOU. Because the assignment of patents to Wade under the PPA was already executed by the Nokia entities, this completed obligation did **not** transfer under the Wade/WSOU Agreement; there was never any assignment of the patents to WSOU. Ex. C at WSOU-CISCO006222. Thus, WSOU never obtained rights to the '106 patent from Wade.

### E.   The Nokia Entities Did Not Grant The Right to Sue for Past Infringement to Wade or WSOU

The assignments of the '014, '216, and '859 patents, which occurred in 2019, did not convey a right to sue for past damages. The Nokia entities[2] assigned these three patents directly to WSOU pursuant to a █████████████████████████████████████

████████████████████████████████████████████████████████

---

[2]  The Nokia entities received these patents via assignments from the named inventors. The inventors of the '014 patent assigned their "entire right, title and interest, for the United States" to Alcatel Lucent in 2014. Ex. G (USPTO Reel 032779 Frame 0559), at 2. The inventors of the '216 patent assigned their "entire right, title, interest, property and benefit for Canada, the United States of America and all other countries" to Alcatel-Lucent Canada, Inc. in 2011 (Ex. H (USPTO Reel 028090 Frame 0775), at 2), which subsequently assigned its "right, title and interest" to Alcatel Lucent in 2013 (Ex. I (USPTO Reel 030252 Frame 0251), at 3). The inventor of the '859 patent assigned his "entire right, title and interest . . . throughout the world" to Nokia Corporation in 2001 (Ex. J (USPTO Reel 012400 Frame 0759), at 3), which subsequently assigned its "right, title, and interest" to Nokia Technologies Oy in 2015 (Ex. K (USPTO Reel 035602 Frame 0257), at 3).

██████████████████████████████████████████████████ ███████████

████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████:

████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████

*Id.* at WSOU-CISCO006464.  █████████████████████████████████

████████████████████████████████████████████████████████████████

█████████████████████████████████████████████ ███████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████████

### F.    WSOU Recorded the Operative Assignment Agreements with the USPTO

On September 25, 2017, WSOU recorded with the USPTO several documents relating to

the '106 patent, including: (1) the patent assignment of Amended Schedule B1 of the PPA; and

(2) the Wade/WSOU Agreement. *See* Ex. O (USPTO assignment record for '106 patent); Ex. N

(USPTO Reel 044000 Frame 0053) at 84–88. These documents show that Alcatel Lucent assigned

the '106 patent to Wade, and not directly to WSOU, and that WSOU viewed Amended Schedule

B1 as the operative assignment for the '106 patent.

Similarly, on April 10, 2020, WSOU recorded Attachment C, the specific patent assignment from Alcatel Lucent to WSOU, with the USPTO to show its purported ownership of the '014 and '216 patents.  Ex. L (USPTO Reel 052372 Frame 0675).  On the same day, WSOU recorded Attachment E, the specific patent assignment from Nokia Technologies Oy, with the USPTO with respect to the '859 patent.  *See* Ex. M (USPTO Reel 052372 Frame 0540).

## III.    WSOU BEARS THE BURDEN TO PROVE STANDING

"Standing to sue is a threshold requirement in every federal action."  *Sicom Sys.*, 427 F.3d at 975 (Fed. Cir. 2005).   As the plaintiff, WSOU bears "the burden to show necessary ownership rights to support standing to sue."  *Abbott Point of Care Inc. v. Epocal, Inc.*, 666 F.3d 1299, 1302 (Fed. Cir. 2012).   To meet its burden, WSOU "must demonstrate that it held enforceable title to the patent at the inception of the lawsuit" or else its infringement claims as to the '106 patent must be dismissed for lack of jurisdiction.  *Abraxis Bioscience, Inc. v. Navinta LLC*, 625 F.3d 1359, 1364 (Fed. Cir. 2010).[3]   These standards apply to "each claim [a plaintiff] seeks to press," including for past infringement.  *Wacoh Co. v. Chrysler LLC*, No. 08-cv-456-slc, 2009 WL 36666, at *9 (W.D. Wis. Dec. 1, 2008).

The plaintiff must also satisfy the requirements of both Article III of the U.S. Constitution

---

[3]  Where, as here, the standing challenge is "factual" rather than "facial," the Court "does not assume the correctness of the factual allegations in the complaint.  Rather, in the case of a factual challenge to jurisdiction, the question is whether the facts actually establish that the court has jurisdiction over the matter.   In that setting, the burden is on the plaintiff to show jurisdiction, and parties may offer factual evidence bearing on that question."  *Script Sec. Sol., LLC v. Amazon.com, Inc.*, No. 2:15-CV-1030-WCB, 2016 WL 6433776, at *2 (E.D. Tex. Oct. 31, 2016) (citing 5B WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1350, at 154–80 (3d ed. 2004)).    In a factual 12(b)(1) challenge, it is appropriate to consider documentary evidence produced in the litigation, such as the agreements referenced herein.  *Script Sec.*, 2016 WL 6433776, at *2.

(constitutional standing) and 35 U.S.C. § 281 (statutory standing).  *See*, *e.g.*, *Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*, 925 F.3d 1225, 1234–36 (Fed. Cir. 2019).  Constitutional standing determines whether a plaintiff "may invoke the judicial power" at all, while statutory standing "establish[es] when a party may obtain relief under the patent laws."  *Id.* at 1235.  To meet the "injury in fact" requirement for constitutional standing, the plaintiff must possess exclusionary rights in the patent.  *Id.* at 1234 (citing *WiAV Sols. LLC v. Motorola, Inc.*, 631 F.3d 1257, 1264 (Fed. Cir. 2010)).  "Exclusionary rights" are "the ability to exclude others from practicing an invention or 'to forgive activities that would normally be prohibited under the patent statutes.'"  *Id.* (quoting *Morrow v. Microsoft Corp.*, 499 F.3d 1332, 1342 (Fed. Cir. 2007)).  A plaintiff lacking exclusionary rights cannot have constitutional standing because no injury in fact can occur.  *Morrow*, 499 F.3d at 1340–41.

Further, "the general rule is that one seeking to recover money damages for infringement of a United States patent (an action 'at law') must have held the legal title to the patent during the time of the infringement."  *Arachnid, Inc. v. Merit Indus.*, 939 F.2d 1574, 1579 (Fed. Cir. 1991).  The mere reference in an assignment to all right, title, and interest in the patent does not transfer the right to sue for past infringement.  *Moore v. Marsh*, 74 U.S. 515, 522 (1868).  "A party may sue for past infringement transpiring before it acquired legal title to a patent if a written assignment *expressly grants* the party a right to do so."  *Abraxis*, 625 F.3d at 1367 (emphasis added).  Standing to sue for past infringement cannot be cured.  *See Enzo*, 134 F.3d at 1093 ("nunc pro tunc assignments are not sufficient to confer retroactive standing"); *Alps S., LLC v. Ohio Willow Wood Co.*, 787 F.3d 1379, 1384 (Fed. Cir. 2015) (holding nunc pro tunc agreement cannot cure a defect in standing that existed when suit was initiated).

The right to sue for damages predating patent assignment is an exclusionary right because

it provides the plaintiff with the right to exclude others from practicing the invention during that period (which is the legally protected interest that is harmed by an alleged infringement).   *Lone Star*, 925 F.3d at 1234; *WiAV Sol.*, 631 F.3d at 1264–65.   Whether the plaintiff holds the right to sue for alleged infringement during that pre-assignment period is therefore a constitutional standing issue.   *Lone Star*, 925 F.3d at 1234–35.   A challenge to a plaintiff's constitutional standing is properly raised under FRCP 12(b)(1).   *Uniloc 2017 LLC v. Google LLC*, No. 4:20-cv-05339-YGR, at *1, *6 (N.D. Cal. Dec. 22, 2020); *see also Uniloc USA, Inc. v. Apple, Inc.*, 2020 WL 7122617 (N.D. Cal. Dec. 4, 2020) (dismissing case for lack of standing).   The plaintiff's lack of constitutional standing can be raised at any time by a defendant, or *sua sponte* by the Court.   *Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 255 (1994); *Barlow & Haun, Inc. v. United States*, 805 F.3d 1049, 1060 n.5 (Fed. Cir. 2015).

## IV.   WADE NEVER ASSIGNED THE '106 PATENT TO WSOU

WSOU cannot and does not own ***any*** rights in the '106 patent because there has never been any valid assignment to WSOU of that patent.   At the outset, Wade never even purported to assign—let alone actually assigned—***any*** patents to WSOU.   Instead, Wade merely assigned its ongoing rights and obligations in the PPA.   To the extent that the assignment of the PPA is viewed to be a patent assignment—which it is not—it is in any event void *ab initio* pursuant to the terms of the Amended PPA itself, which ███████████████████████████.   Each of these arguments is discussed in turn below.   Because WSOU never obtained any rights in the '106 patent, it suffers no injury in fact from alleged infringement, and therefore lacks Article III standing to assert the '106 patent against Defendant.   *See Morrow*, 499 F.3d at 1339.

### A.   The PPA Was Simply an Obligation to Assign and Did Not Assign Any Patents to Wade (or WSOU)

To the extent WSOU argues that the PPA is the operative patent assignment document,

that is wrong because the PPA ███████████████████████████████████████████.
Amended Schedule B1 is the operative assignment document for the '106 patent.

When a contract's language is prospective and states that rights "***shall be*** the property of
the client" and/or that "all rights thereto ***will be*** assigned," the contract is not a present assignment
but an agreement or promise to assign in the future. *Speedplay, Inc. v. Bebop, Inc.*, 211 F.3d 1245,
1253 (Fed. Cir. 2000) (emphasis added) (citing *Arachnid*, 939 F.2d at 1574, 1576–81).   Such a
contract does not operate as an immediate assignment of legal title.   *Bd. Of Trustees of Leland
Stanford Junior Univ. v. Roche Molecular Sys., Inc.*, 583 F.3d 832, 841–42 (Fed. Cir. 2009).   "To
determine whether a contractual provision is a present assignment of future rights or a promise to
assign rights in the future, the language of the contract is dispositive."   *Gellman v. Telular Corp.*,
2010 WL 5173213, at *4 (E.D. Tex. Dec. 14, 2010); *see also DDB Techs., L.L.C. v. MLB Advanced
Media, L.P.*, 517 F.3d 1284, 1290 (Fed. Cir. 2008) ("[W]e have held that whether an assignment
of patent rights in an agreement such as the one in this case is automatic, requiring no further act
on the part of the assignee, or merely a promise to assign depends on the contractual language.").

The plain language of the PPA confirms ███████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████ Ex. A at
WSOU-CISCO006495 (explaining ███████████████████████████████████
██████████████████████████████████). ████████████████████████████
███████████████████████████████████████████████████████████
██████. This also makes sense as the Nokia entities would not automatically transfer thousands
of patents to a third-party before receiving initial payment.   The fact that the PPA ████████
███████████████████████████████████████████████████████████

12

████████████████████████████████████████████████████████

████████████████████████████████████████████████ *Id.* at

WSOU-CISCO006493.

Because these provisions ████████████████████████████████

████████████████████████████, the PPA could not have transferred any rights in

the patents at the time of its execution. *Stanford*, 583 F.3d 832, 841–42 (Fed. Cir. 2009), *aff'd*,

563 U.S. 776 (2011); *see Gellman*, 2010 WL 5173213, at *3, *aff'd*, 449 F. App'x 941 (Fed. Cir.

2011) ("Because Plaintiff has not produced a written assignment of the patent in suit and her

alternative theories create an obligation to assign the patent rather than an actual assignment,

Plaintiff has failed to demonstrate complete legal title to the patent-in-suit.").[4]

To the extent WSOU argues that ████████████████[5] automatically triggers a present

assignment, WSOU would be wrong.  Isolating words "flies in the face of the basic principle of

New York contract interpretation that the Court must read the [contract] as a whole, and not

myopically scrutinize individual words and provisions in isolation." *Green Tech. Lighting Corp.

v. Liberty Surplus Ins. Corp.*, No. 1:18-CV-01799 (PAC), 2020 WL 2036705, at *5 (S.D.N.Y.

Apr. 28, 2020). ████████████████████████████████████

████████████████████████████████████████████████

████████████████████████ the Amended Schedule B is the operative document,

---

[4] State law generally governs who owns patent rights and on what terms. *Stanford*, 583 F.3d at
841. However, whether contractual language effects a present assignment of patent rights, or an
agreement to assign rights in the future, is a question of Federal Circuit law. *Id.*
[5] In relevant part ███████████████████████████████████████

█████████████ Ex. A, at WSOU-CISCO006495. █████

████████████████████████████████ *Id.*

13

not the PPA.

In contrast to the PPA, Amended Schedule B1 includes the necessary present assignment language to make the transfer of rights in the '106 patent immediately effective.   Amended Schedule B1 states: "Assignor *hereby assigns, transfers, and conveys* unto Assignee."  Ex. B at WSOU-CISCO007324 (emphasis added).  If the PPA had already transferred the rights in the '016 patent, this separate assignment would have been nonsensical.

Finally, USPTO records confirm that Amended Schedule B1 is the operative assignment agreement.  Only Amended Schedule B1 is on file with the USPTO for the '106 patent; the entire PPA is not.  *See* Ex. N (USPTO Reel 044000 Frame 0053) at 84; Ex. O.  It would make no sense to have a specific assignment execution document be recorded if a different, privately held document were to override it and impose different terms on the transfer.   To do so would impair the public notice function of the USPTO assignment registration database, cause confusion over ownership of rights, and be prejudicial to any subsequent defendant who might be subjected to a claim for past damages from either or both transacting parties.  *See* MPEP, § 301, Part V(A) (June 2020); *Morrow*, 499 F.3d at 1348 ("[T]he perils associated with a relaxed standing requirement [include] that multiple plaintiffs may subject a defendant to suit for the same conduct.").

In contract law, a more specific provision controls over a more general one.  *See Bowmer v. Bowmer*, 50 N.Y.2d 288, 294 (N.Y. 1980) ("[T]he specific provisions [of a contract] tend to restrict the general."); *Muzak Corp. v. Hotel Taft Corp.*, 1 N.Y.2d 42, 46–47 (N.Y. 1956) ("the specific provision controls."); *see also* Restatement (Second) of Contracts § 203(c) ("[S]pecific terms and exact terms are given greater weight than general language").  Thus, the specific assignment document, Amended Schedule B1, is the controlling assignment of the '016 patent.

## B.    Wade Never Assigned *Any* Patent Rights to WSOU

WSOU never obtained exclusionary rights to the '106 patent because the Wade/WSOU

14

Agreement assigned only Wade's ongoing and future interests in the PPA, and not ***completed*** obligations (*e.g.,* the prior assignment of the patents).  The Wade/WSOU Agreement provides: "Wade and Company hereby assigns to WSOU Investments LLC . . . the whole of the interest of Wade and Company ***in the Patent Purchase Agreement***."  Ex. C (emphasis added).  Under this assignment, WSOU obtained Wade's ongoing rights and obligations under the PPA.  For example, Wade had the ongoing right to the Nokia entities' representation and warranty that they had good marketable title to the patents.  Ex. A at WSOU-CISCO006502.  If the Nokia entities breached that warranty, then WSOU, via the Wade/WSOU Agreement, could recover damages.  In contrast, the Nokia entities' obligation to assign the patents to Wade was already complete by the time of the Wade/WSOU Agreement.  *Compare* Ex. B (Amended Schedule B1, executed Aug. 2, 2017) at WSOU-CISCO007324, *with* Ex. C (Wade/WSOU Agreement, executed Aug. 21, 2017).

It is black-letter law that the assignment of the PPA from Wade to WSOU would apply only to future or outstanding rights and obligations, and would not have resurrected an already satisfied obligation.  Restatement (Second) of Contracts § 328 (1981) ("[A]ssignment in similar general terms is an assignment of the assignor's rights and a delegation of his *unperformed duties* under the contract."); *Epistar Corp. v. Int'l Trade Comm'n*, 566 F.3d 1321, 1333 (Fed. Cir. 2009) ("Black letter contract law states that the assignment of a contract to an assignee . . . only changes the obligated party, not the scope of the obligation."); *see also F.D.I.C. v. McFarland*, 243 F.3d 876, 887 (5th Cir. 2001) ("[A]n assignee takes all of the rights of the assignor, no greater and no less.").  At the time of the Wade/WSOU Agreement there was no ongoing obligation for Nokia entities to assign patents under the PPA—nor any ongoing right by Wade to receive such a patent assignment—because the Nokia entities had already executed that assignment months earlier.  Thus, WSOU did not obtain rights to the patents when it stepped into Wade's shoes in the PPA.

As a result, Wade owns those patents unless Wade assigns them to someone else.

### C.   Alternatively, Wade's Assignment to WSOU Is Invalid

Even if Wade had successfully assigned the '106 patent to WSOU by virtue of the assignment of the PPA—and it did not—Wade's purported patent assignment is void *ab initio* because it violates the PPA. █████████████████████████████████.



███████████████████████████████████████

██████████████████████████████████   Ex. A  at  WSOU-CISCO006501

███████████████████████████████████████

███████████ ⁶ ████████████████████████████

████████████████. Ex. B at WSOU-CISCO007117–18 (███████████████

████████████████████████). The phrase "void *ab initio*"
means: "Null from the beginning, as from the first moment when a contract is entered into."
BLACK'S LAW DICTIONARY (11th ed. 2019) (example provided under definition of "VOID") (Ex.
T); *Faison v. Lewis*, 25 N.Y.3d 220, 222, 224, 230 (N.Y. 2015) (holding that something void *ab
initio* "is never entitled to legal effect" because "[v]oid things are as no things") (internal citations
omitted); *LNV Corp. v. Sorrento*, 31 N.Y.S.3d 922, 2016 N.Y. Slip Op. 50250(U), at *3 (Sup. Ct.
N.Y. Feb. 29, 2016) (citing *Faison* for its explanation of the term "void *ab initio*").   Thus, any
purported assignment of the PPA in violation ████████████████ has no legal effect, and it is
as if the assignment never existed.[7] Thus, to the extent the assignment of the PPA constitutes an

---

[6] This provision also states that Wade will use "best efforts" in this regard, but best efforts still
requires active exertion and good faith on Wade's part. *Aeronautical Indus. Dist. Lodge 91 of Int'l
Ass'n of Machinists & Aerospace Workers, AFL-CIO v. United Techs. Corp.*, 230 F.3d 569, 578
(2d Cir. 2000) (interpreting "best efforts" as requiring party to act "active[ly]" and "in good faith").

[7] The fact that the PPA has two separate provisions ████████████████████████████
████████████████████████████████████████████████████████████████████

assignment of patents, the assignment was a violation of both provisions. WSOU therefore has

not met, and cannot meet, its burden to demonstrate standing. *See Abraxis*, 625 F.3d at 1364.



The PPA defines ███████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████[8]

Ex. A at WSOU-CISCO006493. Since its inception, WSOU has been an NPE. WSOU has never

employed any inventors at the time of their purported inventions of their patents, and did not

research or develop any of the technology claimed by its patents. Rather, WSOU's activities have

consisted of monetization of patents through licensing and filing lawsuits. *E.g.*, Ex. U at 2

("WSOU Investments accounted for 5% of all patent litigation in 2020 and was the most active

assertor with 187 cases brought in district court."); Ex. V at 3 ("WSOU Investments averages

approximately five new case filings per week."); Ex. X (WSOU's Licenses). Thus, to the extent

WSOU argues Wade's assignment of its rights under the PPA also included rights to the '106

patent—which it did not—that purported assignment would be invalid ███████████████

██████████████████. As a consequence, WSOU did not step into the shoes of Wade,

and WSOU did not receive any rights to the '106 patent or the PPA.[9]

---

[8]  The Federal Trade Commission has referred to NPEs as "Patent Assertion Entities," ("PAEs")
and defined PAEs as businesses that acquire patents from third parties and seek to generate revenue
by asserting them against alleged infringers. Ex. W (FTC Study), at 1.

[9]  Subsequent to the Amended PPA, WSOU executed several more amendments.

To the extent WSOU argues that Defendant cannot challenge the void transfer because Defendant was not a party to the PPA, WSOU's argument is a red herring and wrong. Because the PPA states ███████████████████████████████████████████████████████████████ ██████████████████████████████████████. *See Spota v. Jackson*, 10 N.Y.3d 46, 52 (N.Y. 2008) ("This conclusion is supported by the clause, present in each version, that '[a]ny lease, contract or agreement . . . *shall be void*,' as such language would be meaningless if the tribe could, by its actions, "agree" to accept an outsider and change such person's status as an 'intruder.'") (emphasis added); *Campbell v. Thomas*, 897 N.Y.S.2d 460, 466 (N.Y. 2010) (explaining that "the parties to a void marriage (and everyone else) are free to treat the marriage as a nullity without the involvement of a court"); *Sphere Drake Ins. Ltd. v. Clarendon Nat'l Ins. Co.*, 263 F.3d 26, 31 (2d Cir. 2001) ("[I]f an agreement is void, it cannot be a contract."). Thus, Defendant is not enforcing the terms of a contract, but rather challenging standing (due to the absence of a contract).

Thus, because WSOU never obtained any rights to the '106 patent from Wade—even if Wade had rights to give, which it did not—WSOU lacks standing and its claim for patent infringement as to the '106 patent should be dismissed in its entirety.

## V.     WSOU LACKS STANDING TO SUE FOR PRE-ASSIGNMENT DAMAGES FOR THE '014, '216, AND '859 PATENTS

In addition to the preceding fatal standing problems, WSOU also never obtained the right to sue for *past* damages relating to the '014, '216, and '859 patents. The legally operative assignments for each of the patents did not transfer the right to recover for past damages.

### A.     WSOU Never Acquired the Right to Sue for Past Damages

WSOU claims it owns "all rights, title, and interest in and to" the Asserted Patents,

---

██████████████████████████████████████████████████████████████████
████████ *Id.* at WSOU-CISCO007810–11.

"including the right to assert all causes of action . . . and ***the right to any remedies for the infringement***" of the Asserted Patents.   Dkt. 1, ¶¶ 9, 24, 39, 74 (emphasis added).  But WSOU lacks standing to sue for past infringement of the '014, '216, and '859 patents because the PPA ████████████████████████████████████████████.  Instead, the purported operative assignment documents for each of the Asserted Patents are ██████████████████████████████████████ *See* Ex. D at WSOU-CISCO007894–98 ████████████████████████████████████ ██████████████████████ *id.* at WSOU-CISCO007903–07 ██████████████████████████ ██████████████████████████ *see also Moore*, 74 U.S. at 522; *Arachnid*, 939 F.2d at 1579 & n.7; *see also Minco, Inc. v. Combustion Eng'g, Inc*., 95 F.3d 1109, 1117 (Fed. Cir. 1996) ("As the Supreme Court stated, it is a 'great mistake' to 'suppose' that the assignment of the patent carries with it the right to sue for past infringement."); *S.O.T.A.T., Inc. v. Frank's Int'l, Inc.*, No. CIV.A. 2:06 CV 523, 2008 WL 4093599, at *3 (E.D. Tex. Aug. 28, 2008) ("It is settled law that a transfer of a right of action for past infringement must be express, and cannot be inferred from an assignment of the patent itself.") (internal citation omitted).

████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ██████████████████████████.  As a result, WSOU lacks standing to sue for infringement of the '014, '216, and '859 patents that occurred before ██████████████████ (the date on which WSOU purported to acquire legal title to these patents).  Accordingly, the Court should dismiss WSOU's claims for infringement of these patents before ████████████████.

## B.      Present Assignment Language Identifies Attachments C and E as the Operative Assignment of the '014, '216, and '859 Patents

As explained above (*see supra* Section IV.A), the PPA was a mere obligation to assign.

████████████████████████████████████████████████████████████████

'014, '216, and '859 patents because they contain present assignment language.

Like the original PPA, the Fourth Amendment to the PPA, ██████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
██████████████████████. Ex. E at WSOU-CISCO006464.  This provision is a promise to assign
and not a present assignment.  However, ████████████████████████████████
████████████████████████████████████████████████.  Ex. D at
WSOU-CISCO007894 (Attachment C stating: "Assignor hereby assigns, transfers, and conveys
unto Assignee"); *id.* at WSOU-CISCO007903 (same language in Attachment E).  Therefore, the
'014, '216, and '859 patents were transferred to WSOU via Attachments C and E.

Furthermore, only Attachment C is on file with the USPTO for the '014 and '216 patents
and only Attachment E is on file for the '859 patent.  *See* Exs. P–R; *see also* Exs. L–M.  As
explained above (*see supra* Section IV.A), these USPTO records confirm WSOU's understanding
that Attachments C and E are the operative assignments for these patents.

## VI.   CONCLUSION

Defendant respectfully requests that the Court dismiss with prejudice WSOU's claim of
infringement as to the '106 patent.  Defendant also respectfully requests that the Court dismiss
with prejudice WSOU's claims for damages for infringement of the '014, '216, and '859 patents
occurring before ████████████████

Dated:  June 3, 2022          By:    */s/ /Brian Rosenthal with permission, by*
                                               *Michael E. Jones*
Michael E. Jones
SBN: 10929400
**POTTER MINTON**
110 North College, Suite 500
Tyler, TX 75702
mikejones@potterminton.com
Telephone: (903) 597-8311
Facsimile: (903) 593-0846

Brian Rosenthal
Katherine Dominguez
Allen Kathir
Admitted *pro hac vice*
brosenthal@gibsondunn.com
kdominguez@gibsondunn.com
akathir@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
200 Park Avenue
New York, NY 10166
Tel:  (212) 351-4000

Ryan Iwahashi
Admitted *pro hac vice*
riwahashi@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
1881 Page Mill Road
Palo Alto, CA 94304
Tel: (650) 849-5367

*Attorneys for Defendant Cisco Systems, Inc.*

## CERTIFICATE OF SERVICE

      I hereby certify that all counsel of record who have consented to electronic service are being served with a copy of this document via electronic mail on June 3, 2022.

      I also hereby certify that all counsel of record who have consented to electronic service are being served with a notice of filing of this document, under seal, pursuant to L.R. CV-5(a)(7) on June 3, 2022.

                                        */s/ Michael E. Jones*