**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | |
|---|---|
| WSOU INVESTMENTS, LLC D/B/A BRAZOS LICENSING AND DEVELOPMENT,<br><br>Plaintiff,<br><br>v.<br><br>CISCO SYSTEMS, INC.,<br><br>Defendant. | Case No. 6:21-CV-00128-ADA<br><br>**JURY TRIAL DEMANDED**<br><br> |

**DEFENDANT'S REPLY IN SUPPORT OF ITS OPPOSED MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(1)**

## TABLE OF CONTENTS

Page

I. WSOU LACKS ARTICLE III STANDING TO ASSERT THE ’106 PATENT................1

A. WSOU’s lack of exclusionary rights is a constitutional standing defect, not a matter of statutory standing, and cannot be cured. .................................................2

B. WSOU has never had any rights in the ’106 patent. .................................................5

1. Wade never assigned any rights in the ’106 patent to WSOU...........................5

2. Any attempted patent assignment by Wade to WSOU is invalid *ab initio* [REDACTED]. ................................7

3. WSOU has not shown that contract reformation is available. ...........................9

II. WSOU LACKS ARTICLE III STANDING TO SUE FOR PRE-ASSIGNMENT DAMAGES ON THE ’014, ’216, AND ’859 PATENTS................................................10

## TABLE OF AUTHORITIES

Page(s)

### CASES

*Abbott Point of Care Inc. v. Epocal, Inc.*, 666 F.3d 1299 (Fed. Cir. 2012)....5

*Abraxis Bioscience, Inc. v. Navinta LLC*, 625 F.3d 1359 (Fed. Cir. 2010)....4

*Citibank, N.A. v. Morgan Stanley & Co. Int'l*, 724 F. Supp. 2d 407 (S.D.N.Y. 2010)....9

*Cofimco USA, Inc. v. Mosiewicz*, 2016 WL 1070854 (S.D.N.Y. Mar. 16, 2016)....8

*DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332 (2006)....10

*Domain Prot., L.L.C. v. Sea Wasp, L.L.C.*, 23 F.4th 529 (5th Cir. 2022)....4

*Dutschmann v. City of Waco*, 2022 WL 837500 (W.D. Tex. Feb. 23, 2022)....8

*EMA Electromechanics v. Siemens Corp.*, 2022 WL 2759094 (W.D. Tex. July 13, 2022)....8

*George Backer Mgmt. v. Acme Quilting Co.*, 46 N.Y.2d 211 (1978)....9

*Greenfield v. Philles Recs., Inc.*, 98 N.Y.2d 562 (2002)....6, 7

*Hometown Fin., Inc. v. U.S.*, 409 F.3d 1360 (Fed. Cir. 2005)....6

*Intell. Tech LLC v. Zebra Techs. Corp.*, No. 6:19-CV-00628-ADA, 2022 WL 1608014 (W.D. Tex. May 20, 2022)....3, 4

*Lexmark Int'l v. Static Control Components*, 572 U.S. 118 (2014)....2

*Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*, 925 F.3d 1225 (Fed. Cir. 2019)....2

*Morrow v. Microsoft Corp.*,
499 F.3d 1332 (Fed. Cir. 2007)....................3

*Schwendimann v. Arkwright Advanced Coating, Inc.*,
959 F.3d 1065 (Fed. Cir. 2020)....................3

*Script Sec. Sol., LLC v. Amazon.com, Inc.*,
No. 2:15-CV-1030-WCB, 2016 WL 6433776 (E.D. Tex. Oct. 31, 2016)....................5

*SM Kids, LLC v. Google LLC*,
963 F.3d 206 (2d Cir. 2020)....................4

*W.C. Chapman, L.P. v. Cavazos*,
2022 WL 1558502 (E.D. Tex. May 17, 2022)....................8

*WiAV Sols. LLC v. Motorola, Inc.*,
631 F.3d 1257 (Fed. Cir. 2010)....................10

## STATUTES

35 U.S.C. §281....................2

## OTHER AUTHORITIES

MPEP, § 301, Part V(A) (June 2020)....................6

## TREATISES

5B WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE §1350 (3d ed. 2004)....................5

## TABLE OF ABBREVIATIONS

| Abbreviation | Term |
|---|---|
| ’014 patent | U.S. Patent No. 9,357,014 |
| ’106 patent | U.S. Patent No. 8,191,106 |
| ’216 patent | U.S. Patent No. 8,989,216 |
| ’859 patent | U.S. Patent No. 7,443,859 |
| Amended PPA | Amended Patent Purchase Agreement |
| Asserted Patents | ’014 patent, ’106 patent, ’216 patent, and ’859 patent, collectively |
| Br. | Defendant’s Opposed Motion to Dismiss for Lack of Subject Matter Jurisdiction Under Federal Rule of Civil Procedure 12(b)(1), Dkt. 75 |
| [REDACTED] | [REDACTED] Ex. D) |
| Nokia entities | Alcatel Lucent, Nokia Solutions and Networks BV, and Nokia Oy, collectively |
| NPE | Non-practicing entity |
| Opp. | Brazos’s Opposition to Defendant’s Motion to Dismiss for Lack of Subject Matter Jurisdiction Under Federal Rule of Civil Procedure 12(b)(1), Dkt. 91 |
| PPA | [REDACTED] Patent Purchase Agreement between the Nokia entities and Wade (Ex. A) |
| Wade | Wade and Company |
| Wade/WSOU Agreement | Assignment of Patent Purchase Agreement (Ex. C) |
| WSOU | WSOU Investments, LLC |
| USPTO | United States Patent & Trademark Office |

**TABLE OF EXHIBITS**

| Exhibit | Document |
|---|---|
| Ex. A | [REDACTED] Patent Purchase Agreement |
| Ex. B | [REDACTED] First Amendment to Patent Purchase Agreement |
| Ex. C | [REDACTED] Wade/WSOU Agreement |
| Ex. D | [REDACTED] |
| Ex. E | [REDACTED] Fourth Amendment to Patent Purchase Agreement |
| Ex. F | Assignment of ’106 patent from inventors to Alcatel Lucent (USPTO Assignment Database Reel 019446 Frame 0995) |
| Ex. G | Assignment of ’014 patent from inventors to Alcatel Lucent (USPTO Assignment Database Reel 032779 Frame 0559) |
| Ex. H | Assignment of ’216 patent from inventors to Alcatel-Lucent Canada, Inc. (USPTO Assignment Database Reel 028090 Frame 0775) |
| Ex. I | Assignment from Alcatel-Lucent Canada, Inc. to Alcatel Lucent (USPTO Assignment Database Reel 030252 Frame 0251) |
| Ex. J | Assignment of ’859 patent from inventor to Nokia Corporation (USPTO Assignment Database Reel 012400 Frame 0759) |
| Ex. K | Assignment from Nokia Corporation to Nokia Technologies Oy (USPTO Assignment Database Reel 035602 Frame 0257) |
| Ex. L | Assignment from Alcatel Lucent to WSOU Investments, LLC (USPTO Assignment Database Reel 052372 Frame 0675) |
| Ex. M | Assignment from Nokia Technologies Oy to WSOU Investments, LLC (USPTO Assignment Database Reel 052372 Frame 0540) |
| Ex. N | Assignment documents recorded by WSOU Investments, LLC (USPTO Assignment Database Reel 044000 Frame 0053) |
| Ex. O | USPTO Patent Assignment History of ’106 patent |
| Ex. P | USPTO Patent Assignment History of ’014 patent |
| Ex. Q | USPTO Patent Assignment History of ’216 patent |

| | |
|---|---|
| Ex. R | USPTO Patent Assignment History of '859 patent |
| Ex. S | [REDACTED] Fifth Amendment to Patent Purchase Agreement |
| Ex. T | BLACK'S LAW DICTIONARY (11th ed. 2019) (defining "void") |
| Ex. U | 2020 Patent Dispute Report: Year in Review |
| Ex. V | Analytics: The Most Litigious District Court Patent Plaintiffs |
| Ex. W | FTC Study: Patent Assertion Entity Activity |
| Ex. X | License agreements between [REDACTED] |
| Ex. Y | Brazos Licensing, available at https://www.brazoslicensing.com/about (last accessed August 1, 2022) |
| Ex. Z | Stuart Shanus, LinkedIn profile, available at https://www.linkedin.com/in/stuart-a-s-60a7695/ (last accessed August 1, 2022) |

In its Motion, Cisco showed WSOU lacks constitutional standing to assert the '106 patent because it has no exclusionary rights in the patent. Indeed, WSOU has no rights at all in the '106 patent, because the purported assignment to WSOU never took place. A patent plaintiff with no exclusionary rights in the asserted patent has not been injured "in fact," and therefore cannot establish Article III standing. Contrary to WSOU's arguments, that defect deprives the Court of subject matter jurisdiction, and is properly raised under Rule 12(b)(1).

Because it is WSOU's burden to prove standing, WSOU must prove it held exclusionary rights in the '106 patent (and therefore was injured) at the time of suit. WSOU fails to do so. WSOU has no response to Cisco's showing that WSOU contracted for Wade's *interest in the PPA* only, and not the '106 patent itself, which had already been transferred to Wade and was not subject to an ongoing obligation to assign. Separately, WSOU fails to overcome the PPA's [REDACTED] [REDACTED], which made any attempted assignment to WSOU void *ab initio*. WSOU's cases are inapposite, as they deal with contracts lacking a void *ab initio* provision. And the self-serving declaration of WSOU's CEO asserting that [REDACTED] does nothing for WSOU, because it is not supported by any documentation.

Cisco also established WSOU lacks constitutional standing to claim damages for infringement of the '014, '216, and '859 patents before [REDACTED] because WSOU had no exclusionary rights before that date. WSOU selectively quotes the PPA to argue it received the right to sue for past damages on these patents. But WSOU concedes a contract must be read in its entirety, and a review of the complete agreement compels the conclusion that WSOU lacks the right to sue for past damages. Because WSOU lacks constitutional standing, which was required to exist when the lawsuit was brought, these claims must be dismissed.

## I. WSOU LACKS ARTICLE III STANDING TO ASSERT THE '106 PATENT

WSOU holds no exclusionary rights in the '106 patent because the patent was never

assigned to it. Thus, WSOU suffers no "injury in fact" as a consequence of infringement. *Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*, 925 F.3d 1225, 1234 (Fed. Cir. 2019). WSOU therefore lacks Article III standing, a jurisdictional defect that cannot be cured. *Id.* at 1234–36.

**A. WSOU's lack of exclusionary rights is a constitutional standing defect, not a matter of statutory standing, and cannot be cured.**

WSOU's assertion that "[e]xclusionary rights are not a prerequisite for Article III standing" is wrong. Opp. 5. As the Federal Circuit has explained many times, it is only "those who possess 'exclusionary rights' in a patent" who "suffer an injury when their rights are infringed." *Lone Star*, 925 F.3d at 1234. A plaintiff suing for patent infringement must possess at least *some* exclusionary rights in the asserted patent, or there is no "injury in fact" to satisfy the case or controversy requirement. *Id.* Tellingly, WSOU does not cite a single case holding that a party with *no* exclusionary rights can nevertheless establish an "injury in fact" to satisfy Article III. There is no such case, because that is not the law.

Because the defect here—no "injury in fact"—is constitutional, WSOU's authorities on statutory standing are inapposite. *E.g.*, Opp. 6 (citing *Lexmark Int'l v. Static Control Components*, 572 U.S. 118, 128 n.4 (2014)). In *Lone Star*, the Federal Circuit reiterated that constitutional standing and statutory standing are two distinct requirements, met at two different thresholds: possessing *some* exclusionary rights clears the "constitutional threshold," whereas possessing "*all* substantial rights" is required under § 281. *Lone Star*, 925 F.3d at 1234 (emphasis added). There is no dispute statutory standing is different from constitutional standing and is non-jurisdictional.

Contrary to WSOU's suggestion, Cisco's Motion does not raise a question of statutory standing. The question is not whether WSOU is "a 'patentee' under 35 U.S.C. § 281," that is, whether WSOU possesses *all* substantial rights. Rather, Cisco raises WSOU's complete lack of exclusionary rights because it means WSOU cannot show an "injury in fact," a defect of Article

III standing. WSOU does not—and cannot—argue constitutional standing is non-jurisdictional.

WSOU's argument that a panel of the Federal Circuit (in *Schwendimann*) reversed decades of controlling law and held that "[e]xclusionary rights in a patent are *not* necessary for Article III standing" is wrong. Opp. 7 (emphasis in original) (citing *Schwendimann v. Arkwright Advanced Coating, Inc.*, 959 F.3d 1065, 1071 n.6 (Fed. Cir. 2020)). To begin, WSOU erroneously asserts the plaintiff in *Schwendimann* "had no rights in the patents when she sued for patent infringement." Opp. 7. WSOU then concludes that the majority's statement that there was "no 'standing' issue" in the case amounts to a holding that exclusionary rights are not required for standing. *Id.* at 7–8. None of that is correct. To the contrary, the majority in *Schwendimann* affirmed the district court's finding that the plaintiff "was a patentee at the time of her Complaint." 959 F.3d at 1075. In other words, she was the patent owner: she held not just *some* exclusionary rights (enough for Article III standing), she held them all. The majority therefore had no need to reach the question of whether a patent plaintiff with *no* exclusionary rights in the patent nevertheless can show an "injury in fact" for purposes of Article III—and thus the panel could not have held anything of the kind.[1]

Indeed, even after *Schwendimann*—and despite being aware of the case—this Court has acknowledged that "[t]o have constitutional standing, a plaintiff must have an 'exclusionary right'" whereas "[t]o have statutory standing, a plaintiff must have 'all substantial rights' to the asserted patent." *Intell. Tech LLC v. Zebra Techs. Corp.*, No. 6:19-CV-00628-ADA, 2022 WL 1608014, at *4 (W.D. Tex. May 20, 2022) (citing *Morrow v. Microsoft Corp.*, 499 F.3d 1332, 1340 (Fed. Cir. 2007)); *id.* at *7 (citing *Schwendimann* on other points). This Court also confirmed that constitutional standing is a threshold question. *Id.* at *8 ("Given its holding as to constitutional

[1] WSOU's reliance on *Schwendimann*'s statement that "the Supreme Court [has] made clear that virtually all statutory filing prerequisites are non-jurisdictional" (Opp. at 7) is also unavailing, because Cisco's Motion is not premised on failure to satisfy a statutory filing prerequisite.

standing, the Court need not address Zebra's prudential standing challenge.").

WSOU attempts to bolster its argument by pointing to the Fifth Circuit's decision in *Domain Protection* and the Second Circuit's decision in *SM Kids*, but neither of these cases involves patent rights, and therefore *cannot* address whether an exclusionary right is needed to confer jurisdiction in a patent infringement action. *See Domain Prot., L.L.C. v. Sea Wasp, L.L.C.*, 23 F.4th 529, 535–36 (5th Cir. 2022) (involving ownership of domain names); *SM Kids, LLC v. Google LLC*, 963 F.3d 206, 211 (2d Cir. 2020) (determining enforceability of trademark settlement agreement). The plaintiffs in these cases were not asserting a *right to exclude*, and those courts therefore did not address whether an exclusionary right was needed for constitutional standing. In sum, none of the authority cited by WSOU supports its position that it can have constitutional standing to sue on the '106 patent without having any exclusionary rights in the patent. As such, WSOU's failure to obtain any rights in the '106 patent prior to suit is properly considered on a motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1).

Because WSOU's standing defect is jurisdictional, it also cannot be cured retroactively: "A court may exercise jurisdiction only if a plaintiff has standing to sue on the date it files suit." *Abraxis Bioscience, Inc. v. Navinta LLC*, 625 F.3d 1359, 1364 (Fed. Cir. 2010); *see also Intell. Tech LLC*, 2022 WL 1608014, at *7 (Article III standing must exist "at the time of the filing of the complaint" and thus "it is well established that a defect in Article III standing cannot be cured by . . . the subsequent purchase of an interest in the patent in suit") (internal quotations omitted). Indeed, WSOU does not dispute that if the defect is jurisdictional, it cannot be cured retroactively. That is why WSOU mischaracterizes the issue as one of statutory standing. WSOU is wrong, for all of the reasons described above and in Cisco's Motion. WSOU's failure to obtain any exclusionary rights in the '106 patent by the time of suit is a jurisdictional defect and is incurable.

**B. WSOU has never had any rights in the '106 patent.**

**1. Wade never assigned any rights in the '106 patent to WSOU.**

As explained in Cisco's Motion, WSOU has "the burden to show necessary ownership rights to support standing to sue."[2] *Abbott Point of Care Inc. v. Epocal, Inc.*, 666 F.3d 1299, 1302 (Fed. Cir. 2012). WSOU cannot do so; WSOU never obtained exclusionary rights to the '106 patent because the Wade/WSOU Agreement assigned only Wade's *ongoing and future* interests in the PPA—not rights to performance that had already been completed. Br. 14–15.

WSOU does not deny that only ongoing and future obligations—not completed ones—can be assigned. And WSOU does not dispute that, at the time of the [REDACTED] Wade/WSOU Agreement, no party had any ongoing or future obligation to assign the '106 patent—the Nokia entities had already executed the assignment of the '106 patent to Wade. Br. 6–7, 15. Thus, the Nokia entities fully extinguished the assignment obligation with respect to the '106 patent under the PPA, long before Wade assigned its interests in the PPA to WSOU. Br. 15.

As explained in Cisco's Motion, Amended Schedule B1 is the operative assignment of the '106 patent, and it assigns the patent to Wade, not WSOU. WSOU attempts to rely on the PPA alone by pointing to the general provision referencing the promise to assign past rights, arguing that it is controlling over Amended Schedule B1 (the specific assignment). Opp. 11–13. WSOU has it backwards. In New York, a specific contractual provision controls over a more general one. Br. 14 (citing cases). The Federal Circuit also follows this canon of contract interpretation.

[2] In a footnote, WSOU implores the Court to treat Cisco's Motion "as a motion for summary judgment" and "draw all reasonable factual inferences in favor of [WSOU]." Opp. 11 n.5. But this is a challenge to standing, not a motion for summary judgment, and in this setting "the question is whether the facts actually establish that the court has jurisdiction over the matter" and "the burden is on the plaintiff to show jurisdiction." *Script Sec. Sol., LLC v. Amazon.com, Inc.*, No. 2:15-CV-1030-WCB, 2016 WL 6433776, at *2 (E.D. Tex. Oct. 31, 2016) (citing 5B WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1350, at 154–80 (3d ed. 2004)).

*Hometown Fin., Inc. v. U.S.*, 409 F.3d 1360, 1369 (Fed. Cir. 2005). That Amended Schedule B1 is the operative assignment is further confirmed by the fact it was recorded at the USPTO, "provid[ing] legal notice to the public of the assignment." MPEP, § 301, Part V(A) (June 2020).

Here, the specific assignment provision is clear—Amended Schedule B1 sets forth the specific patents, by the specific entity that owned them. Ex. B, at WSOU-CISCO007324 [redacted] WSOU's strategy to avoid the present assignment language in Amended Schedule B1 is to ignore it. *Compare* Br. 12–14 *with* Opp. 12–13. WSOU instead points the Court to [redacted] of the PPA, which states, in relevant part, that:

> [redacted]

Ex. A, at WSOU-CISCO006495. WSOU argues that the use of "hereby" in the PPA means the PPA must be the operative assignment. Opp. 12. But, unlike in WSOU's cited cases, [redacted] Br. 13. In contrast, the "hereby" in Amended Schedule B1 has no future event and indicates an express assignment, consistent with WSOU's cited cases. Further, nothing in [redacted] or the PPA writ large, [redacted]. This further confirms that Amended Schedule B1 is the operative assignment.

WSOU relies on a declaration from Mr. Wade in an attempt to show Wade's understanding of the PPA, as amended, and the Wade/WSOU Agreement. The unsubstantiated statements in this declaration are mere extrinsic evidence, outside of the four corners of the contract, and are therefore of no relevance. *Greenfield v. Philles Recs., Inc.*, 98 N.Y.2d 562, 569 (2002) ("The best

evidence of what parties to a written agreement intend is what they say in their writing.") (internal quotations omitted). WSOU does not point to a specific ambiguity in the contracts that this extrinsic evidence is meant to address, nor does Mr. Wade's declaration even go to the intent of the parties *prior to contract formation*, which is the only possible relevance of extrinsic evidence. *Id.* ("Extrinsic evidence of the parties' intent may be considered only if the agreement is ambiguous."); *see also* Dkt. 91-22 (Wade Decl.) at ¶ 5 ([redacted]) (emphases added).

### 2. Any attempted patent assignment by Wade to WSOU is invalid *ab initio* [redacted]

[redacted]



In addition, WSOU argues that [REDACTED] Opp. 17. This, again, strains credulity. Wade and WSOU had overlapping personnel—as of 2017, Stuart Shanus served as Wade's General Counsel and Managing Partner and as WSOU's President. Ex. C (Wade/WSOU Agreement); Ex. Y (Brazos Licensing); Ex. Z (Shanus LinkedIn). WSOU relies on the declaration of its CEO, Mr. Etchegoyen, to argue that [REDACTED]. Mr. Etchegoyen's declaration, however, represents nothing but conclusionary statements and legal conclusions, and therefore should be given no weight. *EMA Electromechanics v. Siemens Corp.*, 2022 WL 2759094, at *6 (W.D. Tex. July 13, 2022) (no weight to biased party's declaration); *Dutschmann v. City of Waco*, 2022 WL 837500, at *3 (W.D. Tex. Feb. 23, 2022) ("[L]egal conclusions" are "inappropriate for inclusion in a sworn declaration"); *Cofimco USA, Inc. v. Mosiewicz*, 2016 WL 1070854, at *4 (S.D.N.Y. Mar. 16, 2016) (giving little weight to "two self-serving declarations"); *see also W.C. Chapman, L.P. v. Cavazos*, 2022 WL 1558502, at *5 (E.D. Tex. May 17, 2022).

Next, WSOU argues that [REDACTED] it simply means the assignment is "void[able]" at the parties' discretion. Opp. 17–18. WSOU's interpretation is fatally flawed, as it ignores the legal distinction between using "void *ab initio*" and simply "void." The PPA states that any

assignment [redacted] renders the assignment void ab initio. Opp. 17 (ignoring void *ab initio* provision in [redacted]); Br. 16–18. It is well settled that a void *ab initio* provision automatically renders the assignment invalid (i.e., as if no assignment took place to begin with). Br. 18 (citing cases). WSOU fails to respond to this precedent. Opp. 17–18.

Finally, WSOU argues that the [redacted]. Opp. 18. But WSOU ignores that the PPA [redacted]. WSOU did not provide any documents demonstrating [redacted]. Therefore, any patent assignment to WSOU would still be ineffective.

**3. WSOU has not shown that contract reformation is available.**

As a last resort, WSOU asks the Court to reform the contracts. Opp. 18–19. WSOU's breezy request for reformation comes far shy of its burden "to show in no uncertain terms, not only that mistake or fraud exists, but exactly what was really agreed upon between the parties." *George Backer Mgmt. v. Acme Quilting Co.*, 46 N.Y.2d 211, 219 (1978). "The burden upon a party seeking reformation is a heavy one" especially where, as here, "the negotiations were conducted by sophisticated, counseled business people." *Citibank, N.A. v. Morgan Stanley & Co. Int'l*, 724 F. Supp. 2d 407, 416–17 (S.D.N.Y. 2010) (internal quotations omitted). To fix its serious constitutional standing issues, WSOU would need the Court to reform two agreements, negotiated between different sets of parties: (1) the PPA between Nokia and Wade, including the numerous amendments thereto, [redacted]; and (2) the Wade/WSOU Agreement to effectuate the assignment of the '106 patent to WSOU. WSOU comes nowhere close to showing there was a unified, mutual mistake among these parties with respect to *both* of these agreements, let alone showing "what exactly was really agreed upon." *George Backer*, 46 N.Y.2d at 219.

## II. WSOU LACKS ARTICLE III STANDING TO SUE FOR PRE-ASSIGNMENT DAMAGES ON THE '014, '216, AND '859 PATENTS

"[A] plaintiff must demonstrate standing for each claim." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006). WSOU lacks constitutional standing for its claim for pre-assignment damages for the '014, '216, and '859 patents (*i.e.*, damages before [REDACTED]) because it has no exclusionary rights in those patents for that time period.

WSOU cites no case holding that the absence of rights to past damages implicates only statutory standing. WSOU's sole argument—that it had exclusionary rights for *other* time periods when it sued—does nothing to cure the Article III defect for WSOU's claim for pre-assignment damages. WSOU had no rights in the '014, '216, and '859 patents before [REDACTED], and never obtained the right to past damages. Because it has no exclusionary rights for the period before [REDACTED], WSOU cannot show injury in that period and therefore lacks Article III standing to assert the claim. *WiAV Sols. LLC v. Motorola, Inc.*, 631 F.3d 1257, 1263-67 (Fed. Cir. 2010) (scope of standing "coterminous with" scope of exclusionary rights).

WSOU again points to the general provision in the PPA—this time, in the Fourth Amendment to the PPA—referencing the promise to assign past rights as somehow controlling. But, as explained above and in Cisco's Motion, specific provisions control over general ones. *See supra* I.B.1; Br. 14. WSOU does not dispute that the '014, '216, and '859 patents were actually assigned [REDACTED] *after* the Fourth Amendment, when the [REDACTED] [REDACTED]. WSOU also does not dispute that Attachments C and E to the [REDACTED] [REDACTED] which actually transferred these patents to WSOU, lack the requisite language to transfer past rights. Because WSOU did not possess any exclusionary rights prior to [REDACTED] [REDACTED], and did not receive past rights together with the '014, '216, and '859 patents, WSOU lacks standing to sue for pre-assignment damages on these patents.

Dated: August 1, 2022

By: *Brian Rosenthal with permission, by Michael E. Jones*

Michael E. Jones
SBN: 10929400
**POTTER MINTON**
110 North College, Suite 500
Tyler, TX 75702
mikejones@potterminton.com
Telephone: (903) 597-8311
Facsimile: (903) 593-0846

Brian Rosenthal
Katherine Dominguez
Allen Kathir
Allyson Parks
Admitted *pro hac vice*
brosenthal@gibsondunn.com
kdominguez@gibsondunn.com
akathir@gibsondunn.com
aparks@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
200 Park Avenue
New York, NY 10166
Tel: (212) 351-4000

Ryan Iwahashi
Admitted *pro hac vice*
riwahashi@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
1881 Page Mill Road
Palo Alto, CA 94304
Tel: (650) 849-5367

*Attorneys for Defendant Cisco Systems, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that all counsel of record who have consented to electronic service are being served with a copy of this document via electronic mail on August 1, 2022.

I also hereby certify that all counsel of record who have consented to electronic service are being served with a notice of filing of this document, under seal, pursuant to L.R. CV-5.2(e) on August 1, 2022.

*/s/ Michael E. Jones*
Michael E. Jones