# EXHIBIT 5

# GIBSON DUNN

Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY 10166-0193
Tel 212.351.4000
www.gibsondunn.com

Brian Rosenthal
Direct: +1 212.351.2339
Fax: +1 212.817.9539
BRosenthal@gibsondunn.com

January 18, 2022

VIA ELECTRONIC MAIL

Max Tribble
Susman Godfrey L.L.P.
1000 Louisiana Street, Suite 5100
Houston, Texas 77002-9366
mtribble@susmangodfrey.com

Re:   ***WSOU Investments, LLC v. Cisco Systems, Inc.*, Case No. 6:21-cv-128 (W.D.
      Tex.)**[1]

Dear Max:

We write on behalf of our client, Cisco Systems, Inc. ("Cisco") regarding WSOU's assertion
of U.S. Patent Nos. 7,443,859 (the "'859 Patent"), 8,191,106 (the "'106 Patent"), 9,357,014
(the "'014 Patent"), and 8,989,216 (the "'216 Patent").

Based upon the December 17, 2021 Markman Hearing and subsequent Order, WSOU's
allegations with respect to all patents, but in particular the '859 Patent, should be dismissed
immediately.

**'859 Patent**

Every claim of the '859 Patent requires that "the Activate PDP Context Request message" or
"the Create PDP Context Request Message" have "an APN (Access Point Name) field
containing information that explicitly indicates requesting either a private network address or
a public network address to be assigned to the mobile station."

As previously explained, including in our June 28, 2021 letter, to which WSOU has not
provided a substantive response, the accused products' APN field does not indicate whether a
public or private network address needs to be assigned to the mobile station. As the name
suggests and is confirmed in the 3GPP GPRS standard, the APN field indicates the access
point to which the mobile station is trying to connect.

---

[1]  All emphases added unless noted.

Beijing · Brussels · Century City · Dallas · Denver · Dubai · Frankfurt · Hong Kong · Houston · London · Los Angeles · Munich
New York · Orange County · Palo Alto · Paris · San Francisco · São Paulo · Singapore · Washington, D.C.

# GIBSON DUNN

Max Tribble
January 18, 2022
Page 2

Indeed, WSOU does not allege that the claims are met by the APN field as required by the claims. Instead, WSOU alleges that the indication of a public or private network is sent as part of a completely separate field called the APN *Restriction* Field.  *See* Compl., ¶ 29; Infringement Contentions, Exhibit B at 2.  *See e.g.,* 3GPP TS 23.060 v. 4.2.0, 160-61; 3GPP TS 24.008 v. 4.4.0, 384; 3GPP TS 29.060 v. 4.2.0.

The Court's construction of "APN field" as "The specific field identified as 'Access Point Name' that contains at least the name of the access point" confirms Cisco's position on the issue and forecloses WSOU's attempted infringement theory. D.I. 50.  WSOU cannot rely on a completely separate field as containing the required explicit indication, especially because the APN Restriction Field does not contain the name of the access point.  Since WSOU's only theory of infringement for this patent is plainly contrary to the Court's construction of the term "APN field," WSOU has no basis to claim infringement.

WSOU must drop this patent immediately or, at a minimum, stipulate to non-infringement if WSOU wishes to appeal the Court's Markman Order.

## **'106 Patent**

The asserted claims of the **'106 Patent** require an ICME, which the court construed to be "an entity that monitors the type of access technology being used and provides notification of a change in the type of access technology being used." D.I. 50.  WSOU has identified the Wireless Access Point or WLAN controller as the alleged ICME.  Infringement Contentions, Exhibit C at 5; Infringement Contentions, Exhibit C at 5-11.  As previously explained, the Wireless Access Point and WLAN controller cannot be an ICME because it is only used for Wi-Fi access.  The Court's construction confirms that accused ICME must both monitor the type of access being used and provide a notification in the change in the type of access technology being used.  Because the Wireless Access Point and WLAN controller enable connection only via Wi-Fi, they do not monitor the type of access or provide notification of change in access technology.  WSOU must therefore dismiss the '106 Patent.

## **'014 Patent**

The asserted claims of the **'014 Patent** require a "connected services layer" that operates "below an application layer and above a transport layer."  The Court's construction of "connected services layer" as "a layer that supports establishment and use of a service connection" further confirms what Cisco previously explained—WSOU's infringement theory is untenable. D.I. 50.  WSOU's infringement contentions do ***not*** even address these elements of the asserted claims.  *See* Infringement Contentions, Exhibit E at 2-9 (not alleging the connected services layer is between the application and transport layers and not alleging that it supports establishment and use of a service connection).  These failings are not deficiencies

**GIBSON DUNN**

Max Tribble
January 18, 2022
Page 3

that WSOU can fix because the Accused Products do not have a connected services layer that (1) operates between the application layer and above transport layer, *and* (2) supports establishment and use of a service connection.  As a result, WSOU does not have a good-faith basis to continue asserting the '014 Patent.

## '216 Patent

The asserted claims of the '216 Patent require "a Diameter protocol command dictionary" that includes multiple definitions for a given "Diameter protocol command," including "a first default definition" and "a context-specific definition."  The term "context-specific" has been stipulated to as the plain and ordinary meaning, or "the situation in which a default definition or standard does not apply."  D.I. 45.  Under this construction, the deficiency of WSOU's infringement position is indisputable.  The Accused Products do not use a single dictionary that contains default and context-specific definitions.  Rather, the Accused Products are comprised of several dictionaries from which the user chooses one active dictionary.  Infringement Contentions, Exhibit A at 5 (referencing that Cisco's "CLI syntax supports several custom dictionaries").  As such, there is no basis to continue to assert the '216 Patent.

\*\*\*

We expect that WSOU will consider Cisco's request promptly and seriously.  In particular, the '859 Patent should be immediately dismissed.  The others should be as well, for the reasons above, but if WSOU has some basis to proceed, please provide it.  If WSOU chooses to ignore these requests and refuses to dismiss, Cisco reserves the right to seek all available remedies for being forced to defend against such meritless allegations, including those under 35 U.S.C. § 285.

Best,

*/s/Brian Rosenthal*

Brian Rosenthal