# EXHIBIT 7

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | |
|---|---|
| WSOU INVESTMENTS, LLC D/B/A BRAZOS LICENSING AND DEVELOPMENT,<br><br>        Plaintiffs,<br><br>v.<br><br>CISCO SYSTEMS, INC.,<br><br>        Defendant. | Case No. 6:21-CV-00128-ADA<br><br>JURY TRIAL DEMANDED |

**CISCO'S MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11**

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ..................................................................................................................1

II. WSOU'S INFRINGEMENT THEORY IS MERITLESS AND CONTRADICTS THIS COURT'S CLAIM CONSTRUCTION............................................................................2

    A. The '859 Patent Purports to Improve on the Well-Known GPRS Standard By Modifying the APN Field ..............................................................................................2

    B. The Accused Products Conform to the GPRS Standard .........................................5

    C. WSOU'S Complaint Relies On a Completely Different Field For Infringement ..............................................................................................................6

    D. WSOU'S Preliminary Infringement Contentions Reinforce the Errors in its Complaint ..................................................................................................................8

    E. This Court Rejected WSOU's Interpretation of the Claimed APN Field ................9

    F. WSOU'S Final Infringement Contentions Contradict This Court's Construction of APN Field ........................................................................................9

III. WSOU'S CONDUCT MERITS SANCTIONS................................................................10

IV. CONCLUSION..................................................................................................................14

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Iris Connex, LLC v. Dell, Inc.*,
   235 F. Supp. 3d 826 (E.D. Tex. 2017) ................................................................................... 13

*Q-Pharma, Inc. v. Andrew Jergens Co.*,
   360 F.3d 1295 (Fed. Cir. 2004) ............................................................................................. 11

*Raylon, LLC v. Complus Data Innovations, Inc.*,
   700 F.3d 1361 (Fed. Cir. 2012) ............................................................................................. 13

*Source Vagabond Sys. Ltd. v. Hydrapak, Inc.*,
   753 F.3d 1291 (Fed. Cir. 2014) ............................................................................................. 13

*Whitehead v. Food Max of Miss., Inc.*,
   332 F.3d 796, 803 (5th Cir. 2003) ......................................................................................... 11

**RULES**

Fed. R. Civ. P. 11 ....................................................................................................... 2, 10-11

**I.     INTRODUCTION**

Throughout this case, WSOU has advanced a frivolous and baseless infringement position with respect to U.S. Patent No. 7,443,859 ("the '859 Patent"). Each claim of the '859 Patent recites specific messages in a General Packet Radio System ("GPRS") network. The messages in GPRS, including the data fields defined therein, are defined by the GPRS standard to ensure interoperability. The claims each recite one or both of two messages—Activate Packet Data Protocol ("PDP") Context Request and Create PDP Context Request—both of which include a specific field called the Access Point Name ("APN") Field. The '859 Patent contemplates adding information to the APN Field in these messages to explicitly identify whether the requesting mobile station should receive a public or private network address. This additional information was never added to the APN Field in the GPRS standard.

To circumvent this fact, WSOU alleges infringement by a completely different field in the GPRS standard called the APN Restriction Field—which appears in the Create PDP Context Request message of the Accused Products, but not the Activate PDP Context Request message. The fact that these are different fields is undisputed and the Court's claim construction order confirmed the plain and ordinary meaning of the claimed field: APN Field refers to the specific field that is identified as "Access Point Name" and includes the name of the access point. Dkt. 50 at 2. Thus, it is baseless for WSOU to point to the APN Restriction Field at all, and even more baseless for WSOU to point to the APN Restriction Field with respect to an Activate PDP Context Request message that does not even contain such a field.

WSOU's position was baseless at the time WSOU filed its Complaint, and is even more so now after the Court's claim construction order. In defiance of the Court's claim construction order, WSOU continues to allege infringement by the APN Restriction Field, which does not include the name of the access point at all. WSOU's continued advocacy of its erroneous infringement

arguments violates Rule 11 and merits sanctions.

## II. WSOU'S INFRINGEMENT THEORY IS MERITLESS AND CONTRADICTS THIS COURT'S CLAIM CONSTRUCTION

Unable to point to anything in the APN Field that satisfies the claim limitations of the '859 Patent, WSOU has instead relied on a separate field defined in the standard called the APN Restriction Field. WSOU's infringement position is contrary to the plain language of the claims, this Court's claim construction order, and common sense.

### A. The '859 Patent Purports to Improve on the Well-Known GPRS Standard By Modifying the APN Field

The '859 Patent relates to an alleged improvement in the GPRS network. GPRS was standardized in the 3rd Generation Partnership Project ("3GPP") standard, an update of which was published in October 2001 (Ex. 2 (3GPP TS 23.060 v. 4.2.0) at 1), two months prior to the filing date of the application that resulted in the '859 Patent. To request and obtain access to a GPRS network, a mobile station such as a cell phone exchanges messages with servers in the GPRS network. The standard GPRS protocol includes a series of four messages: (1) the Activate PDP Context Request message; (2) the Create PDP Context Request message; (3) the Create PDP Context Response message; and (4) the Activate PDP Context Accept message. This series of messages and their directionalities are shown in Figures 4A-4D of the '859 Patent, in which "MS" refers to a mobile station, "SGSN" refers to Serving GPRS Support Node, and "GGSN" refers to Gateway GPRS Support Node:



Ex. 1 ('859 Patent) at FIGS. 4A-4D (annotations added).

The GPRS standard defines the content of each of these messages, including the particular data fields, shown in parentheses in the figures above, that must be included to ensure smooth communication of data packets. For example, the Activate PDP Context Request, consistent with Figure 4A above, includes the following fields: NSAPI, TI, PDP Type, PDP Address, *Access Point Name*, QoS Requested, PDP Configuration Options. Ex. 2 (3GPP TS 23.060 v. 4.2.0) at 116. The Create PDP Context Request contains a different set of fields, including those shown in Figure 4B above: PDP Type, PDP Address, *Access Point Name*, QoS Negotiated, TEID, NSAPI, MSISDN, Selection Mode, Charging Characteristics, Trace Reference, Trace Type, Trigger Id, OMC Identity, PDP Configuration Options. *Id.* at 117. The GPRS standard explains that, in the APN Field, "Access Point Name is a reference to the GGSN to be used." Ex. 2 (3GPP TS 23.060 v. 4.2.0) at 160-61; *see also* Ex. 3 (3GPP TS 24.008 v. 4.4.0) at 384; Ex. 4 (3GPP TS 29.060 v. 4.2.0) at 61-62. In other words, the APN Field is exactly what it says it is: the name of the access

3

point.

The '859 Patent acknowledges that the GPRS standard setting forth the APN Field is prior art and correctly explains that "the GPRS standard does not specify whether private or public IP addresses are assigned to a requesting MS [mobile station]." *See, e.g.,* Ex. 1 ('859 Patent) at 3:47-49; *see also id.* at 5:21-27. Therefore, the '859 Patent purports to improve on the GPRS standard by including additional information—***not already required by the standard***—in the Access Point Name or "APN" Field. Whereas the standard states that "Access Point Name is a reference to the GGSN to be used." (Ex. 2 (3GPP TS 23.060 v. 4.2.0) at 160-61), the '859 Patent describes and claims ***adding information*** into the APN Field that "explicitly indicates requesting either a private network address or a public network address to be assigned" to the mobile station making the request. *E.g.,* Ex. 1 ('859 Patent) at claims 1, 9; *see also* Ex. 3 (3GPP TS 24.008 v. 4.4.0) at 384; Ex. 4 (3GPP TS 29.060 v. 4.2.0) at 61-62. Every single claim requires that the APN Field itself, in either the Activate PDP Context Request or the Create PDP Context Request, "explicitly indicates requesting either a private network address or a public network address to be assigned" to the mobile station making the request.

Claim 1 is representative, and claims an Activate PDP Context Request message in which the APN Field identifies whether a public or private address should be assigned:

> 1. A method comprising:
>
> receiving an Activate Packet Data Protocol (PDP) Context Request message at a Serving General Packet Radio System (GPRS) Support Node (SGSN) of a network from a mobile station of the network, ***the Activate PDP Context Request message having an APN (Access Point Name) field containing information that explicitly indicates requesting either a private network address or a public network address to be assigned to the mobile station***; and
>
> sending an Activate PDP Context Accept message to the mobile station containing information assigning one of a private network address and a public network address to the mobile station based on

4

>   the information contained in the APN field of the Activate PDP Context Request message.

Ex. 1 ('859 Patent) at claim 1 (emphasis added).  Claims 2-8, 11-21, and 24-25 also recite this Activate PDP Context Request message with the APN Field having this information.  Other claims recite a Create PDP Context Request message in which the APN Field specifies a public or private address, such as claim 9:

>   9. A method comprising:
>
>   receiving a Create Packet Data Protocol (PDP) Context Request message from a Serving General Packet Radio System (GPRS) Support Node (SGSN) at a Gateway General Packet Radio System (GPRS) Support Node (GGSN), ***the Create PDP Context Request Message having an APN (Access Point Name) field containing information that explicitly indicates requesting either a private network address or a public network address to be assigned to a mobile station of the network***;
>
>   assigning either a private network address or a public network address to the mobile station based on the information contained in the APN field of the Create PDP Context Request message; and
>
>   sending the Create PDP Context Response message from the GGSN to the SGSN containing the information assigning either a private network address or a public network address to the mobile station based on the information contained in the APN field of the Create PDP Context Request message.

Ex. 1 ('859 Patent) at claim 9 (emphasis added).  Claims 2-6, 10, 16-17, 22, 23, and 26 also recite such a Create PDP Context Request message.

In other words, each of the claims recites that the APN Field "***explicitly indicates requesting either a private network address or a public network address to be assigned to a mobile station of the network.***"

### B. The Accused Products Conform to the GPRS Standard

In its Complaint, WSOU alleged that Cisco's ASR5500, ASR5700, and Virtual Packet Core products (collectively, "the Accused Products") infringe every claim of the '859 Patent.  The

5

Accused Products conform to the current version of the 3GPP standard for GPRS networks. However, the standard never adopted the additional information in the APN Field claimed in the '859 Patent. Instead, the current standard requires the following fields for the Activate PDP Context Request message:

> Activate PDP Context Request (NSAPI, TI, PDP Type, PDP Address, *Access Point Name*, QoS Requested, Protocol Configuration Options, Request Type)

Ex. 2 (3GPP TS 23.060 v. 16.0.0) at 232 (emphasis added). And, it requires the following different set of fields for the Create PDP Context Request message:

> Create PDP Context Request (PDP Type, PDP Address, *Access Point Name*, QoS Negotiated, Negotiated Evolved ARP, TEID, NSAPI, MSISDN, Selection Mode, Charging Characteristics, Trace Reference, Trace Type, Trigger Id, OMC Identity, Protocol Configuration Options, serving network identity, CN Operator Selection Entity, **Maximum APN Restriction IMEISV**, CGI/SAI, User CSG Information, RAT type, S-CDR CAMEL information, MS Info Change Reporting support indication, NRSN, Dual Address Bearer Flag, APN-AMBR)

*Id.* at 233 (emphasis added).

As shown, the current standard still has the APN Field that identifies the name of the access point in both the Activate PDP Context Request message and the Create PDP Context Request message. *See* Ex. 2 (3GPP TS 23.060 v. 4.2.0) at 160-61 ("Access Point Name is a reference to the GGSN to be used."); *see also* Ex. 3 (3GPP TS 24.008 v. 4.4.0) at 384; Ex. 4 (3GPP TS 29.060 v. 4.2.0) at 61-62. But, the current GPRS standard also adds a separate field—the APN Restriction Field—to the Create PDP Context Request message (but not the Activate PDP Context Request message). As the name implies, this APN Restriction Field restricts access to certain APN types.

### C. WSOU'S Complaint Relies On a Completely Different Field For Infringement

Faced with the reality that the GPRS standard never adopted the proposed improvement

6

claimed in the '859 Patent, WSOU relies on the APN Restriction Field of the Accused Products to satisfy the claim limitation requiring that the APN Field "explicitly indicates requesting either a private network address or a public network address to be assigned." This theory first appears in WSOU's Complaint, which alleges that "the Activate Context Request message [of the Accused Products] ha[s] an Access Point Name ('APN') field containing information that explicitly indicates requesting either a private network address or a public network address to be assigned to the mobile station." Dkt. 1 ("Compl."), ¶ 28. The Complaint further alleges that "the method practiced by the '859 Accused Products comprises sending an Activate PDP Context Accept message to the mobile station containing information assigning one of a private network address and a public network address to the mobile station based on the information contained in the APN field of the Activate PDP Context Request message." *Id.*, ¶ 29. Elsewhere in the Complaint, WSOU states that "[t]he APN restriction value defines the type of APN access, whether private or public." Compl., ¶ 28. The SGSN Administration Guide cited by WSOU's Complaint similarly explains that the value of the APN Restriction Field determines the type of access to be provided, public or private. Ex. 5 at 184 (Table 13 showing "APN restriction values" and corresponding "Type of APN"); Compl., ¶ 28 n.9. In other words, WSOU's allegation in the Complaint is premised entirely upon the request for a public and private address being in the APN Restriction Field, not the claimed APN field.

With respect to claims 1-8, 11-21, and 24-25, each of which requires an Activate PDP Context Request message in which the APN Field specifies public or private access, WSOU's Complaint is baseless for the additional reason that ***the Activate PDP Context Request message of the Accused Products does not even contain the APN Restriction Field***. WSOU's allegations are therefore even more baseless for these claims that do not even have the field WSOU alleges

7

meets the claims.

### D. WSOU'S Preliminary Infringement Contentions Reinforce the Errors in its Complaint

On June 23, 2021, WSOU served its Preliminary Infringement Contentions, which continued to rely on the same erroneous understanding of the Accused Products to assert infringement of the '859 Patent. Specifically, WSOU contended that "the SGSN receives a PDP Activation Request message from a mobile station (MS) containing an APN field." Ex. 6 (Exhibit B of WSOU's Preliminary Infringement Contentions) at 1. But, WSOU instead relies on the separate APN Restriction Field for the alleged request for public or private address:

> ***The APN Restriction values explicitly indicate the request for a private or public network address to be assigned to the mobile station***. For example, when the "APN Restriction Value allowed to be established" is "1" then the "Private" APN for Corporate is assigned in the exemplary manner shown below.

Table 13: APN restriction values

| Maximum APN Restriction Value | Type of APN | Application Example | APN Restriction Value allowed to be established |
|---|---|---|---|
| 0 | No Existing Contexts or Restriction | | All |
| 1 | Public-1 | WAP or MMS | 1, 2, 3 |
| 2 | Public-2 | Internet or PSPDN | 1, 2 |
| 3 | Private-1 | Corporate (for example MMS subscribers) | 1 |
| 4 | Private-2 | Corporate (for example non-MMS subscribers) | None |

Ex. 6 at 2-3 (emphasis added). WSOU's Preliminary Infringement Contentions also do not address the more fundamental issue that the APN Restriction Field does not even appear in the Activate PDP Context Request message for claims 1-8, 11-21, and 24-25.[1]

---

[1]   WSOU's Preliminary Infringement Contentions also do not include any argument that this claim limitation is met under the doctrine of equivalents.

Upon receipt of these Preliminary Infringement Contentions, Cisco wrote to counsel for WSOU regarding these deficiencies. Ex. 8 (06/28/21 Letter from B. Rosenthal). WSOU would not agree to drop its infringement allegations as to the '859 Patent—even as to claims 1-8, 11-21, and 24-25 which recite an Activate PDP Context Request message that does not contain the APN Restriction Field—and Cisco received no substantive response or supplemental contentions to address the identified deficiencies.

### E. This Court Rejected WSOU's Interpretation of the Claimed APN Field

Based on WSOU's Complaint and Preliminary Infringement Contentions, Cisco sought claim construction to confirm the plain language of the claims. On December 17, 2021, this Court construed the terms "APN (Access Point Name) field" and "APN field" as "[t]he specific field identified as 'Access Point Name' that contains at least the name of the access point." Dkt. 50 at 2. In doing so, this Court rejected WSOU's argument that "'APN field' is not limited to one type of field" (Dkt. 43 at 1), and confirmed that the claimed APN Field is distinct from the APN Restriction Field in the Accused Products. Instead, according to the claims, that APN Field that contains the name of the access point must also include the claimed explicit indication of whether a private or public network address should be assigned. This completely precludes WSOU's infringement theory that the separate APN Restriction Field, which is not even present in one of the two messages, meets these limitations.

Following this Court's claim construction ruling, Cisco again wrote to counsel for WSOU requesting that WSOU withdraw its infringement allegations as to the '859 Patent. Ex. 9 (01/18/22 Letter from B. Rosenthal). Cisco again received no substantive response.

### F. WSOU'S Final Infringement Contentions Contradict This Court's Construction of APN Field

Despite the Court's claim construction order and Cisco's requests that WSOU drop the

9

'859 Patent, WSOU served Final Infringement Contentions on February 11, 2022 that are substantially the same as its Preliminary Infringement Contentions.[2] WSOU pretends that claim construction never happened and continues to point to the APN Restriction Field to satisfy the claim limitations of the APN Field indicating whether a public or private network address should be assigned. For example, with respect to the Activate PDP Context Request message, WSOU states:

> The APN indicates requesting either a private network address or a public network address. *The GGSN/P-GW has an APN restriction value for each APN that explicitly indicate the request for a private or public network address to be assigned to the mobile station*.

Ex. 7 (Exhibit B of WSOU's Final Infringement Contentions) at 2-3 (emphasis added); *id.* at 2 ("The GGSN/P-GW will have an APN restriction value for each APN. The UE's APN Restriction value determines the type of application data the subscriber is allowed to send."). WSOU makes a similar argument with respect to the Create PDP Context Request message. *Id.* at 43 ("The GGSN/P-GW has an APN restriction value for each APN, and each APN corresponds to either a public, or a private address, according to its associated APN restriction value."). WSOU's positions are meritless and in clear violation of the Court's claim construction order.

### III. WSOU'S CONDUCT MERITS SANCTIONS

Under the Federal Rules of Civil Procedure, "[b]y presenting to the court a pleading," including by "later advocating it," WSOU's counsel certifies that "the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law" and that "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after

---

[2] As with its Preliminary Infringement Contentions, WSOU's Final Infringement Contentions also do not include any arguments under the doctrine of equivalents.

10

a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b). This Court "may impose an appropriate sanction on any attorney, law firm, or party that violate[s]" Rule 11(b). Fed. R. Civ. P. 11(c). In the Fifth Circuit, "the standard under which an attorney is measured is an objective, not subjective, standard of reasonableness under the circumstances." *Whitehead v. Food Max of Miss., Inc.*, 332 F.3d 796, 803 (5th Cir. 2003) (en banc) (internal citations omitted).

WSOU adopted a frivolous and baseless infringement argument as to the '859 Patent in its Complaint, and has continued to advocate for this erroneous position in its infringement contentions before and after this Court's claim construction ruling. The language of the claims and the '859 Patent clearly refer to the APN Field as defined in the GPRS standard to explicitly indicate whether a private or public network address should be assigned. Since the outset of this case, WSOU adopted an infringement theory contrary to this plain language of the claims and pointed to the unrelated APN Restriction Field in the Accused Products as fulfilling this claim limitation. Even more troubling, WSOU alleges that the Activate PDP Context Request message of the Accused Products, which ***do not even have the APN Restriction Field***, somehow satisfy the claims. These deficiencies do not reflect "a good faith, informed comparison of the claims of a patent against the accused subject matter," as is required for a pre-suit infringement investigation. *Q-Pharma, Inc. v. Andrew Jergens Co.*, 360 F.3d 1295, 1302 (Fed. Cir. 2004).

Even if WSOU was operating under a faulty understanding of the claim construction at the time of its Complaint and Preliminary Infringement Contentions, this Court's claim construction order made clear that WSOU's infringement allegations as to the '859 patent are erroneous. Under the Court's claim construction, the claimed APN Field must be "specifically identified" as such (Dkt. 50 at 2) and the functionality performed by the APN Restriction Field in the Accused

11

Products (specifying whether a public or private network address should be assigned) cannot be attributed to the totally separate APN Field. Once the Court entered this claim construction, WSOU's arguments undisputedly passed into the realm of frivolous and baseless. No reasonable litigant would continue with allegations that were already rejected by the Court during claim construction. This must stop.

In spite of Cisco's multiple requests that WSOU withdraw its infringement allegations as to the '859 Patent, WSOU has refused to withdraw or change its infringement theory. Ex 8; Ex. 9. After the Court's claim construction order, WSOU's allegations passed from frivolous to sanctionable. There is no justification for WSOU's continued assertion of the '859 patent after the Court's claim construction. By continuing to advocate the baseless arguments from its Complaint in its final infringement contentions, based upon the same theory that was rejected in the Court's order, WSOU has violated Rule 11 and should be sanctioned.

WSOU's assertion of the '859 patent cannot be allowed to continue and WSOU should be liable for the expense it is imposing on Cisco to defend itself from these baseless claims that have already been rejected. WSOU has since made discovery requests that burden Cisco with producing documents that it knows will not show infringement of the '859 Patent. WSOU even filed a motion to compel the production of source code, stating that it needs source code to show "numerous functions and features relevant to the accused functionalities," including "the contents of the APN field (as relevant to the '859 Patent);" "the manner in which the APN value is interpreted in software and how this value is mapped to a public or private address—e.g., the APN Restriction Value on GGSN, which has values 0-4 for different types of APNs (as relevant to the '859 Patent);" and "the manner in which the mapping table for GGSN maps an APN Restriction Value to an APN (as relevant to the '859 Patent)." Dkt. 56 at 4-5. But, WSOU already knows that this information

will not reveal anything relevant to the APN Field as claimed, and is nonetheless seeking source code that cannot possibly support its meritless infringement positions. WSOU's continued assertion of the '859 Patent wastes party and judicial resources.

The Federal Circuit and other courts, including in this District, have repeatedly imposed sanctions where an infringement theory rests on a frivolous claim construction. *See, e.g.*, *Raylon, LLC v. Complus Data Innovations, Inc.*, 700 F.3d 1361, 1368–69 (Fed. Cir. 2012); *Source Vagabond Sys. Ltd. v. Hydrapak, Inc.*, 753 F.3d 1291, 1301 (Fed. Cir. 2014); *Iris Connex, LLC v. Dell, Inc.*, 235 F. Supp. 3d 826, 855 (E.D. Tex. 2017). In *Raylon*, for example, the Federal Circuit, applying Fifth Circuit standards, held that "Raylon's claim construction (and thus infringement contentions) were frivolous" because "no objectively reasonable litigant" could conclude that the evidence supported the claim construction. *Raylon*, 700 F.3d at 1368–69. The Federal Circuit noted that Raylon committed an "independent violation of Rule 11" by arguing infringement by products lacking a claim limitation entirely. *Id.* at 1370 ("Raylon's position that the printer could be in an entirely different housing from the rest of the components is objectively unreasonable and an independent violation of Rule 11 with respect to Symbol, whose products lack a printer entirely.").

Here, WSOU's conduct is even more egregious because certainly no reasonable litigant would continue with its infringement allegations that are precluded by the Court's construction. Yet, that is what WSOU does by continuing to advocate for an infringement position based on the APN Restriction Field that this Court already excluded from the claims. WSOU's arguments with respect to the APN Restriction Field reflect a frivolous and factually baseless position that violates Rule 11. And, at least with respect to claims 1-8, 11-21, and 24-25, WSOU's Complaint and continued advocacy separately violate Rule 11 by arguing that the Activate PDP Context Request

13

message of the Accused Products infringes these claims when it does not even have the APN Restriction Field to perform the accused functionality. WSOU's conduct, which has now dragged on for over four months after this Court's claim construction ruling, undoubtedly warrants sanctions.

## IV. CONCLUSION

WSOU's continued advocacy of the baseless infringement theory in its Complaint is frivolous and lacking in evidentiary support. This Court should therefore impose sanctions pursuant to Rule 11.

Dated:                                By: _____
                                      Michael E. Jones
                                      SBN: 10929400
                                      **POTTER MINTON**
                                      110 North College, Suite 500
                                      Tyler, TX 75702
                                      mikejones@potterminton.com
                                      Telephone: (903) 597-8311
                                      Facsimile: (903) 593-0846

                                      Brian Rosenthal
                                      Katherine Dominguez
                                      Allen Kathir
                                      Admitted *pro hac vice*
                                      brosenthal@gibsondunn.com
                                      kdominguez@gibsondunn.com
                                      akathir@gibsondunn.com
                                      **GIBSON, DUNN & CRUTCHER LLP**
                                      200 Park Avenue
                                      New York, NY 10166
                                      Tel: (212) 351-4000

                                      Ryan Iwahashi
                                      Admitted *pro hac vice*
                                      riwahashi@gibsondunn.com
                                      **GIBSON, DUNN & CRUTCHER LLP**
                                      1881 Page Mill Road
                                      Palo Alto, CA 94304
                                      Tel: (650) 849-5367

                                      *Attorneys for Defendant Cisco Systems, Inc.*