**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | |
|---|---|
| WSOU INVESTMENTS, LLC D/B/A BRAZOS LICENSING AND DEVELOPMENT, | Case No. 6:21-CV-00128-ADA |
| Plaintiff, | |
| v. | JURY TRIAL DEMANDED |
| CISCO SYSTEMS, INC., | |
| Defendant. | |

**CISCO'S REPLY MOTION FOR JUDGMENT ON THE PLEADINGS UNDER RULE**
**12(C) AS TO U.S. PATENT NOS. 8,989,216 AND 7,443,859**

**TABLE OF CONTENTS**

Page

I.      THE '216 PATENT CLAIMS ARE NOT PATENT-ELIGIBLE ......................................1

        A.      *Alice* Step One: The '216 Claims are Directed to an Abstract Idea .........................1

        B.      *Alice* Step Two: The '216 Claims Contain No Inventive Concept ..........................4

        C.      There Are No Factual Allegations That Could Preclude Judgment .........................6

II.     THE COURT SHOULD GRANT JUDGMENT OF NON-INFRINGEMENT ON
        THE PLEADINGS WITH RESPECT TO THE '859 PATENT ........................................6

        A.      WSOU's Complaint Cannot Support Any Plausible Infringement Theory ..............7

        B.      The Existence of Source Code Does Not Preclude Judgment.................................9

        C.      WSOU Cannot Show Good Cause for Leave to Amend its Complaint...................9

III.    CONCLUSION.........................................................................................................10

# TABLE OF AUTHORITIES

Page(s)

## CASES

*A Pty Ltd. v. Facebook, Inc.*,
 149 F. Supp. 3d 732 (W.D. Tex. 2016)..................................................................2

*Affinity Labs of Texas LLC v. DIRECTV, LLC*,
 838 F.3d 1253 (Fed. Cir. 2016).........................................................................2, 3

*Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*,
 841 F.3d 1288 (Fed. Cir. 2016)............................................................................3

*Bot M8 LLC v. Sony Corp. of America*,
 4 F.4th 1342 (Fed. Cir. 2021) ...........................................................................7, 8

*BSG Tech LLC v. Buyseasons, Inc.*,
 899 F.3d 1281 (Fed. Cir. 2018)............................................................................6

*Cochran Consulting, Inc. v. Uwatec USA, Inc.*,
 102 F.3d 1224 (Fed. Cir. 1996)............................................................................9

*DDR Holdings, LLC v. Hotels.com, L.P.*,
 773 F.3d 1242 (Fed. Cir. 2014).........................................................................3, 4

*Doe v. Myspace, Inc.*,
 528 F.3d 413 (5th Cir. 2008) ...............................................................................9

*Dropbox, Inc. v. Synchronoss Techs., Inc.*,
 815 F. App'x 529 (Fed. Cir. 2020) .......................................................................2

*Joe Hand Promotions, Inc. v. Seay*,
 2018 WL 7286494 (W.D. Tex. Sept. 26, 2018)..................................................10

*McRO, Inc. v. Bandai Namco Games Am.*,
 837 F.3d 1299 (Fed. Cir. 2016)............................................................................4

*Packet Intelligence LLC v. NetScout Systems, Inc.*,
 965 F.3d 1299 (Fed. Cir. 2020)............................................................................3

*Smit v. SXSW Holdings, Inc.*,
 903 F.3d 522 (5th Cir. 2018) ...............................................................................8

*SRI International, Inc. v. Cisco Systems, Inc.*,
 930 F.3d 1295 (Fed. Cir. 2019)............................................................................3

## TABLE OF AUTHORITIES

Page(s)

*In re TLI Comm. LLC Patent Lit.*,
   823 F.3d 607 (Fed. Cir. 2016)..................................................................................2

*Trading Techs. Int'l Inc. v. CQG, Inc*,
   675 F. App'x. 1001 (Fed. Cir. 2017) .......................................................................4

*Trading Techs. Int'l., Inc. v. IBG LLC*,
   921 F.3d 1278 (Fed. Cir. 2019)..............................................................................4

*Ultramercial, Inc. v. Hulu, LLC*,
   772 F.3d 709 (Fed. Cir. 2014 )...............................................................................4

*VLSI Tech. LLC. v. Intel Corp.*,
   6:21-CV-57-ADA, 2022 WL 1261322 (W.D. Tex. Apr. 12, 2022) ...................................9, 10

## TABLE OF ABBREVIATIONS

| Abbreviation | Meaning |
|---|---|
| '216 Patent | U.S. Patent No. 8,989,216 |
| '859 Patent | U.S. Patent No. 7,443,859 |
| '859 Accused Products | Cisco's ASR5500, ASR5700, and Virtual Packet Core products |
| 3GPP | 3rd Generation Partnership Project |
| APN | Access Point Name |
| AVP | Attribute Value Pair |
| Cisco | Defendant Cisco Systems, Inc. |
| Compl. | WSOU's Complaint, Dkt. 1 (Feb. 5, 2021) |
| Dkt. | Docket Number |
| GGSN | Gateway GPRS Support Node |
| GPRS | General Packet Radio System |
| Mot. | Cisco's Motion for Judgment on the Pleadings, Dkt. 101 (Sept. 1, 2022) |
| MS | Mobile Station |
| Opp. | WSOU's Opposition to Cisco's Motion for Judgment on the Pleadings, Dkt. 104 (Sept. 15, 2022) |
| PDP | Packet Data Protocol |
| SGSN | Serving GPRS Support Node |
| SGSN Administration Guide | *SGSN Administration Guide*, StarOS Release 21.15, *available at* https://www.cisco.com/c/en/us/td/docs/wireless/asr_5000/21-15_6-9/SGW-Admin/21-15-SGSN-Admin.pdf (last accessed Aug. 15, 2022) (Ex. 8) |
| WSOU | Plaintiff WSOU Investments, LLC d/b/a Brazos Licensing and Development |

## I.      THE '216 PATENT CLAIMS ARE NOT PATENT-ELIGIBLE

In its Motion, Cisco showed the Asserted Claims of the '216 Patent are directed to the abstract idea of providing context-specific definitions in a dictionary, relying directly on the words of the claims themselves and the disclosure of the specification. *See, e.g.*, Mot. at 4–5, 9–11.  In response, WSOU resorts to using technical-sounding jargon found nowhere in the patent, asserting the claimed invention is "a dynamic and adaptive dictionary encoded with a key-value mapping for network data structures running different 3GPP versions that enables interoperation with a Diameter protocol stack."  Opp. at 1.  But the buzzwords "dynamic," "adaptive," "encoded" and "key-value mapping" do not appear anywhere in the '216 patent, and the patent itself explains prior art Diameter dictionaries already provided the format for commands to enable interoperation with a Diameter protocol stack.  '216 Patent at 1:35-38.  Indeed, the Asserted Claims modify prior art Diameter dictionaries in just one way: to make their structure mirror that of *a conventional dictionary*, providing multiple context-specific definitions under one dictionary entry.  That is not a "technical solution" to the problem identified by the patent; it is the application of a centuries-old way of organizing information to a prior art data structure.  That WSOU resorts to made-up technical terms not found in the patent to describe the alleged invention tells the Court all it needs to know.  Because WSOU does not identify any fact in dispute that bears on the motion, the Court should grant judgment of ineligibility on the pleadings.

### A.      *Alice* Step One: The '216 Claims are Directed to an Abstract Idea

Despite that the Asserted Claims literally recite a "dictionary" comprising multiple "definition[s]" (e.g., a "default definition," a "context specific definition"), WSOU argues the claims are not abstract at Step One because they purportedly solve a  "specific problem" of network node incompatibility.  Opp. at 5.  The problem identified by the patent—that two nodes cannot understand each other because they are using different definitions for the same words—is not a

technological problem, it is a fundamental problem of communication.  But even if the patent did address a technological problem, that is not enough to save the claims: not just "any improvement in computer communication is inherently patent eligible." *A Pty Ltd. v. Facebook, Inc.*, 149 F. Supp. 3d 732, 738 (W.D. Tex. 2016).  Instead, the claims must recite a *technological solution* to achieve the result.  *Id.*; *see also Dropbox, Inc. v. Synchronoss Techs., Inc.*, 815 F. App'x 529, 533 (Fed. Cir. 2020) (claims ineligible where elements focused on "a technological problem," but "the claims still recite no technological solution").

The claim language, which WSOU ignores, shows the claimed solution is not technological.  Claim 1, for example, shows "the focus of the claimed advance over the prior art" is on how definitions are organized in a Diameter dictionary, specifically including a "default definition" and a "context specific definition" for at least one command and at least one AVP.  Mot. at 5; *Affinity Labs of Texas LLC v. DIRECTV, LLC,* 838 F.3d 1253, 1257 (Fed. Cir. 2016).  That "solution" is quintessentially abstract, and remains so even if the result is improved interoperability.  For example, in *A Pty Ltd.*, the patentee made an argument, similar to WSOU's argument here, that an improved email address directory was a technical solution that "enables communication in scenarios where conventional methods would have failed."  149 F. Supp. 3d at 737.  But the Court found that insufficient because the claims were still "directed to the abstract idea of an address directory."  *Id.* at 738.  The same is true here—even if the claimed Diameter dictionary "enables communication in scenarios where conventional methods would have failed," it does so merely by applying abstract organizational concepts to a prior art data structure.

Contrary to WSOU's contention, the fact that the claims are apparatus claims (with the dictionary stored on a "tangible non-transitory storage device" in claim 1 and a "network node" in claims 4 and 11) also does not change the outcome.  *In re TLI Comm. LLC Patent Lit.*, 823 F.3d

607, 611 (Fed. Cir. 2016) ("not every claim that recites concrete, tangible components escapes the reach of the abstract-idea inquiry"). Here, the core of the claims recites abstract information organization, and the only arguably technical elements of the claim are recited in purely functional terms with no details on how to achieve the outcome (e.g., the dictionary "interoperates with a Diameter protocol stack")." Nor does the fact the claims recite a dictionary specific to the field of computer networking make them less abstract. *Affinity Labs*, 838 F.3d at 1259 (Fed. Cir. 2016) ("[L]imiting the field of use of the abstract idea to a particular existing technological environment does not render the claims any less abstract.").

WSOU's cited cases are inapposite. WSOU focuses in particular on *SRI International, Inc. v. Cisco Systems, Inc.* and *Packet Intelligence LLC v. NetScout Systems, Inc.*, but neither case is remotely similar. The claims in *SRI International* recited a particular "method of hierarchical event monitoring," wherein the "*focus of the claims* [was] on [a] specific improvement in computer capabilities." 930 F.3d 1295, 1303 (Fed. Cir. 2019) (emphasis added). Here, the focus of the claims is on including context-specific definitions in a dictionary entry, which is not technological in nature, even if it has benefits when applied in the context of a Diameter protocol dictionary. '216 Patent cl. 1. The claims here likewise bear no resemblance to the claims in *Packet Intelligence*, which recited a "packet monitor" including numerous detailed elements (e.g., "a parser subsystem," "a flow insertion engine coupled to the flow-entry memory") that together "presented a technological solution to a technological problem." 965 F.3d 1299, 1304-09 (Fed. Cir. 2020).

The other cases WSOU cites are similarly unavailing. The result in *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, depended on a claim construction that incorporated significant structure not readily apparent from the face of the claims. 841 F.3d 1288 (Fed. Cir. 2016). No such situation

exists here, where claim construction resulted in the plain and ordinary meaning being applied across the board, except where the claims were held indefinite.  In *DDR Holdings, LLC v. Hotels.com, L.P.*, both the problem and the solution were unique to computer technology, whereas neither is the case here.  773 F.3d 1242 (Fed. Cir. 2014).  And unlike *Trading Techs. Int'l Inc. v. CQG, Inc.*, where the invention for online stock trading efficiency had no "pre-electronic trading analog," the claims here are directly analogous to a literary dictionary.  675 F. App'x. 1001, 1004 (Fed. Cir. 2017).  Finally, in *McRO* , the animation process computerized by the claims was notably distinct from the process used by the human animators.  *McRO, Inc. v. Bandai Namco Games Am.*, 837 F.3d 1299, 1313 (Fed. Cir. 2016).  Here, the dictionary and its use by the PCRF node is exactly like a dictionary lookup a human would do.  *See* '216 Patent at  3:33-45.

**B.**    ***Alice* Step Two: The '216 Claims Contain No Inventive Concept**

WSOU's own arguments also show the Asserted Claims cannot survive Step Two.  WSOU contends the "inventive solution . . . was the use of a tangible storage device or node running a new Diameter command dictionary."  Opp. at 11.  But the recitation of a generic "storage device or node" cannot provide an inventive concept, and the "new Diameter command dictionary" is the abstract idea itself.  *Trading Techs. Int'l., Inc. v. IBG LLC*, 921 F.3d 1278, 1385 (Fed. Cir. 2019) ("The abstract idea itself cannot supply the inventive concept, no matter how groundbreaking the advance.")  The only thing that differentiates the "new" Diameter dictionary from prior art Diameter dictionaries is the organization of multiple context-specific definitions under one entry.  That is just an abstract organizational concept, and is exactly the solution provided by conventional dictionaries to address the problem of words having different meanings in different contexts.  Moreover, even if this organization was "new" to Diameter dictionaries, as WSOU stresses, it does not mean the solution was inventive for purposes of eligibility.  *Ultramercial, Inc.*

*v. Hulu, LLC*, 772 F.3d 709, 715 (Fed. Cir. 2014 ) ("We do not agree . . .that the addition of merely novel or non-routine components to the claimed idea necessarily turns an abstraction into something concrete").

WSOU also makes three additional arguments at Step Two, each of which is meritless.

***First,*** WSOU contends the "precise type of dictionary taught by the Patent did not exist." Opp. at 11. That is irrelevant. WSOU does not dispute that Diameter dictionaries were well-known in the prior art and were used by "3GPP Network nodes . . . to provide the format of commands and Attribute Value Pairs (AVPs)" for communications using the Diameter protocol. '216 Patent at 1:35-39. Moreover, the claimed Diameter dictionary is stored, run, and used exactly like the dictionaries of the prior art. *Compare* '216 Patent at 1:35-39 (prior art function to "provide the format of commands and Attribute Value Pairs (AVPs)") *with id.* at 3:42-45 ("This selected 3GPP version is then used as a context during command look-up in the dictionary to access information about the given version of the command corresponding to the context or version."). The only claimed difference is in the organization of information, and that difference is merely the application of an abstract idea, which cannot supply the inventive concept.

***Second***, WSOU attacks a strawman, arguing just because a claim uses known networking components "does not transform the invention into something abstract." Opp. at 12. But Cisco never made any such argument. The claims are abstract for the reasons set forth in Section I.A. The known networking components do not "transform" the claims into something abstract. Rather, because the known networking components do not provide anything inventive *aside from the abstract idea in the claim*, the Court cannot find inventive concept under Step Two.

***Third***, WSOU argues "the '216 swaps out dictionaries wholesale," and "provides a framework for simultaneously and dynamically supporting multiple incompatible versions." Opp.

at 12.  That is insufficient for the reasons explained above—if the claimed dictionary is "new" it is only because it applies conventional dictionary organization to the Diameter context, and even if the result is supporting multiple versions of a standard, it is not achieved through a *technological* solution.  Thus, there is no inventive concept.

### C.   There Are No Factual Allegations That Could Preclude Judgment

WSOU asserts there are factual disputes precluding judgment on the pleadings, but does not identify a single fact in dispute.  Opp. at 13.  Instead, WSOU says whether the claims *are inventive* is in dispute, wrongly citing *Berkheimer* for the faulty proposition that "[w]hether the invention ultimately is inventive is 'a factual determination.'" That is wrong.  Whether the claims include an "inventive concept" is a question of *law*.  *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1290 (Fed. Cir. 2018).  Although underlying factual determinations as to whether particular structures recited in the claims were conventional may bear on the inventiveness question, *id.*.  WSOU has not identified any such facts in dispute.  Thus, there is no basis for WSOU's assertion the Court should "defer ruling on the issue until it has the benefit of the developed record."  No factual issues prevent resolution of this motion.

## II.   THE COURT SHOULD GRANT JUDGMENT OF NON-INFRINGEMENT ON THE PLEADINGS WITH RESPECT TO THE '859 PATENT

WSOU has failed as a matter of law to plausibly allege infringement of the '859 Patent. WSOU cannot point to a single field that contains both the public or private network address information and the name of the access point.  The '859 claims require information that explicitly requests a public or private network address to be included in a specific field in a GPRS standard called the APN field.  WSOU has not alleged the APN field contains this information.  Instead, WSOU alleges that the **separate field,** the "*Maximum* APN *Restriction*" serves as the basis of its infringement theory.  This field does not contain the name of the access point.  Alleging that the

"Maximum APN Restriction Field" is the "APN field" in the '859 Patent claims is at odds with the claim language, the specification, the Court's claim construction, and the GPRS standard, which is incorporated into the Complaint. Thus, the Court should grant judgment on the pleadings.

## A.   WSOU's Complaint Cannot Support Any Plausible Infringement Theory

WSOU first contends it has plausibly alleged infringement of the "APN" limitation by pointing to conclusory allegations parroting the claim language, and noting that "exacting detail" is not required. Opp. at 15.[1]  Although WSOU is not required to describe infringement in "exacting detail," WSOU "cannot assert a plausible claim for infringement under the *Iqbal/Twombly* standard by reciting the claim elements and merely concluding that the accused product has those elements." *Bot M8 LLC v. Sony Corp. of America*, 4 F.4th 1342, 1354 (Fed. Cir. 2021).

WSOU's more specific allegations also fail because they are incompatible with the Court's construction and are contradicted by documents referenced in the Complaint.  WSOU maintains its allegation that the "Maximum APN Restriction" used in Cisco's products is the "APN" field required by the claims, arguing the claim construction "did ***not*** state the APN field must be titled 'APN field' and nothing else."  Opp. at 16.  But WSOU concedes the claimed APN field as construed must include "at least the name of the access point," and documents incorporated in the pleadings show the "Maximum APN Restriction" only contains an unsigned integer value, not "the name of the access point" as required.  *See* Mot. at 18-19.[2]  Moreover, because WSOU does not

---

[1]  WSOU alleges that Cisco products contain "an Access Point name ("APN") field containing information that explicitly indicates requesting either a private network address or a public network address to be assigned to the mobile station."  Opp. at 18; Compl. ¶¶ 28-29.

[2] WSOU also failed to address the fact the Activate PDP Context Request does not even contain the "Maximum APN Restriction" field, which means that field cannot be relied upon to allege infringement of the claims reciting the Activate PDP Context Request (claims 1-3, 7, 11, 15, 16). At a minimum, the Court should grant judgment on the pleadings as to claims 1-3, 7, 11, 15, 16.

dispute the actual "APN" field defined in the GRPS standard is missing the required public or private address information, Opp. at 18-19, WSOU has no plausible allegation *any* APN field contains all the information required by the claims in view of the Court's construction.

WSOU attempts to fill the gap by contending that, even if the APN Field in the GPRS standard does not contain the information required by the claim language, Cisco's products might. Opp. at 19.  This is wrong for two reasons.  First, WSOU has not alleged ***any*** facts suggesting Cisco's product does not follow the GPRS standards.  Conclusory allegations are not enough: "There must be some factual allegations, that, when taken as true, articulate why it is plausible that the accused product infringes the patent claim."  *Bot M8 LLC v. Sony Corp. of America*, 4 F4th 1342, 1354 (Fed. Cir. 2021).  Second, even if WSOU had made specific allegations showing Cisco's product differs from the GRPS standards, the allegations would be contradicted by the very documents cited in the Complaint, which confirm that the accused products practice the standard.  Mot. at 17.  *Smit v. SXSW Holdings, Inc.*, 903 F.3d 522, 528 (5th Cir. 2018) ("[W]hen an allegation is contradicted by the contents of an exhibit attached to the pleading, then indeed the exhibit and not the allegation controls") (internal citations omitted).

Courts have dismissed actions where the allegations were similarly incompatible with the claim language.  In *Bot M8 LLC*, the claims of the patent required the authentication program to be stored separately from the motherboard, but the first amended complaint "allege[d] that the authentication program is located on the PS4 motherboard itself."  4 F4th at 1354.  The contradiction "renders Bot M8's infringement claim not even possible, much less plausible."  *Id.* Here, the '859 Patent claims require an "APN (Access Point Name) field containing information that explicitly indicates requesting either a private network address or a public network address." *See e.g.,* '859 Patent cl. 1.  But WSOU's allegations in the Complaint show infringement is "not

even possible, much less plausible."  Documents cited in the Complaint confirm that Cisco products comply with the GPRS standards and clearly demonstrate that the APN field, whether it is the alleged "Maximum APN Restriction" field or anything else, simply does not contain private or public network address information.  Mot. at 18.

### B.    The Existence of Source Code Does Not Preclude Judgment

WSOU contends judgment on the pleadings is inappropriate because it might still find, in source code, the factual support for its infringement allegations that is missing from the Complaint. Opp. at 16-17.  That is wrong: the relevant inquiry is whether WSOU has plausibly alleged infringement.  *Doe v. Myspace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008).  It has not.  Analysis of source code cannot remedy the fact that the Complaint contains no facts supporting any allegation that Cisco's products do not follow the GPRS standard, and the relevant fields as defined in the GPRS standard contradict the claim language.   Source code cannot remedy a deficient infringement allegation.  *See Cochran Consulting, Inc. v. Uwatec USA, Inc.,* 102 F.3d 1224, 1231 (Fed. Cir. 1996) ("[i]nfringement resides not in the way the claim limitations and functions are translated into computer language, but whether these limitations and functions are performed by the [] device.").

### C.    WSOU Cannot Show Good Cause for Leave to Amend its Complaint

Amendment of the complaint is unwarranted and would be futile.  The deadline for WSOU to amend its pleadings under the scheduling order was over five months ago, in April.  "When a party requests leave to amend after a scheduling order's deadline has expired, Rule 16(b) governs the court's analysis, and rule 15(a) is inapplicable."  *VLSI Tech. LLC. v. Intel Corp.*, 6:21-CV-57-ADA, 2022 WL 1261322, at *1 (W.D. Tex. Apr. 12, 2022).  In determining whether leave to amend is appropriate, the court will assess "(1) the explanation for the failure to timely move for

leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice." *Id.*

Here, the factors strongly discourage granting leave to amend.  WSOU claims the "timing of the amendment is a product of Cisco waiting a year and a half after the pleadings were closed to claim that the face of those pleadings shows Brazos is not entitled to relief."  Opp. at 10.   This is directly contradicted by the fifteen months of correspondence throughout which Cisco repeatedly explained the frivolous nature of WSOU's allegations of the '859 Patent.  *See* Mot. at 15-16.  Moreover, permitting amendment at this late stage would be highly prejudicial to Cisco and a continuance could not remedy the prejudice.  The close of fact discovery is two weeks, and the parties have already finished claim construction, submitted final contentions, and narrowed their claims and prior art on WSOU's initial infringement theory.  Critically, amendment would cause Cisco "to expend time and money formulating new legal strategies and defenses." *Joe Hand Promotions, Inc. v. Seay*, 2018 WL 7286494, at *4 (W.D. Tex. Sept. 26, 2018) ("the Fifth Circuit recognizes the insufficiency of a continuance in remedying increased litigation costs.").

Moreover, even under the incorrect Rule 15(a) standard that WSOU argues applies here, amendment is clearly futile. There is no way for WSOU to amend the Complaint in a manner that plausibly alleges infringement.  Under the Court's claim construction, the APN field of the '859 Patent must be the field identified by "Access Point Name."  As demonstrated by the documents from the Complaint, and as WSOU now concedes, this field simply does not contain public or private address information that the Patent requires.

III.   **CONCLUSION**

Cisco respectfully requests judgment on the pleadings regarding the '216 and '859 Patents.

Date: September 29, 2022

Respectfully Submitted,

 _/s/Brian Rosenthal, with permission by_
_Michael E. Jones_

Michael E. Jones
SBN: 10929400
**POTTER MINTON**
110 North College, Suite 500
Tyler, TX 75702
mikejones@potterminton.com
Telephone: (903) 597-8311
Facsimile: (903) 593-0846

Brian Rosenthal
Katherine Dominguez
Allen Kathir
Admitted _pro hac vice_
brosenthal@gibsondunn.com
kdominguez@gibsondunn.com
akathir@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
200 Park Avenue
New York, NY 10166
Tel:  (212) 351-4000

Ryan Iwahashi
Admitted _pro hac vice_
riwahashi@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
1881 Page Mill Road
Palo Alto, CA 94304
Tel: (650) 849-5367


_Attorneys for Defendant Cisco Systems, Inc._