**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| WSOU INVESTMENTS, LLC D/B/A BRAZOS LICENSING AND DEVELOPMENT, | Case No. 6:21-CV-00128-ADA |
| Plaintiff, | |
| v. | JURY TRIAL DEMANDED |
| CISCO SYSTEMS, INC., | |
| Defendant. | |

## DEFENDANT CISCO SYSTEMS, INC.'S OPPOSITION TO PLAINTIFF'S MOTION TO AMEND INFRINGEMENT CONTENTIONS

# TABLE OF CONTENTS

Page

I.   BACKGROUND ...............................................................................................................1

    A.   The '859 Patent ..................................................................................................2

    B.   The Court Rejected WSOU's Claim Construction Argument and Cisco
        Moved For Judgment On the Pleadings Under the Adopted Construction...............3

    C.   WSOU's Proposed Amended Infringement Contentions...........................................4

    D.   Cisco's Source Code ...........................................................................................6

II.  LEGAL STANDARD......................................................................................................7

III. ARGUMENT ...................................................................................................................7

    A.   WSOU's New APN Field Infringement Theory is not Important Because It
        Contradicts the Patent and Alleges Infringement By the Prior Art Standard...........8

    B.   WSOU's New Doctrine of Equivalents Argument Should Not Be Allowed...........8

    C.   Cisco's Source Code Production Does Not Justify WSOU's Belated
        Motion .................................................................................................................9

    D.   Cisco Would Be Prejudiced Because It Already Had To Narrow Prior Art ...........10

IV.  CONCLUSION...............................................................................................................10

# TABLE OF AUTHORITIES

Page(s)

### CASES

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*,
    535 U.S. 722 (2002) ................................................................................................................9

*Lighthouse Consulting Gp. v. BB&T Corp.*,
    No. 6:19-cv-594 (Aug. 3, 2020) ..........................................................................................9

*S & W Enters., L.L.C. v. Southtrust Bank of Ala., NA*,
    315 F.3d 533 (5th Cir. 2003) ................................................................................................7

### RULES

Fed. R. Civ. P. 16(b)(4) ................................................................................................................7

## TABLE OF ABBREVIATIONS

| Abbreviation | Meaning |
| --- | --- |
| '859 patent | U.S. Patent No. 7,443,859 |
| 3GPP | 3rd Generation Partnership Project |
| Cisco | Defendant Cisco Systems, Inc. |
| Dkt. | Docket Number |
| GGSN | Gateway GPRS Support Node |
| GPRS | General Packet Radio Services |
| SGSN | Serving GPRS Support Node |
| WSOU | Plaintiff WSOU Investments, LLC d/b/a Brazos Licensing and Development |

Five days before the close of fact discovery, WSOU sought to amend its infringement contentions for the '859 patent to add two new theories of infringement. WSOU's eleventh-hour attempt to save its case is not only untimely, but the new infringement theories are ***more frivolous*** than the existing theory. After the Court's claim construction eviscerated WSOU's already-tenuous infringement read, nothing should be left of WSOU's infringement case, as demonstrated in Cisco's pending motion for judgment on the pleadings for the '859 patent. Dkt. 101. WSOU now seeks to add an infringement theory based on Cisco's practicing of the ***prior art standard*** expressly distinguished in the '859 patent. WSOU also seeks to add a doctrine of equivalents theory that directly contradicts WSOU's own arguments to the Court. Neither should be permitted.

WSOU's only purported justification to add these new theories now is its review of Cisco's source code. That argument is a red herring. Cisco's source code confirms what Cisco has represented since day one: Cisco complies with the relevant standard. Indeed, WSOU's proposed amendment relies upon Cisco's compliance with the standard, as confirmed by Cisco's source code. WSOU's untimely attempt to add these frivolous infringement theories should be denied.

## I.     BACKGROUND

WSOU's infringement allegations for the '859 Patent were fatally flawed from the beginning. But even if there was some glimmer of a basis to file the Complaint—there was not—the Court's claim construction doomed WSOU's infringement case as a matter of law, as explained in Cisco's Motion For Judgment on the Pleadings. Dkt. 101. WSOU's desperate attempt to salvage its claims by changing its infringement theory is even more hopeless.

Every claim requires specific information—an explicit request for a public or private IP address—be contained in the "APN field" of certain standardized messages. Until the last week of discovery, WSOU had been relying upon an entirely different field called "Maximum APN Restriction." From the outset of this case, Cisco has repeatedly told WSOU that the APN

Restriction field is **not** the claimed APN field.  *See* Dkt. 101, Ex. 4 (06/28/21 Letter from B. Rosenthal); Ex. 5 (01/18/22 Letter from B. Rosenthal); Ex. 6 (4/29/22 Letter from B. Rosenthal); Ex. 7 (Rule 11 Motion).  Almost ten months ago, the Court eviscerated WSOU's infringement case by holding that the claimed APN field is what it says—the actual APN field that is defined in the relevant standard—and not some other field.  Rather than dismiss the case, WSOU doubled down on its infringement theory, insisting that the APN Restriction field meets the claims.  It was not until the last five days of discovery that WSOU sought to change its theory.  But WSOU's new theory only makes the case more frivolous.  The proposed amendment alleges that Cisco infringes by using **the parts of the prior art standard the '859 patent itself distinguishes**.

A.     **The '859 Patent**

The '859 Patent purports to improve upon certain standardized messages in a GPRS network.  As the patent explains, to request and obtain access to a GPRS network, a mobile station (*i.e.*, cell phone) exchanges messages with servers in the GPRS network, like the GGSN and SGSN.  The standard GPRS protocol includes a series of four messages, which are recited by name in the claims: (1) the Activate PDP Context Request message; (2) the Create PDP Context Request message; (3) the Create PDP Context Response message; and (4) the Activate PDP Context Accept message.  These messages and their directionalities are shown in Figures 4A-4D of the '859 Patent:





Ex. A ('859 Patent) at FIGS. 4A-4D (annotations added).  As depicted, the phone (MS) sends an

Activate PDP Context Request message to the SGSN, and the SGSN in turn sends a Create PDP

Context Request message to the GGSN.  As highlighted above in yellow, the Activate PDP Context

Request message and the Create PDP Context Request message each include the "APN" field.

But, as the '859 Patent admits, the existing APN field "does not specify whether private or public

IP addresses are assigned to a requesting [mobile station]."  '859 Patent, 3:47-49; *see id.*, 5:21-27.

The '859 Patent purports to improve on the standard by including additional information—

*not already required by the existing standard*—in the already existing APN field.  Specifically,

the '859 Patent claims adding information into the APN field that "explicitly indicates requesting

either a private network address or a public network address to be assigned."  '859 Patent at claims

1, 9.  The addition of this information to the existing APN field is the alleged invention.

WSOU asserts claims 1-3, 7, 9, 11, 15, 16, 22, and 24.  Claim 1 is representative:

1. A method comprising:

receiving an Activate Packet Data Protocol (PDP) Context Request message at a
Serving General Packet Radio System (GPRS) Support Node (SGSN) of a network
from a mobile station of the network, ***the Activate PDP Context Request message
having an APN (Access Point Name) field containing information that explicitly
indicates requesting either a private network address or a public network address
to be assigned to the mobile station***; . . . .

'859 Patent at claim 1 (emphasis added).

## B. The Court Rejected WSOU's Claim Construction Argument and Cisco Moved For Judgment On the Pleadings Under the Adopted Construction

At claim construction, the parties disputed whether the terms "APN (Access Point Name)

field" and "APN field" could be satisfied by a variety of different fields (WSOU's position, Dkt. 43 at 1) or are instead limited to the specific field identified as "Access Point Name" (or "APN") that contains the name of the access point (Cisco's position, Dkt. 40 at 1). On December 17, 2021, this Court rejected WSOU's position and construed the terms to mean "[t]he *specific field identified as 'Access Point Name'* that *contains at least the name of the access point*." Dkt. 50 at 2 (emphasis added). Thus, under the Court's construction, the claimed "APN field" cannot be satisfied by the "Maximum APN Restriction" field, for two reasons: (1) that field is *not* the "specific field identified as 'Access Point Name,'" and (2) it does not contain "the name of the access point," both of which are required by the Court's construction.

In defiance of the Court's Claim Construction Order, WSOU served its Final Infringement Contentions setting forth the exact same infringement theory based upon the Maximum APN Restriction field. WSOU then refused to drop the '859 patent, despite repeated requests from Cisco. So, on September 1, 2022, Cisco filed a motion for judgment on the pleadings, arguing that WSOU's allegations that the "Maximum APN Restriction" field met the claims was precluded by the Court's construction. Dkt. 101. Briefing completed on that motion on September 29, 2022. Cisco requested an oral hearing on October 28, 2022. Dkt 124.

### C.    WSOU's Proposed Amended Infringement Contentions

A redline between WSOU's Final Infringement Contentions (served on February 11, 2022) and WSOU's Proposed Amended Contentions (which were served over eight months later on October 26, 2022) is attached as Exhibit B. In sum, WSOU seeks to add two infringement theories:  (1) a new theory based upon the content of the APN Field, which is **_identical_** to the APN Field in the prior art standard; and (2) a new doctrine of equivalents theory based once again upon the Maximum APN Restriction Field. Neither of these is proper.

First, WSOU's amendment alleges that the APN Field contains an explicit request for a public or private network address because the APN defines the network path, and a different APN could mean a different network path, citing 3GPP TS 23.003.  Ex. B at 4-7.  But the APN field contains ***exactly the same information now as it did before the earliest priority date of the '859 patent***, including the Access Point Name that WSOU relies upon as the alleged explicit request. 3GPP TS 29.060 (***September 2001***), Ex. C at 62.



**Figure 44: Access Point Name Information Element**

3GPP TS 29.060 v. 17.4.0 (***September 2022***), Ex. D at 126.



**Figure 44: Access Point Name Information Element**

As shown above, the content of the APN Field ***has not changed*** since before the patent was filed.

WSOU's allegation is precluded by the '859 patent itself, which explains that the existing APN field as of the filing date "***does not specify whether private or public IP addresses are***

*assigned*." '859 Patent at 3:47-49 (emphasis added).  In other words, the patent states that the content of the prior APN field (which remains unchanged through today) does not meet the claims.

Second, WSOU seeks to turn its Maximum APN Restriction Field theory into a doctrine of equivalents argument by adding new allegations related to the alleged function, way, and result of the contents of the APN Restriction field.  Ex. B at 7-8.  These allegations have never before been advanced.  *Id*.  WSOU's new doctrine of equivalents theory contradicts its contemporaneous statements to the Court in which it stated "the APN field (***and not the APN Restriction field***) contains information that explicitly indicates requesting either a private network address or a public network address to be assigned to the mobile station."  Br. at 7 (emphasis added).

Furthermore, the applicant disavowed its doctrine of equivalents argument during prosecution because it added the explicit request requirement to overcome the prior art.  On January 23, 2007 in response to a rejection, the applicant made the following changes to the claim.

> 1.   (Currently amended)   A ~~General Packet Radio System (GPRS) based communications~~ network comprising:
>
>      a Serving <u>General Packet Radio System</u> (GPRS) Support Node (SGSN) receiving an Activate Packet Data Protocol (PDP) Context Request message from a mobile station of the ~~GPRS based communications~~ network, the Activate PDP Context Request message having an APN field containing information <mark>that explicitly indicates requesting</mark> ~~relating to a request for~~ one of a private network address and a public network address; and

Ex. E (January 23, 2007 Claim Amendment and Remarks), 2.  The applicant then distinguished the prior art by asserting that the prior art does not "teach[] or suggest[] assignment of a private or public network address be based on the information in the APN field that <u>explicitly indicates requesting</u> one of a private network address and a public network address as requested by the mobile station."  *Id*., 12 (emphasis in original).

### D.   Cisco's Source Code

Cisco's source code for the '859 patent merely confirms what Cisco's public documents

and those produced at the beginning of the case state:  Cisco complies with the required standards in implementing the GGSN and SGSN.  For example, in its Complaint, WSOU cited the SGSN Administration Guide from Cisco, that specifically says it complies with 3GPP TS 29.060, which as discussed above is the same now as it was 20 years ago before the priority date of the patent. Dkt. 101, Ex. 8 at 19.  Indeed, WSOU's "new" source code allegations are based entirely on Cisco's compliance with the standard and add nothing new to the record.  Ex. B at 4-6 (repeatedly citing 3GGP TS 23.003).  Since Cisco's documents produced at the outset of this case already established compliance with the standard, there is no reason for WSOU to have delayed until the very end of discovery to seek leave to amend its infringement contentions.  *See* Dkt. 59, 5-6.

## II.      LEGAL STANDARD

A party may amend its infringement contentions only if good cause exists. *See* Fed. R. Civ. P. 16(b)(4).  In the Fifth Circuit, the Court uses a four factor test to determine whether there is good cause to modify the scheduling order. *S & W Enters., L.L.C. v. Southtrust Bank of Ala., NA*, 315 F.3d 533, 536 (5th Cir. 2003). The four factors are: (1) the explanation for the failure to meet the deadline; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice. *See id*.

## III.     ARGUMENT

WSOU's attempt to amend its infringement contentions should be denied for multiple reasons.  First, the amendment is not important because the new infringement theories are futile on their face.  Not only do its proposed amendments contradict the patent itself, but WSOU seeks to accuse a standard that predates the patent.  Second, WSOU's only purported justification for its last-minute amendment is illusory; none of its theories are related to specific implementation in Cisco's source code.  Third, Cisco would be highly prejudiced by these changes now, at least because it was already forced to narrow its prior art combinations based on WSOU's prior theory.

**A.      WSOU's New APN Field Infringement Theory is not Important Because It Contradicts the Patent and Alleges Infringement By the Prior Art Standard**

WSOU's first new infringement theory is even more baseless than its original theory.  It is premised upon the APN Field, as it must be based upon the Court's claim construction, but ***the contents of the APN Field have not changed since before the priority date of the '859 patent***, as discussed above.  The information WSOU accuses of infringing (*i.e.*, the contents of the APN field) was unambiguously in the prior art version of the standard and cannot be the alleged explicit request.  3GPP TS 29.060 (September 2001), Ex. C at 62.

As the patent itself stated, the existing APN field, which included the Access Point Name, "***does not specify whether private or public IP addresses are assigned*** to a requesting [mobile station]."  '859 Patent at 3:47-49 (emphasis added).  In other words, the patent admits that the Access Point Name—which was already included in the APN Field prior to the patent—***does not include the required request***.  WSOU should not be permitted to add at the eleventh hour an infringement theory that is foreclosed by the patent itself.  The futility of this theory of infringement also underscores that it is not important for WSOU to be permitted to pursue it, especially at this late stage of the case with no justification for WSOU's delay.

**B.      WSOU's New Doctrine of Equivalents Argument Should Not Be Allowed**

WSOU's other proposed new theory is based on the APN Restriction field—just like its original infringement theory—but it relies on the doctrine of equivalents.  This aspect of the amendment should be denied for two reasons.  First, WSOU's own motion contradicts this amendment.  WSOU argued to the Court—in the present Motion—that "the APN field (***and not the APN Restriction field***) contains information that explicitly indicates requesting either a private network address or a public network address to be assigned to the mobile station."  Br. at 7 (emphasis added).  Yet WSOU's new proposed theory argues that the APN Restriction field

contains the explicit request.  WSOU should not be allowed to assert an infringement theory that contradicts its own arguments to the Court.

Second, even if WSOU were allowed to make inconsistent statements, the applicant's statements during prosecution preclude its doctrine of equivalents theory.  The applicant distinguished the prior art by asserting that the prior art does not "teach[] or suggest[] assignment of a private or public network address be based on the information in the APN field that <u>explicitly indicates requesting</u> one of a private network address and a public network address as requested by the mobile station."  *Id*., 12 (emphasis in original).  In other words, the applicant made clear that the request for a public or private address must be ***explicit***, not implicit, to get the patent. Prosecution history estoppel therefore precludes WSOU's doctrine of equivalents theory.

The Supreme Court has held that "the court should presume that the patentee surrendered all subject matter between the broader and the narrower language."  *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co*., 535 U.S. 722, 740 (2002).  Because WSOU itself admitted that the APN Restriction field does not include an explicit request (Br. at 7), WSOU cannot be allowed to pursue infringement under the doctrine of equivalents because the applicant amended the claims to include the ***explicit*** request and distinguished the prior art on that basis.  Br. at 7; *see also* Ex. B at 10 ("APN Restriction value determines ***the type of application data the subscriber is allowed to send***.")(emphasis added). WSOU's attempt to equate an "implicit" request to an explicit request is therefore precluded and amendment should not be allowed.  *See Lighthouse Consulting Gp. v. BB&T Corp*., No. 6:19-cv-594 (Aug. 3, 2020) slip op. at 6-7 (dismissing a doctrine of equivalents claim based upon prosecution history estoppel).

### C.    Cisco's Source Code Production Does Not Justify WSOU's Belated Motion

WSOU's only justification for its belated motion to amend its infringement contentions

9

is based on Cisco's source code production.  Cisco disagrees with WSOU's mischaracterizations regarding the timing, but the Court need not even reach that issue to deny WSOU's motion. WSOU has been on notice that Cisco complies with the relevant standard for the GGSN and SGSN since before it filed its complaint **on February 5, 2021**.  Indeed, the very documents WSOU cited in its Complaint state Cisco's compliance.  *E.g.*, Dkt. 101, Ex. 8 at 84 (stating that 3GPP TS 23.003 was one of the supported standards).  WSOU's proposed amendment adds source code that is cumulative of that evidence; *i.e.* it simply shows Cisco complies with those same standards.  *See* Ex. B at 4-7.  WSOU's purported justification is thus manufactured and illusory.

### D.    Cisco Would Be Prejudiced Because It Already Had To Narrow Prior Art

Cisco would be severely prejudiced if WSOU is allowed to amend.  Pursuant to the Court's case narrowing procedure, the parties agreed to narrow asserted claims and prior art references. Cisco offered to select a small number of prior art references, but WSOU insisted that Cisco narrow the number of invalidity grounds instead.  Cisco ultimately agreed to narrow based on invalidity grounds.  For the '859 patent, Cisco reasonably relied upon WSOU's Final Infringement Contentions in narrowing its contentions.  If WSOU had asserted this new infringement theory back in February, Cisco would have been able to choose different invalidity grounds.

This prejudice cannot be resolved simply by allowing Cisco to choose new grounds.  Fact discovery closed on November 2, 2022 and Cisco's expert reports are due on November 16, 2022 before this motion is scheduled to be fully briefed.  Cisco should not be forced at this late stage of the case to adapt to brand new infringement theories that could have been added months ago, and somehow attempt to incorporate those into its expert reports.

## IV.    CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court deny WSOU's motion to amend infringement contentions.

Date: November 11, 2022

Respectfully Submitted,

*/s/Shaun W. Hassett, with permission from*
*Brian Rosenthal*

Michael E. Jones
SBN: 10929400
mikejones@potterminton.com
Shaun W. Hassett
SBN: 24074372
shaunhassett@potterminton.com
**POTTER MINTON**
110 North College, Suite 500
Tyler, TX 75702
Telephone: (903) 597-8311
Facsimile: (903) 593-0846

Brian Rosenthal
Katherine Dominguez
Allen Kathir
Admitted *pro hac vice*
brosenthal@gibsondunn.com
kdominguez@gibsondunn.com
akathir@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
200 Park Avenue
New York, NY 10166
Tel:  (212) 351-4000

Ryan Iwahashi
Admitted *pro hac vice*
riwahashi@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
1881 Page Mill Road
Palo Alto, CA 94304
Tel: (650) 849-5367

*Attorneys for Defendant Cisco Systems, Inc.*